**UNITED STATES DISTRICT COURT FOR THE
SOTHERN DISTRICT OF FLORIDA**

------------------------------X

| | | |
|---|---|---|
| PENINSULA PETROLEUM LIMITED, INC, | : | Case No.: 1:22-CV-20712-RKA |
| *Plaintiff(s)*, | : | |
| v. | : | |
| CI INTERNATIONAL FUELS, LLC., | : | |
| *Defendant(s)*. | : | |

------------------------------X

**DEFENDANT CI INTERNATIONAL FUELS LLC 's MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR RELIEF FROM A DEFAULT UNDER FEDERAL
RULE OF CIVIL PROCEDURE 55(c)**

# TABLE OF CONTENTS

| | |
|---|---|
| TABLE OF CONTENTS | i |
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| BACKGROUND | 1 |
| ARGUMENT | 3 |
| I. DEFENDANT CI INTERNATIONAL'S DEFAULT WAS NOT WILLFUL | 4 |
| II. DEFENDANT CI INTERNATIONAL TOOK PROMPT ACTION TO CORRECT THE DEFAULT | 5 |
| III. PLAINTIFF WOULD NOT BE PREJUDICE IF THE DEFAULT IS SET ASIDE | 6 |
| IV. DEFENDANT CI INTERNATIONAL HAS A MERITORIOUS DEFENSE | 6 |
| CONCLUSION | 9 |

MEET-AND-CONFER CERTIFICATION ........................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

| | |
|---|---|
| *Choice Hotels Int'l, Inc. v. Pennave Assoc., Inc.*, 192 F.R.D. 171, 174 (3rd Cir. 2000) | 6 |
| *Compania Interamericana Export–Import, S.A. v. Compania Dominicana,* 88 F.3d 948, 951 (11th Cir. 1996) | 3,4 |
| *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.,* 591 F.3d 1337, 1357 (11 Cir. 2009) | 6 |
| *EEOC v. Mike Smith Pontiac GMC, Inc.,* 896 F.2d 524, 527-28 (11th Cir. 1996) | 3 |
| *Ford v. Brown,* 319 F.3d 1302, 1306–07 (11th Cir. 2003) | 7 |
| *Hritz v. Woma Corporation,* 732 F.2d 1178, 1183 (3d Cir. 1984) | 4 |
| *Lacy v. Sitel Corp.,* 227 F.3d 290, 293 (5 Cir. 2000) | 6 |
| *Moldwood Co. 5. Stutts,* 410 F.2d 351, 352 (5th Cir. 1969) | 6 |
| *Tozer v. Charles A. Krause Milling Co.,* 189 F.2d 242 (3d Cir. 1951) | 4 |
| *United States v. One Parcel of Real Property,* 763 F.2d 181, 183 (5. Cir. 1985) | 6 |

**Statutes**

| | |
|---|---|
| Fed. R. Civ. P. 55(c) | 3 |
| Local Rule 7.1(a)(3) | 5 |
| 21A Fed. Proc., L. Ed. § 51:66 | 5 |

**PRELIMINARY STATEMENT**

This Court should set aside the Clerk's Default entered on April 21, 2022 [ECF No. 14], because Defendant CI International has good cause for its failure to timely respond to Plaintiff's Verified Complaint. Defendant CI International failed to timely respond to Plaintiff's Verified Complaint because the company's sole manager Mr. Jaime Ochoa first became aware of Plaintiff's Complaint on April 25, 2022, when he received notice of the Clerk's Default. A copy of the summons and complaint were sent to Mr. Jaime Ochoa on March 25, 2022, but the same went to his email's spam inbox. Mr. Jaime Ochoa does not routinely check his spam inbox. As such, during the time to timely answer the Complaint, Mr. Ochoa had not learned about the Complaint. Mr. Jaime Ochoa's failure to timely file a response to the Complaint in the instant matter was not willful. Indeed, he took action to seek relief from the Clerk's Default promptly upon learning of the action. Moreover, Defendant CI International has a meritorious defense on forum non conveniens grounds. And setting aside the Clerk's Default would not prejudice Plaintiff.

**BACKGROUND**

On or around March 9, 2022, Plaintiff Peninsula Petroleum Limited, Inc ("Peninsula") filed a Verified Complaint against Defendant CI International [ECF No. 1].

Mr. Jaime Ochoa is the sole manager of Defendant CI International. [ECF No. 1-1]. He is the only person with authority to take or respond to legal action on behalf of Defendant CI International. [Declaration of the Manager of CI International Fuels LLC ¶ 1 ("Ochoa Decl.")].

On or around March 23, 2022, Plaintiff Peninsula served the Verified Complaint on Defendant CI International by delivering copy of the Summons and Verified Complaint to Defendant CI International's Registered Agent Vault [ECF No. 11].

On March 24, 2022, Vault sent via email a copy of the summons and complaint to Sandra Ochoa, who works as an accounting assistant for CI International, at sandramilena.ochoa@gmail.com. [Ochoa Decl. ¶ 1].

On March 25, 2022, Ms. Sandra Ochoa sent via email a copy of the summons and complaint to Mr. Jaime Ochoa. [Id.] Ms. Sandra Ochoa did not otherwise alert Mr. Jaime Ochoa of the Communication. [Id. ¶ 2].

On April 25, 2022, Vault emailed a copy of the Clerk's Default to Ms. Sandra Ochoa. [Id.] On the same date, she forwarded it to Mr. Jaime Ochoa. [Id.]

Mr. Jaime Ochoa first became aware of the summons and complaint on April 25, 2022. [Id.] Ms. Sandra Ochoa's March 25 email went to Mr. Ochoa's email's spam inbox. [Id.] He did not see Ms. Sandra Ochoa's March 25 email because he does not routinely check his spam inbox. [Id.]

However, on April 25, 2022, Ms. Sandra Ochoa forwarded to Mr. Jaime Ochoa the Clerk's Default email. [Id.] The April 25 email, like the March 25 email, went to Mr. Jaime Ochoa's spam inbox. [Id.] But Mr. Jaime Ochoa was looking at his phone when he got the April 25 email. [Id.] He noticed a popup notification on his phone of Ms. Sandra Ochoa's email, which clears after a few seconds. [Id.] Because he noticed the popup notification, he became aware of Ms. Sandra Ochoa's April 25 email. [Id.] Then, he checked for other emails from Sandra Ochoa in his spam inbox. [Id.] He found the March 25 email. [Id.]

On April 26, 2022, Mr. Jaime Ochoa contacted Franco Law Firm to set up a meeting with attorney Fernando Franco to discuss the summons and complaint and the clerk's default. The meeting was set for April 29, 2022. [Id.]

On April 29, 2022, upon meeting with attorney Fernando Franco, Mr. Jaime Ochoa hired Franco Law Firm to represent CI International in the instant action. [Id. ¶ 3]

## ARGUMENT

This Court should set aside the Clerk's Default entered on April 21, 2022 [ECF No. 14], because Defendant CI International has good cause for its failure to timely respond to Plaintiff's Verified Complaint. A motion to set aside entry of default is governed by Federal Rule of Civil Procedure 55(c), which states, in pertinent part: "[t]he court may set aside an entry of default for good cause." "'Good cause' is a mutable standard, varying from situation to situation" and does not have a precise formula. *Compania Interamericana Export–Import, S.A. v. Compania Dominicana*, 88 F.3d 948, 951 (11th Cir. 1996). The standard imposed on the defaulting party for setting aside an entry of default is different from and less burdensome than the standard for setting aside a default judgment pursuant to FRCP 60(b). *EEOC v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 527-28 (11th Cir. 1996).

Defendant CI International's default was not willful, and it took prompt action upon learning of the default. Moreover, Defendant CI International has a meritorious defense on forum non conveniens grounds. Also, setting aside the Clerk's Default would not prejudice Plaintiff. "In evaluating good cause, courts generally consider 'whether the default was culpable or willful, whether setting it aside would prejudice the adversary, whether the defaulting party presents a meritorious defense,' and whether the defaulting party acted promptly to correct the default." "In evaluating good cause, courts generally consider 'whether the default was culpable or willful, whether setting it aside would prejudice the adversary, whether the defaulting party presents a meritorious defense,' and whether the defaulting party acted promptly to correct the default." *Compania Interamericana Export-Import*, 88 F.3d at 95.

### I. Defendant CI International's Default Was Not Willful

Defendant CI International's failure to respond Plaintiff's Complaint [ECF No. 1] was not willful. Instead, it resulted from its sole manager and controlling person, Mr. Jaime Ochoa, did not take notice of the Complaint until April 25, 2022, when he got notice of the Clerk's Default [ECF No. 14]. Therefore, Defendant had not willfully disregarded a duty to respond to the Complaint. [Ochoa Decl. ¶ 1 - 3]. See *Hritz v. Woma Corporation*, 732 F.2d 1178, 1183 (3d Cir. 1984) (willfulness requires " more than mere negligence," and "knowing disregard for court-mandated procedures.").

In *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242 (3d Cir. 1951), for instance, the Third Circuit found no willfulness, but "excusable neglect" where the defendant failed to inform the Secretary of the Commonwealth of a change in address. Like the defendant in *Tozer* who never received actual notice of the lawsuit because the summons and complaint were delivered to the old address, Defendant CI International did not received actual notice because the summons and complaint were delivered to Mr. Jaime Ochoa's spam inbox. *Id.* at 244. Defendant CI International had no knowledge of the lawsuit, like the defendant in *Tozer* who had no knowledge of the lawsuit prior to the entry of default judgment. *Id.* However, in *Tozer*, the Third Circuit specifically stated: "[d]efendant's only negligence was a careless conduct of its business in failing to ascertain that its broker [Defendant's statutory agent for receiving process] had moved and in failing to notify the Secretary of the Commonwealth [of the new address for the broker]." Here, Defendant's only negligence, if any, would be a careless conduct of its business in failing to ensure service emails were delivered to a routinely checked inbox. *Id.* at 246.

Moreover, Defendant CI International's default was not "willful" as defined in jurisprudence. The "willfulness" factor requires the court to consider whether the party intentionally violated court rules and procedures, not just whether the party failed to respond. 21A Fed. Process, L.Ed. § 51:66. A bona fide or inadvertent non-response must be contrasted with situations in which a party evades

jurisdiction or attempts to evade liability by evading litigation. 21A Fed. Process, L.Ed. § 51:66, citing *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 27 Fed. R. Serv. 3d 1353 (2. Cir. 1994). In the instant matter, there is nothing to suggest Defendant CI International willfully failed to respond or knowingly violate any court rules.

**II. Defendant CI International Took Prompt Action to Correct the Default**

Defendant CI International first became aware of the summons and complaint in the instant action on April 25, 2022. [Ochoa Decl. ¶ 2]. Ms. Sandra Ochoa's March 25 email (attaching the summons and complaint) went to Mr. Jaime Ochoa's spam inbox. [Ochoa Decl. ¶ 2]. Mr. Jaime Ochoa is the sole manager and person with authority to take legal action on behalf of Defendant CI International. [Ochoa Decl. ¶ 1]. On April 25, 2022, Ms. Sandra Ochoa forwarded to Mr. Jaime Ochoa the email with the attached Clerk's Default. [Ochoa Decl. ¶ 2]. The April 25 email also went to my spam inbox. [Ochoa Decl. ¶ 2]. However, Mr. Jaime Ochoa was looking at his phone when he received the April 25 email. [Ochoa Decl. ¶ 2]. He noticed a popup notification of Ms. Sandra Ochoa's email, which cleared after a few seconds. [Ochoa Decl. ¶ 2]. Because he noticed the popup notification, Mr. Jaime Ochoa opened Ms. Sandra Ochoa's April 25 email. [Ochoa Decl. ¶ 2]. He noticed the April 25 email went to his spam inbox, so he checked for other emails from Sandra Ochoa in his spam inbox and found the March 25 email. [Ochoa Decl. ¶ 2].

On April 26, 2022, Mr. Jaime Ochoa contacted Franco Law Firm to set up a meeting with attorney Fernando Franco to discuss the summons and complaint and the clerk's default and on April 29, 2022, upon meeting with attorney Fernando Franco, he immediately hired Franco Law Firm to represent CI International in the instant action. [Ochoa Decl. ¶ 2].

The time that has transpired from April 29, 2022, to the filing of this Motion, is the time Franco Law Firm has taken to prepare the instant Motion and Memorandum.

### III. Plaintiff Would Not be Prejudice if the Default is Set Aside

Plaintiff will not suffer any disadvantages, such as loss of evidence, as a result of the Clerk's Default being vacated. The lawsuit is in its most preliminary stages as Defendant CI International have yet to respond to the Complaint. [ECF No. 1] If the court sets aside the Clerk's Default entry, Plaintiff will have to prosecute the related instant action. The need to prosecute a case is not the cause of bias. The Third Circuit ruled that a plaintiff's need to litigate their case on the merits, rather than prevail by default, is not grounds for prejudice. See *Choice Hotels Int'l, Inc. v. Pennave Assoc., Inc.*, 192 F.R.D. 171, 174 (3rd Cir. 2000). ("The fact that plaintiffs must sue on the merits rather than by default does not constitute prejudice."). The Eleventh Circuit agreed. See *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1357 (11 Cir. 2009) (citing Lacy v. Sitel Corp., 227 F.3d 290, 293 (5 Cir. 2000) finding that "if there is no prejudice to the plaintiff to vacate the default, there is no disadvantage for the plaintiff other than to require him to prove his case."

### IV. Defendant CI International Has a Meritorious Defense

Defendant CI International has a meritorious defense on forum non conveniens and other grounds. The moving party just needs to show "a hint of suggestion" that he has a meritorious defense. *Moldwood Co. 5. Stutts*, 410 F.2d 351, 352 (5th Cir. 1969). Even a weak description of the meritorious defense is sufficient. See *United States v. One Parcel of Real Property*, 763 F.2d 181, 183 (5. Cir. 1985).

The doctrine of "forum non conveniens" authorizes trial courts to decline to exercise its jurisdiction, even though the court has venue, where it appears that convenience of parties and court, and interests of justice indicate that action should be tried in another forum. *Ford v. Brown*, 319 F.3d 1302, 1306–07 (11th Cir. 2003).

Here, Defendant CI International purchased vessel fuel from Plaintiff per a Master Sale and Purchase Agreement entered by the parties on October 26, 2020 (the "Master Agreement.") The Master Agreement has a "Governing Law and Arbitration" clause whereby the Master Agreement is governed by English law and any claims and/or disputes shall be resolved and finalized in arbitration. [ECF No. 1-2].

On the same date, Defendant CI International and Plaintiff entered into a pledge over assets agreement to secure any debt Defendant CI International acquires under the Master Agreement (the "Pledge Agreement.") In the Pledge Agreement the assets securing Defendant's debt under the Mater Agreement are described as "all present and future cargoes of petroleum products that are from time to time acquired by the Grantor and storage in the Free Trade Zone pursuant to the Master Agreement . . . and all proceeds or assets derived or attributable to them thereof." Moreover, in the Pledge Agreement "Free Trade Zone" is specifically defined as "the Santa Marta Free Zone Area." The Pledge Agreement has an "Applicable Law and Jurisdiction" clause whereby "the [p]arties agree that [the Pledge Agreement] will be governed by the laws of Colombia and submit expressly and irrevocably to the jurisdiction of the competent judges of Colombia." [ECF No. 1-3].

Also on the same date, CI International Colombia and Plaintiff entered a guarantee agreement (the "Guarantee") whereby Defendant CI International's liability under the "Agreements" is secured with CI International Colombia's assets. Per the Guarantee, "'Agreements' means commodity agreements, commodity price swaps, commodity option transactions including agreements for the sale/purchase of oil, marine fuels or other similar physical or financial commodity transactions made by [Defendant CI International] and the [Plaintiff] (in each case as amended, varied, supplemented and novated from time to time)." The Guarantee has a Governing Law and Jurisdiction clause whereby

disputes and/or claims must be brought before an arbitration tribunal in London, England. [Ochoa Decl. ¶ 2].

Defendant CI International does not have any assets, employees, premises, or any other sort of infrastructure or operations conducted in Florida or elsewhere in the United States. It operates solely in Colombia. The assets securing Defendant CI International's liability under the Master Agreement are in Colombia. The petroleum products purchased under the Master Agreement were shipped from Ireland to Santa Marta, Colombia. In turn, the product was sold in Colombia to fuel vessels docked in Santa Marta. [Ochoa Decl. ¶ 2].

On June 17, 2021, Defendant CI International's Colombian affiliate CI International Fuels SAS, was admitted to a reorganization process in Colombia comparable to a chapter 11 process in the United States. Plaintiff is listed as a secured creditor in this process. [Ochoa Decl. ¶ 3].

On or about September 21, 2021, Defendant CI International and its Colombian affiliate entity CI International Fuels SAS received notice from Gomez-Pinzon, Plaintiff's attorneys in Colombia, of an action filed in Colombian court to foreclose on the "assets" as described in the Pledge Agreement and the Guarantee. [Ochoa Decl. ¶ 3].

Therefore, before this Court there is more than a "hint of suggestion" that Defendant CI International has a meritorious defense on forum non conveniens, Plaintiff's failure to perform under the terms of the agreement, and other grounds.

## CONCLUSION

For the foregoing reasons, Defendant CI International requests that the Court grant Defendant CI International's Motion for Relief from a Default Under Federal Rule of Civil Procedure 55(c).

## MEET-AND-CONFER CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), on May 4, 2022, and May 6, 2022, I met-and-conferred with Plaintiff's counsel Evan S. Gutwein, Esq. in a good faith effort to resolve the issues raised in this motion and we agreed that we would be unable to resolve the issues raised in the motion.

| | |
|---|---|
| Dated: May 16, 2022<br>Miami, Florida | Respectfully submitted,<br><br>By: /s/ Fernando Franco<br>Fernando Franco, Esq.<br>Florida Bar No. 120457<br>Franco Law Firm<br>268 Alhambra Cir.<br>Second Floor<br>Coral Gables, Florida 33134<br>(786) 724 0900<br>franco@francolawfirmpa.com<br>*Attorney for Defendant CI International Fuels LLC* |