UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**PENINSULA PETROLEUM LIMITED,**
Plaintiff,

v.                                                    Case No.: 22-CV-20712

**CI INTERNATIONAL FUELS LLC,**
Defendant.
_____/

## DEFENDANT'S MOTION TO DISMISS FOR FORUM NON CONVENIENS

CI INTERNATIONAL FUELS LLC, files this Motion to Dismiss for Forum Non Conveniens

and in support thereof states:

I.       **BACKGROUND**

Plaintiff, PENINSULA PETROLEUM LIMITED, ("PPL"), at ¶ 1 of its Amended Verified

Complaint [DE 36] characterizes the instant matter as a collection action pursuant to a written

agreement and security pledge between the parties dated October 26, 2020. Here, PPL is a foreign

corporation with its principal place of business in Ireland and having subsidiary offices in England.

CI International Fuels, LLC, ("CI LLC"), a Florida legal entity, is an affiliate of CI International

Fuels, SAS, ("CI SAS"), which is a separate legal entity organized under the laws of Colombia,

with its principal place of business in Barranquilla, Colombia. CI SAS provides international fuel

bunkering services to Marine Vessels and controls all operational aspects of CI's business. CI

LLC, primarily supports CI SAS by providing invoicing and accounts receivable services for CI

SAS bunkering operation. See [DE 26 attachments 1-4 for supporting affidavit and declaration by

Jaime Ochoa, Manager of Defendant, CI LLC].

1

PPL agreed to extend credit to CI LLC for marine fuel to be delivered to CI SAS and held in CI SAS storage tanks at the Santa Marta, Colombia Free Trade Zone. Pursuant to the Agreement between the parties, the fuel provided by PPL to CI SAS would be disbursed incrementally under separate deals of either Bunker Recaps or Cargo Recaps. Because the fuel provided by PPL was stored in CI SAS tanks in Santa Marta, Colombia, PPL negotiated a Pledge Agreement to secure its assets and interest in the fuel. Under the terms of the Pledge Agreement, the maximum security is established at $ 6,500,000 USD. Whereas the fuel to be provided by PPL would be held and located under the jurisdiction of Colombia, the enforcement of the Pledge Agreement between the parties is governed by Colombian law and subject to venue in Colombian courts. Moreover, CI SAS additionally provided a Guarantee to PPL, which ensured that CI SAS would bear responsibility for CI LLC's obligations to PPL as the primary obligor.

Pursuant to the Guarantee, CI International Fuels, SAS is the Guarantor and Party, whereas, CI International Fuels, LLC, is identified as a "Counter-Party," and PPL is the Beneficiary. Exhibit A. The Guarantee at Section 3.1 provides: "The Guarantor, as primary obligor and not merely as surety, hereby irrevocably, absolutely, and unconditionally guarantees to the Beneficiary [PPL] the due, punctual and successful performance of the Counterparty's obligations under the Agreements, in accordance with the terms thereof, without offset or deduction;"

The parties' written agreement is comprised of a Master Sale and Purchase Agreement which includes: Annex A- Cargo Recap, Annex B- BP Oil International Limited General Terms and Conditions (containing Schedules A-I), annex C- BIMCO Terms 2015 Standard Bunker Contract, Letter of Agreement, Annex D- Operational Costs for each Port, Annex E- Pledge Agreement, and a Guarantee.

2

The Agreement provides for arbitration as to any disputes and claims arising from or in connection with the Master Sales and Purchase Agreement. Pursuant to the agreements of the parties, the Agreement shall be governed by English law and disputes and/or claims arising therefrom shall be subject to arbitration which shall proceed in accordance with the London Court of International Arbitration ("LCIA"). The only exception to this agreement between the parties relates to matter of enforcing the security interest contained in Annex E- the Pledge Agreement, which shall be governed by Colombian law with jurisdiction in the courts of Colombia, which makes sense given that the fuel was located within the jurisdiction of Colombia.

**Governing Law Clauses**

The Master Sales and Purchase Agreement sets forth an Arbitration Clause at Section 11- Governing Law and Arbitration, Clauses 11.1 and 11.2 respectively. [DE 1-2].

Clause 11.1 provides as follows:

> The construction, validity and performance of the Master Sale and Purchase Agreement and/or any Cargo Recap and/or any Bunker Recap and **any dispute or claim** arising out of **or in connection with** this Master Sale and Purchase Agreement and/or any Cargo Recap and/or Bunker Recap and their subject matter or formation (including non-contractual disputes or claims) **shall be governed by and construed in accordance with English Law to the exclusion of any other law which may be imputed in accordance with the choice of law rules applicable in any jurisdiction**. (emphasis added).

Clause 11.2 provides:

> Any dispute arising out of or in connection with this Master Sale and Purchase Agreement and/or any Cargo Recap and/or Bunker Recap, including any question regarding their existence, validity or termination, shall be referred to and finally resolved by arbitration under the LCIA Rules, which Rules are deemed to be incorporated by reference into this clause. The number of arbitrators shall be one. The seat, or legal place, of arbitration shall be London, England. The language to be used in the arbitral proceedings shall be English.

Annex B- BP Oil International Limited General Terms and Conditions at Section 75- Applicable

Law (p. 94) sets forth the following:

    75.1- Governing Law:

> The construction, validity and performance of the Agreement and any
> dispute or claim arising out of or in connection with it or its subject
> matter or formation (including non-contractual disputes or claims) shall
> be governed by and construed in accordance with English law to the
> exclusion of any other law which may be imputed in accordance with
> choice of law rules applicable in any jurisdiction. However, neither party
> shall be precluded from pursuing arrest, attachment and/or other conservatory,
> interlocutory or interim actions in any court or exercising any contractual
> rights in relation to the Crude Oil or Product or Vessel provided for else-
> where in this Agreement.

Letter of Agreement states:

> It is further agreed that clause 22(a) (Dispute Resolution Clause 2015) of
> BIMCO shall apply to any Contracts, as well as to this Agreement.

Annex C- BIMCO provides:

Clause 22- Dispute Resolution Clause 2015:

> (a) This Contract shall be governed and construed in accordance with
> English law and any dispute arising out of or in connection with with
> This Contract shall be referred to arbitration in London in accordance
> with the Arbitration Act of 1996 or any statutory modification or re-
> enactment thereof save to the extent necessary to give effect to the
> provisions of this Clause.
>
> The arbitration shall be conducted in accordance with the London
> Maritime Arbitrators Association (LMAA) Terms current at the
> time when the arbitration proceedings are commenced.

Annex E- Pledge Agreement over Assets at Clause VI- Enforcement of Security Interest:

    Section 6.01 (iii)- Court Collection Proceedings:

> to secure payment in full of the Secured Obligations by **enforcing the
> Security Interest before the applicable Colombian courts** in accordance
> with the applicable Law, including any current procedural law. (emphasis

added.)

Section 8.11 at p. 24 [DE 1-2; p.173], states:

> The Parties agree that this Agreement will be governed by the laws of **Colombia** and **submit expressly and irrevocably to the jurisdiction** of the competent judges of Colombia. (emphasis added.)

There are at least six (6) provisions in the parties' Agreement addressing the application of law and/or jurisdiction for disputes and claims arising in connection with the Agreement between the parties. What all six of these provisions have in common is that each one of them mandates that foreign law shall govern any disputes and/or claims between the parties with jurisdiction pursuant to forum selection clauses being in either London, England or Colombia. The Master Agreement and the Pledge Agreement are clear and unambiguous that disputes or claims related to enforcement of the security interest are governed by Colombian law and jurisdiction is proper in Colombian courts. All other disputes and/or claims arising from the Agreement between the parties, are subject to arbitration under governing English law with venue in London, England.

> Under Supreme Court case law, such provisions are to be enforced by dismissal, unless it would effectively deprive the party seeking to avoid the forum selection clause of its "day in court." That is not the case here. Accordingly, Plaintiff's case should be dismissed.

## II.     MOTION TO DISMISS FOR FORUM NON CONVENIENS

### Legal Standard

"The appropriate way to enforce a forum selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co. v. United States District Court*, 571 U.S. 49, 60 (2013). A valid forum-selection clause alters the court's § 1404(a) analysis in three ways: (1) The plaintiff's choice of forum

5

carries no weight and the burden is on the plaintiff to establish that the transfer to the parties' agreed forum is unwarranted; (2) private interest factors should not be considered; and (3) where a party disregards its contractual obligation to file suit in an agreed forum, the original venue's choice of law rules will not carry over. *Id* at 64. Because the "enforcement of a valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system," forum-selection clauses are "given controlling weight in all but exceptional cases." *Id. at* 62. Where, as here, the forum selected is a foreign court, dismissal is appropriate remedy.

Thus, Forum-selection clauses are "presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner International Hotels, Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009). A forum-selection clause is unreasonable where a plaintiff can demonstrate fraud or overreaching. *Id.; Pappas v. Kerzner International Hotels, Ltd.,* 585 F. App'x 962, (11th Cir. 2014). A party seeking to avoid a forum-selection clause has a "heavy burden of proof" that requires a showing that the designated forum is so "gravely difficult and inconvenient that [the party] for all practical purposes will be deprived of his day in court." *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 17-18 (1972); *Carnival Cruise Lines, Inc. v. Shute,* U.S. 585, 592 (1991). Moreover, the presumption favoring a Plaintiff's choice of forum is entitled to less deference where the Plaintiff is not a citizen, resident or corporation of this country. *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.* 382 F. 3d 1097, 1101 (11th Cir. 2004. A plaintiff's choice of forum will not merit any weight in the *forum non conveniens* analysis where a valid, enforceable and

applicable forum selection clause exists. *Jiangsu Honguam Pharm. Co. v. DI Global Logistics Inc.,* 159 F. Supp. 3d 1316 (S.D. Fla. 2016).

The public interest factors to be considered in the *forum non conveniens* analysis include, "the administrative difficulties flowing from court congestion;" "local interest in having localized controversies decided at home;" having a "forum that is at home with the law that must govern the action;" "avoidance of unnecessary problems in conflict of laws, or the application of foreign law;" and the "unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). Since these factors "rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine Constr. Co. v. United States District Court,* 571 U.S. 49, 64 (2013). Even a non-party to an agreement will also be bound to a forum-selection clause where the non-party is "'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1289 (11th Cir. 1998) (quoting *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) (citations omitted)).

### III.   ARGUMENT

Here, the Agreement between the parties clearly and unambiguously reflects that a forum selection clause was central to negotiations between the parties for the reason that the Agreement sets forth at least six provisions for the application of governing law and jurisdiction. As explicated above, the parties agreed that all disputes and/or claims arising from or in connection with the Master Agreement shall be submitted to arbitration in London, England under the LCIA. The Agreement makes an exception to the LCIA arbitration requirement for instances of enforcing the

security provision since PPL was well aware that the fuel would be delivered to the Santa Marta, Colombia Free Trade Zone and storage would be provided by CI SAS. Thus, the Pledge Agreement would naturally be subject to the laws and jurisdiction of Colombia because the assets sought to be secured would be physically located in Colombia. Moreover, the Agreement between the parties was of the nature that CI SAS would access the fuel pursuant to additional agreements characterized as either Bunker Recaps or Cargo Recaps.

The parties negotiated forum selection clause is valid and enforceable because the Plaintiff cannot make a "strong showing" that enforcement would be unfair or unreasonable. PPL cannot meet this burden where the very nature of the Agreement contains provisions such that CI SAS will store the fuel in Santa Marta, Colombia and further engage in bunker and cargo recaps for the stored fuel. The terms of the Agreement itself, along with the Pledge Agreement and the Guarantee, clearly and conclusively show that PPL knew or should have known that the practical operations of the Agreement would be carried out through CI SAS in Colombia and not CI LLC. Consideration of the Agreement in tandem with the security measures that PPL bargained for establish that Colombian law and venue cannot be unfair or unreasonable for purposes of addressing PPL's claims. Especially here, where the affidavit and declaration of CI's Manager Jaime Ochoa, explain that CI LLC provides invoicing and collection service for CI SAS, which is engaged in the day-to-day conduct of providing bunkering services. [DE 26-2-4 and DE 31-1-4]. Of critical importance is the fact that Jaime Ochoa is domiciled Colombia not Florida. It is from Colombia that Mr. Ochoa controls and operates both CI SAS and CI LLC. As a citizen of Colombia, Mr. Ochoa is subject to jurisdiction in his place of domicile, which is an adequate forum for resolving the instant dispute because Colombian law can redress the Plaintiff's claims and has

jurisdiction over the movable assets. As such, PPL's cause of action can easily be reinstated in Colombia and its claim can adequately be redressed in the appropriate venue.

The Plaintiff cannot avoid the bargained for forum selection clause because it cannot meet the heavy burden of proof of showing that litigating this dispute in Colombia is so "gravely difficult" as to deprive it of its day in court because PPL admits at ¶ 34 of its Amended Verified Complaint that "in accordance with Section 2.03 of the Pledge Agreement, Peninsula registered its 'Security Interest' with the National Registry of Securities Over Movable Assets in Colombia, which allows Peninsula to carry forward proceedings to enforce the pledge." [DE 36]. Given that the forum selection agreement is valid and enforceable, under the forum selection analysis, the Plaintiff's choice of forum will not merit any weight, especially here, where PPL is a foreign corporation based in Ireland.

The forum selection clause should control because the public interest factors of the *forum non conveniens* analysis do not weigh in favor of the Plaintiff where the parties' Agreement repeatedly relies on the application of English or Colombian law. Even though CI LLC is a Florida legal entity, its obligations under the Agreement are guaranteed by Colombian legal entity CI SAS as the primary obligor. Moreover, the performance and the practical operations regarding the Bunker and Cargo Recap Agreements are actualized through the conduct of CI SAS in Colombia. Accordingly, the forum which is most at home with the foreign law governing the Agreement and action is Colombia—the forum selected by the parties under the terms of the Agreement. For the reasons set forth above, the controversy between the parties is clearly not localized and as such, it is unfair to burden with jury duty in this unrelated forum. Thus, the forum selection clause the parties bargained for should be enforced and PPL's Amended Verified Complaint should be dismissed.

## CONCLUSION

Therefore, for good cause shown, the forum selection clause of the Agreement should be enforced and CI LLC's motion to dismiss should be granted on *forum non conveniens* grounds. Based on the foregoing points and authorities, Defendants respectfully request that the Court grant Defendants' Motion to Dismiss, along with any other relief that the Court deems appropriate.

Dated: December, 2022

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed electronically to all counsels for the parties via the CMECF E-Filing Portal on this 22nd  day of December, 2022.

Respectfully Submitted,

**SANCHEZ VADILLO, LLP**
11402 NW 41st Street
Suite 202
Miami, Florida 33178
(305) 436-1410
ldilican@svlawus.com

By:  /s/  Lori Dilican
*Counsel for Defendants*

# EXHIBIT A

## GUARANTEE

**THIS GUARANTEE** is dated ___26___ October 2020

### PARTIES

(1)    **CI INTERNATIONAL FUELS SAS**, a company incorporated in Barranquilla, Colombia under number 802024011-4, whose registered office is at 77B Street 59-61 Office1101 Barranquilla - Colombia  (the "**Guarantor**"); and

(2)    **PENINSULA PETROLEUM LIMITED**, a private limited company incorporated in the Republic of Ireland under number 378557, whose registered office is at 10 Earlsfort Terrace, Dublin 2, D02 T380, Republic of Ireland.

### AGREED TERMS

**1        Definitions**

"**Agreements**" means commodity agreements, commodity price swaps, commodity option transactions including agreements for the sale/purchase of oil, marine fuels or other similar physical or financial commodity transactions made by the Counterparty and the Beneficiary (in each case as amended, varied, supplemented and novated from time to time);

"**Business Day**" means any day other than a Saturday, Sunday or a day on which banks are generally closed for the majority of their commercial business in London, England, New York, USA, Dublin, Republic of Ireland or Singapore;

"**Counterparty**" means **CI INTERNATIONAL FUELS LLC**, a company incorporated in State of Florida (USA) under number L09000101567, whose registered office is at 5201 BLUE LAGOON DRIVE 8TH FLOOR MIAMI FL 33126  (the "**Guarantor**"); and

"**Guarantee**" means this guarantee agreement, as amended, varied, supplemented or novated from time to time.

**2        Consideration**

In consideration of the Beneficiary entering into the Agreements with the Counterparty, the Guarantor provides the guarantee, undertaking and indemnity specified in Clause 3 and the additional protections set out in this Guarantee. The Guarantor acknowledges that such consideration is sufficient and hereby waives any and all rights whatsoever and howsoever arising which the Guarantor might have, now or in the future, to contend that insufficient consideration has been provided.  The Guarantor shall be estopped from denying that sufficient consideration has been provided.

**3        Guarantee and Indemnity**

3.1    The Guarantor, as primary obligor and not merely as surety, hereby irrevocably, absolutely and unconditionally:

I, DIEGO VALDERRAMA, hereby certify that I am fluent in English and Spanish, and that the attached document is an accurate translation made by me, to the best of my knowledge.

1

3.1.1     guarantees to the Beneficiary the due, punctual and successful performance of the Counterparty's obligations under the Agreements, in accordance with the terms thereof, without offset or deduction;

3.1.2     undertakes to the Beneficiary that, whenever the Counterparty does not pay any amount when due under or in connection with the Agreements, the Guarantor shall, immediately on demand and without regard to any defences to the underlying liability, pay that amount to the Beneficiary as if it were the principal obligor; and

3.1.3     agrees with the Beneficiary that if any obligation guaranteed by it is or becomes unenforceable, invalid or illegal, it will, as an independent and primary obligation, indemnify the Beneficiary immediately on demand against any cost, loss or liability it incurs as a result of the Counterparty not paying any amount which would, but for such unenforceability, invalidity or illegality, have been payable by it under any Agreement on the date when it would have been due. The amount payable by the Guarantor under this indemnity will not exceed the amount it would have had to pay under this Guarantee if the amount claimed had been recoverable on the basis of a guarantee.

**4**      **Term**

This Guarantee shall continue in force until terminated by the Guarantor. To terminate the Guarantee the Guarantor shall give the Beneficiary, in accordance with clause 17 hereof, sixty (60) Business Days written notice of termination ("Termination Notice Period"). The Guarantor will not be liable under this Guarantee for any transactions or other obligations created, incurred or contracted by the Beneficiary with the Counterparty after the expiry of the Termination Notice Period; but termination of this Guarantee shall not affect any rights of the Beneficiary under this Guarantee created, incurred or contracted prior to expiry of the Termination Notice Period.

**5**      **Limitation of Liability**

The total liability of the Guarantor under Clause 3 of this Guarantee shall not exceed Ten Million dollars (USD10,000,000.00) (the "**Guaranteed Cap**"). In addition to the Guaranteed Cap, the Guarantor shall, within three (3) Business Days of demand, pay to the Beneficiary the amount of all costs and expenses (including legal fees) incurred by the Beneficiary in connection with the enforcement of, or the preservation of any rights under, this Guarantee or the Agreements and any proceedings instituted by or against the Beneficiary as a consequence of taking or holding this Guarantee or enforcing those rights.

**6**      **Reinstatement**

If any discharge, release or arrangement (whether in respect of the obligations of the Counterparty or otherwise) is made by the Beneficiary in whole or in part on the basis of any payment, security or other disposition which is avoided or must be restored in insolvency, liquidation, administration or otherwise, without limitation, then the liability of the Guarantor under this Guarantee will continue or be reinstated as if the discharge, release or arrangement had not occurred.

I, DIEGO VALDERRAMA, hereby certify that I am fluent in English and Spanish, and that the attached document is an accurate translation made by me, to the best of my knowledge.

2

**7      Waiver of Defences**

7.1     The obligations and liabilities of the Guarantor under this Guarantee will not be affected by an act, omission, matter or thing which, but for this Clause 7, would reduce, release or prejudice any of its obligations under this Guarantee (without limitation and whether or not known to it or the Beneficiary) including:

    7.1.1   any extension of time, renewal, settlement, compromise, waiver or release under or in relation to the Agreements;

    7.1.2   any variation, release, exchange, failure to perfect or invalidity of any direct or indirect right or security for any of the Counterparty's obligations and liabilities under or in relation to the Agreements;

    7.1.3   any amendment, novation, supplement, extension restatement (however fundamental and whether or not more onerous) or replacement of the Agreements or any other document or security relating thereto including, without limitation, any change in the purpose of, any extension of or increase in any terms or obligations or the addition of any new obligations under any of the Agreements or any other document or security relating thereto;

    7.1.4   any insolvency, winding up, similar proceedings or other proceedings for protection from its creditors and any change in the constitution, control, ownership, name or style of Counterparty or any other person;

    7.1.5   any incapacity or lack of power, authority or legal personality of or dissolution or change in the members or status of the Counterparty or any other person; or

    7.1.6   any other act, failure to act or delay of any kind by the Counterparty or any entity or person or any other circumstance which might, but for the provisions of this Clause 7, constitute a legal or equitable discharge of any of the Guarantor's  Obligations.

7.2     The Guarantor waives any right it may otherwise have of first requiring the Beneficiary (or any trustee or agent on its behalf) to proceed against, or enforce any rights or security or claim payment from, the Counterparty or any other person before claiming from the Guarantor. This waiver applies irrespective of any law or any provision of any other document to the contrary.

**8      Representations and Warranties**

8.1     The Guarantor represents and warrants to the Beneficiary on the date hereof (which representations and warranties will be deemed to be repeated by the Guarantor on each date on which an Agreement is entered into), that:

    8.1.1   it is duly organised and validly existing and in good standing under the laws of the jurisdiction in which it was organised and has the power and authority to execute, deliver and perform this Guarantee;

    8.1.2   its execution, delivery and performance of this Guarantee have been and remain duly authorised by all necessary corporate action and do not

I, DIEGO VALDERRAMA, hereby certify that I am fluent in English and Spanish, and that the attached document is an accurate translation made by me, to the best of my knowledge.

3

contravene any provision of its certificate of incorporation or by-laws or any law, regulation or contractual restriction binding on it or its assets;

8.1.3    this Guarantee constitutes the legal, valid and binding obligations of the Guarantor, enforceable against the Guarantor in accordance with its terms, subject, as to enforceability only, to applicable bankruptcy, moratorium, insolvency or similar laws affecting the rights of creditors generally and to general principles of equity;

8.1.4    the execution, delivery and performance of this Guarantee require no action by, or filing with, any governmental body or any court having jurisdiction over the Guarantor;

8.1.5    the obligations expressed to be assumed by the Counterparty in the Agreements are legal, valid, binding and enforceable obligations;

8.1.6    the Counterparty has the power to enter into, perform and deliver, and has taken all necessary action to authorise its entry into, performance and delivery of, the Agreements and the transactions contemplated by the Agreements;

8.1.7    no corporate action, legal proceeding or other procedure or equivalent insolvency proceeding or creditors' process has been taken or, to the knowledge of the Guarantor, threatened in relation to the Counterparty;

8.1.8    neither the Counterparty nor the Guarantor or is owned or controlled by, or acting directly or indirectly on behalf of or for the benefit of, a person or entity which is managed or controlled in prohibition of any applicable sanctions in any relevant jurisdiction; and

8.1.9    the Counterparty and the Guarantor have conducted their businesses in compliance with applicable anti-corruption laws and have instituted and maintained policies and procedures designed to promote and achieve compliance with such laws.

## 9    Recovery Rights

9.1    The Beneficiary may set off any matured obligation due from the Guarantor under this Guarantee against any matured obligation owed by the Beneficiary to the Guarantor, regardless of place of payment or current of either obligation. If the obligations are in different currencies, the Beneficiary may convert either obligation at a market rate of exchange in its usual course of business for the purpose of the set-off.

9.2    Until all amounts which may be or become payable by the Counterparty under or in connection with the Agreements have been irrevocably paid in full and unless the Beneficiary otherwise directs, the Guarantor will not exercise any rights which it may have by reason of any amount being payable, or liability arising, under this Guarantee:

9.2.1    to be indemnified by the Counterparty;

9.2.2    to claim any contribution from any other guarantor of the Counterparty's obligations under the Agreements;

I, DIEGO VALDERRAMA, hereby certify that I am fluent in English and Spanish, and that the attached document is an accurate translation made by me, to the best of my knowledge.

9.2.3    to take the benefit (in whole or in part and whether by way of subrogation or otherwise) of any rights, security or moneys held, received or receivable by the Beneficiary or be entitled to any right of contribution;

9.2.4    to bring any legal or other proceedings for an order requiring the Counterparty to make any payment, or perform any obligations, in respect of which the Guarantor has given a guarantee, undertaking or indemnity under Clause 3;

9.2.5    to exercise any right of set-off against the Counterparty; or

9.2.6    to claim or prove as a creditor of the Counterparty in competition with the Beneficiary.

9.3    If the Guarantor receives any benefit, payment or distribution in relation to the rights referred to in Clause 9.1 it shall hold that benefit, payment or distribution to the extent necessary to enable all amounts which may be or may become payable to the Beneficiary by the Counterparty under or in connection with the Agreements to be paid in full on trust for the Beneficiary and shall promptly pay or transfer the same to the Beneficiary or as the Beneficiary may direct.

9.4    All sums which the Beneficiary receives under or in connection with this Guarantee shall, unless otherwise agreed by the Beneficiary, be applied by the Beneficiary in or towards satisfaction of, or retention on account for, the indebtedness of the Counterparty under the Agreements in such manner as the Beneficiary may in its discretion determine.

9.5    The Beneficiary may place any money received by it under or in connection with this Guarantee to the credit of a suspense account on such terms and subject to such conditions as the Beneficiary may in its discretion determine for so long as the Beneficiary thinks fit without any obligation in the meantime to apply that money in or towards discharge of the Counterparty's indebtedness under the Agreements and, despite such payment, the Beneficiary may claim against the Counterparty or prove in the bankruptcy, liquidation or insolvency of the Counterparty for the whole of the Counterparty's indebtedness under the Agreements at the date of the Beneficiary's demand for payment pursuant to this Guarantee, together with all interest, commission, charges and expenses accruing subsequently.

## 10    Assignment

The Guarantor may not assign all or any of its rights under this Guarantee without the prior written consent of the Beneficiary.

## 11    Payment; No Deductions

11.1    All payments to be made by the Guarantor under this Guarantee shall be paid to the Beneficiary's account at such office or bank as the Beneficiary may notify to the Guarantor in writing from time to time.

11.2    All payments made or to be made by the Guarantor under this Guarantee shall be made in full without any deduction, withholding, set-off or counterclaim on account of any taxes or any claim that the Counterparty, the Guarantor or any other guarantor may have against the Beneficiary or otherwise.

I, DIEGO VALDERRAMA, hereby certify that I am fluent in English and Spanish, and that the attached document is an accurate translation made by me, to the best of my knowledge.

5

11.3    If the Guarantor is compelled by law to make any deduction or withholding, then it shall account for the same to the relevant authority as and when required by law and shall pay to the Beneficiary all necessary additional amounts to ensure receipt and retention (free from any liability) by the Beneficiary of the full amount which it would have received had the payment not been subject to the deduction or withholding.

## 12    Default interest

If the Guarantor fails to pay any amount payable by it under this Guarantee on its due date, interest shall accrue on the overdue amount from the due date up to the date of actual payment (both before and after judgment) at the rate of 2%.  Any interest accruing under this Clause 12 shall be immediately payable by the Guarantor on demand by the Beneficiary.

## 13    Currency Indemnity

13.1    If any sum due from the Guarantor under this Guarantee (for the purposes of this Clause 13 a "**Sum**"), or any order, judgment or award given or made in relation to a Sum, has to be converted from the currency in which that Sum is payable (for the purposes of this Clause 13 the "**First Currency**") into another currency (for the purposes of this Clause 13 the "**Second Currency**") for the purpose of:

13.1.1    making or filing a claim or proof against the Guarantor, or

13.1.2    obtaining or enforcing an order, judgment or award in relation to any litigation or arbitration proceedings,

the Guarantor shall as an independent obligation, within three (3) Business Days of demand, indemnify the Beneficiary against any cost, loss or liability arising out of or as a result of the conversion including any discrepancy between (a) the rate of exchange used to convert that Sum from the First Currency into the Second Currency and (b) the rate or rates of exchange available to the Beneficiary at the time of its receipt of that Sum.

13.2    The Guarantor waives any right it may have in any jurisdiction to pay any amount under this Guarantee in a currency or currency unit other than that in which it is expressed to be payable.

## 14    Security

14.1    This Guarantee is in addition to and is not in any way prejudiced by any other guarantee or security now or subsequently held by the Beneficiary.

14.2    The Guarantor has not taken, and will not take without the prior written consent of the Beneficiary (and then only on such terms and subject to such conditions as the Beneficiary may impose), any security from the Counterparty in connection with this Guarantee, and any security taken by the Guarantor notwithstanding this Clause 14.2 shall be held by the Guarantor in trust for the Beneficiary absolutely as a continuing security for the Guarantor's liabilities under this Guarantee.

I, DIEGO VALDERRAMA, hereby certify that I am fluent in English and Spanish, and that the attached document is an accurate translation made by me, to the best of my knowledge.

6

**15      Remedies and Waivers**

No failure to exercise, nor any delay in exercising, on the part of the Beneficiary, any right or remedy under this Guarantee shall operate as a waiver of such right or remedy. No single or partial exercise of any right or remedy shall prevent any further or other exercise or the exercise of any other right or remedy. The rights and remedies provide in this Guarantee are cumulative and not exclusive of any rights or remedies provided by law.

**16      Severability**

If, at any time, any provision of this Guarantee is or becomes illegal, invalid or unenforceable in any respect under any law of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions nor the legality, validity or enforceability of such provision under the law of any other jurisdiction will in any way be affected or impaired.

**17      Notices and Certificate**

17.1    Any notice or communication to be given under or in connection with this Guarantee shall be in writing (in English) and may be delivered by hand, sent by post, fax, email or by commercial courier to the following addresses:

       17.1.1   to the Guarantor:

           Address: 77B Street 59-61 Office1101 Barranquilla - Colombia

           Attention: Jaime Alberto Ochoa Muñoz

           Email: manager@ciinternationalfuels.com

       17.1.2   to the Beneficiary:

| | |
|---|---|
| Address: | Peninsula Petroleum, 1st Floor, Byron House, 7/9 St James's St, London, SW1A 1EE, UK |
| Attention: | Legal Department |
| Fax: | +44 (0)20 7930 9096 |
| Email: | legal@peninsulapetroleum.com |

17.2    Without prejudice to the foregoing, any notice shall conclusively be deemed to have been received at the time of delivery if delivered by hand or courier and at the time of transmission in legible form if delivered by fax.

17.3    Any certificate by any person duly authorised by the Beneficiary as to the money and liabilities for the time being due, owing or incurred by the Guarantor to the Beneficiary shall (save for manifest error) be conclusive evidence in any legal proceedings commended against the Guarantor.

**18      Amendments and Variations**

18.1    No amendment or variation to the terms of this Guarantee shall be effective unless made or confirmed in a written document signed by the Guarantor and the Beneficiary.

I, DIEGO VALDERRAMA, hereby certify that I am fluent in English and Spanish, and that the attached
7        document is an accurate translation made by me, to the best of my knowledge.

```
ERROR: undefined
OFFENDING COMMAND: Sans

STACK:

/AAAAAC+*Microsoft
/FontName
```