# GUARANTEE

THIS GUARANTEE is dated ___26___ October 2020

## PARTIES

(1)   **CI INTERNATIONAL FUELS SAS**, a company incorporated in Barranquilla, Colombia under number 802024011-4, whose registered office is at 77B Street 59-61 Office1101 Barranquilla - Colombia (the "**Guarantor**"); and

(2)   **PENINSULA PETROLEUM LIMITED**, a private limited company incorporated in the Republic of Ireland under number 378557, whose registered office is at 10 Earlsfort Terrace, Dublin 2, D02 T380, Republic of Ireland.

## AGREED TERMS

**1      Definitions**

"**Agreements**" means commodity agreements, commodity price swaps, commodity option transactions including agreements for the sale/purchase of oil, marine fuels or other similar physical or financial commodity transactions made by the Counterparty and the Beneficiary (in each case as amended, varied, supplemented and novated from time to time);

"**Business Day**" means any day other than a Saturday, Sunday or a day on which banks are generally closed for the majority of their commercial business in London, England, New York, USA, Dublin, Republic of Ireland or Singapore;

"**Counterparty**" means **CI INTERNATIONAL FUELS LLC**, a company incorporated in State of Florida (USA) under number L09000101567, whose registered office is at 5201 BLUE LAGOON DRIVE 8TH FLOOR MIAMI FL 33126 (the "**Guarantor**"); and

"**Guarantee**" means this guarantee agreement, as amended, varied, supplemented or novated from time to time.

**2      Consideration**

In consideration of the Beneficiary entering into the Agreements with the Counterparty, the Guarantor provides the guarantee, undertaking and indemnity specified in Clause 3 and the additional protections set out in this Guarantee. The Guarantor acknowledges that such consideration is sufficient and hereby waives any and all rights whatsoever and howsoever arising which the Guarantor might have, now or in the future, to contend that insufficient consideration has been provided. The Guarantor shall be estopped from denying that sufficient consideration has been provided.

**3      Guarantee and Indemnity**

3.1     The Guarantor, as primary obligor and not merely as surety, hereby irrevocably, absolutely and unconditionally:

I, DIEGO VALDERRAMA, hereby certify that I am fluent in English and Spanish, and that the attached document is an accurate translation made by me, to the best of my knowledge.

1

3.1.1     guarantees to the Beneficiary the due, punctual and successful performance of the Counterparty's obligations under the Agreements, in accordance with the terms thereof, without offset or deduction;

3.1.2     undertakes to the Beneficiary that, whenever the Counterparty does not pay any amount when due under or in connection with the Agreements, the Guarantor shall, immediately on demand and without regard to any defences to the underlying liability, pay that amount to the Beneficiary as if it were the principal obligor; and

3.1.3     agrees with the Beneficiary that if any obligation guaranteed by it is or becomes unenforceable, invalid or illegal, it will, as an independent and primary obligation, indemnify the Beneficiary immediately on demand against any cost, loss or liability it incurs as a result of the Counterparty not paying any amount which would, but for such unenforceability, invalidity or illegality, have been payable by it under any Agreement on the date when it would have been due. The amount payable by the Guarantor under this indemnity will not exceed the amount it would have had to pay under this Guarantee if the amount claimed had been recoverable on the basis of a guarantee.

## 4     Term

This Guarantee shall continue in force until terminated by the Guarantor. To terminate the Guarantee the Guarantor shall give the Beneficiary, in accordance with clause 17 hereof, sixty (60) Business Days written notice of termination ("Termination Notice Period"). The Guarantor will not be liable under this Guarantee for any transactions or other obligations created, incurred or contracted by the Beneficiary with the Counterparty after the expiry of the Termination Notice Period; but termination of this Guarantee shall not affect any rights of the Beneficiary under this Guarantee created, incurred or contracted prior to expiry of the Termination Notice Period.

## 5     Limitation of Liability

The total liability of the Guarantor under Clause 3 of this Guarantee shall not exceed Ten Million dollars (USD10,000,000.00) (the "**Guaranteed Cap**"). In addition to the Guaranteed Cap, the Guarantor shall, within three (3) Business Days of demand, pay to the Beneficiary the amount of all costs and expenses (including legal fees) incurred by the Beneficiary in connection with the enforcement of, or the preservation of any rights under, this Guarantee or the Agreements and any proceedings instituted by or against the Beneficiary as a consequence of taking or holding this Guarantee or enforcing those rights.

## 6     Reinstatement

If any discharge, release or arrangement (whether in respect of the obligations of the Counterparty or otherwise) is made by the Beneficiary in whole or in part on the basis of any payment, security or other disposition which is avoided or must be restored in insolvency, liquidation, administration or otherwise, without limitation, then the liability of the Guarantor under this Guarantee will continue or be reinstated as if the discharge, release or arrangement had not occurred.

I, DIEGO VALDERRAMA, hereby certify that I am fluent in English and Spanish, and that the attached document is an accurate translation made by me, to the best of my knowledge.

2

## 7   Waiver of Defences

7.1   The obligations and liabilities of the Guarantor under this Guarantee will not be affected by an act, omission, matter or thing which, but for this Clause 7, would reduce, release or prejudice any of its obligations under this Guarantee (without limitation and whether or not known to it or the Beneficiary) including:

7.1.1   any extension of time, renewal, settlement, compromise, waiver or release under or in relation to the Agreements;

7.1.2   any variation, release, exchange, failure to perfect or invalidity of any direct or indirect right or security for any of the Counterparty's obligations and liabilities under or in relation to the Agreements;

7.1.3   any amendment, novation, supplement, extension restatement (however fundamental and whether or not more onerous) or replacement of the Agreements or any other document or security relating thereto including, without limitation, any change in the purpose of, any extension of or increase in any terms or obligations or the addition of any new obligations under any of the Agreements or any other document or security relating thereto;

7.1.4   any insolvency, winding up, similar proceedings or other proceedings for protection from its creditors and any change in the constitution, control, ownership, name or style of Counterparty or any other person;

7.1.5   any incapacity or lack of power, authority or legal personality of or dissolution or change in the members or status of the Counterparty or any other person; or

7.1.6   any other act, failure to act or delay of any kind by the Counterparty or any entity or person or any other circumstance which might, but for the provisions of this Clause 7, constitute a legal or equitable discharge of any of the Guarantor's Obligations.

7.2   The Guarantor waives any right it may otherwise have of first requiring the Beneficiary (or any trustee or agent on its behalf) to proceed against, or enforce any rights or security or claim payment from, the Counterparty or any other person before claiming from the Guarantor. This waiver applies irrespective of any law or any provision of any other document to the contrary.

## 8   Representations and Warranties

8.1   The Guarantor represents and warrants to the Beneficiary on the date hereof (which representations and warranties will be deemed to be repeated by the Guarantor on each date on which an Agreement is entered into), that:

8.1.1   it is duly organised and validly existing and in good standing under the laws of the jurisdiction in which it was organised and has the power and authority to execute, deliver and perform this Guarantee;

8.1.2   its execution, delivery and performance of this Guarantee have been and remain duly authorised by all necessary corporate action and do not

I, DIEGO VALDERRAMA, hereby certify that I am fluent in English and Spanish, and that the attached document is an accurate translation made by me, to the best of my knowledge.

3

contravene any provision of its certificate of incorporation or by-laws or any law, regulation or contractual restriction binding on it or its assets;

8.1.3   this Guarantee constitutes the legal, valid and binding obligations of the Guarantor, enforceable against the Guarantor in accordance with its terms, subject, as to enforceability only, to applicable bankruptcy, moratorium, insolvency or similar laws affecting the rights of creditors generally and to general principles of equity;

8.1.4   the execution, delivery and performance of this Guarantee require no action by, or filing with, any governmental body or any court having jurisdiction over the Guarantor;

8.1.5   the obligations expressed to be assumed by the Counterparty in the Agreements are legal, valid, binding and enforceable obligations;

8.1.6   the Counterparty has the power to enter into, perform and deliver, and has taken all necessary action to authorise its entry into, performance and delivery of, the Agreements and the transactions contemplated by the Agreements;

8.1.7   no corporate action, legal proceeding or other procedure or equivalent insolvency proceeding or creditors' process has been taken or, to the knowledge of the Guarantor, threatened in relation to the Counterparty;

8.1.8   neither the Counterparty nor the Guarantor or is owned or controlled by, or acting directly or indirectly on behalf of or for the benefit of, a person or entity which is managed or controlled in prohibition of any applicable sanctions in any relevant jurisdiction; and

8.1.9   the Counterparty and the Guarantor have conducted their businesses in compliance with applicable anti-corruption laws and have instituted and maintained policies and procedures designed to promote and achieve compliance with such laws.

## 9      Recovery Rights

9.1     The Beneficiary may set off any matured obligation due from the Guarantor under this Guarantee against any matured obligation owed by the Beneficiary to the Guarantor, regardless of place of payment or current of either obligation. If the obligations are in different currencies, the Beneficiary may convert either obligation at a market rate of exchange in its usual course of business for the purpose of the set-off.

9.2     Until all amounts which may be or become payable by the Counterparty under or in connection with the Agreements have been irrevocably paid in full and unless the Beneficiary otherwise directs, the Guarantor will not exercise any rights which it may have by reason of any amount being payable, or liability arising, under this Guarantee:

9.2.1   to be indemnified by the Counterparty;

9.2.2   to claim any contribution from any other guarantor of the Counterparty's obligations under the Agreements;

I, DIEGO VALDERRAMA, hereby certify that I am fluent in English and Spanish, and that the attached document is an accurate translation made by me, to the best of my knowledge.

9.2.3   to take the benefit (in whole or in part and whether by way of subrogation or otherwise) of any rights, security or moneys held, received or receivable by the Beneficiary or be entitled to any right of contribution;

9.2.4   to bring any legal or other proceedings for an order requiring the Counterparty to make any payment, or perform any obligations, in respect of which the Guarantor has given a guarantee, undertaking or indemnity under Clause 3;

9.2.5   to exercise any right of set-off against the Counterparty; or

9.2.6   to claim or prove as a creditor of the Counterparty in competition with the Beneficiary.

9.3   If the Guarantor receives any benefit, payment or distribution in relation to the rights referred to in Clause 9.1 it shall hold that benefit, payment or distribution to the extent necessary to enable all amounts which may be or may become payable to the Beneficiary by the Counterparty under or in connection with the Agreements to be paid in full on trust for the Beneficiary and shall promptly pay or transfer the same to the Beneficiary or as the Beneficiary may direct.

9.4   All sums which the Beneficiary receives under or in connection with this Guarantee shall, unless otherwise agreed by the Beneficiary, be applied by the Beneficiary in or towards satisfaction of, or retention on account for, the indebtedness of the Counterparty under the Agreements in such manner as the Beneficiary may in its discretion determine.

9.5   The Beneficiary may place any money received by it under or in connection with this Guarantee to the credit of a suspense account on such terms and subject to such conditions as the Beneficiary may in its discretion determine for so long as the Beneficiary thinks fit without any obligation in the meantime to apply that money in or towards discharge of the Counterparty's indebtedness under the Agreements and, despite such payment, the Beneficiary may claim against the Counterparty or prove in the bankruptcy, liquidation or insolvency of the Counterparty for the whole of the Counterparty's indebtedness under the Agreements at the date of the Beneficiary's demand for payment pursuant to this Guarantee, together with all interest, commission, charges and expenses accruing subsequently.

## 10   Assignment

The Guarantor may not assign all or any of its rights under this Guarantee without the prior written consent of the Beneficiary.

## 11   Payment; No Deductions

11.1   All payments to be made by the Guarantor under this Guarantee shall be paid to the Beneficiary's account at such office or bank as the Beneficiary may notify to the Guarantor in writing from time to time.

11.2   All payments made or to be made by the Guarantor under this Guarantee shall be made in full without any deduction, withholding, set-off or counterclaim on account of any taxes or any claim that the Counterparty, the Guarantor or any other guarantor may have against the Beneficiary or otherwise.

I, DIEGO VALDERRAMA, hereby certify that I am fluent in English and Spanish, and that the attached document is an accurate translation made by me, to the best of my knowledge.

5

11.3    If the Guarantor is compelled by law to make any deduction or withholding, then it shall account for the same to the relevant authority as and when required by law and shall pay to the Beneficiary all necessary additional amounts to ensure receipt and retention (free from any liability) by the Beneficiary of the full amount which it would have received had the payment not been subject to the deduction or withholding.

## 12    Default interest

If the Guarantor fails to pay any amount payable by it under this Guarantee on its due date, interest shall accrue on the overdue amount from the due date up to the date of actual payment (both before and after judgment) at the rate of 2%.  Any interest accruing under this Clause 12 shall be immediately payable by the Guarantor on demand by the Beneficiary.

## 13    Currency Indemnity

13.1    If any sum due from the Guarantor under this Guarantee (for the purposes of this Clause 13 a "**Sum**"), or any order, judgment or award given or made in relation to a Sum, has to be converted from the currency in which that Sum is payable (for the purposes of this Clause 13 the "**First Currency**") into another currency (for the purposes of this Clause 13 the "**Second Currency**") for the purpose of:

13.1.1    making or filing a claim or proof against the Guarantor, or

13.1.2    obtaining or enforcing an order, judgment or award in relation to any litigation or arbitration proceedings,

the Guarantor shall as an independent obligation, within three (3) Business Days of demand, indemnify the Beneficiary against any cost, loss or liability arising out of or as a result of the conversion including any discrepancy between (a) the rate of exchange used to convert that Sum from the First Currency into the Second Currency and (b) the rate or rates of exchange available to the Beneficiary at the time of its receipt of that Sum.

13.2    The Guarantor waives any right it may have in any jurisdiction to pay any amount under this Guarantee in a currency or currency unit other than that in which it is expressed to be payable.

## 14    Security

14.1    This Guarantee is in addition to and is not in any way prejudiced by any other guarantee or security now or subsequently held by the Beneficiary.

14.2    The Guarantor has not taken, and will not take without the prior written consent of the Beneficiary (and then only on such terms and subject to such conditions as the Beneficiary may impose), any security from the Counterparty in connection with this Guarantee, and any security taken by the Guarantor notwithstanding this Clause 14.2 shall be held by the Guarantor in trust for the Beneficiary absolutely as a continuing security for the Guarantor's liabilities under this Guarantee.

I, DIEGO VALDERRAMA, hereby certify that I am fluent in English and Spanish, and that the attached document is an accurate translation made by me, to the best of my knowledge.

6

**15    Remedies and Waivers**

No failure to exercise, nor any delay in exercising, on the part of the Beneficiary, any right or remedy under this Guarantee shall operate as a waiver of such right or remedy. No single or partial exercise of any right or remedy shall prevent any further or other exercise or the exercise of any other right or remedy. The rights and remedies provide in this Guarantee are cumulative and not exclusive of any rights or remedies provided by law.

**16    Severability**

If, at any time, any provision of this Guarantee is or becomes illegal, invalid or unenforceable in any respect under any law of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions nor the legality, validity or enforceability of such provision under the law of any other jurisdiction will in any way be affected or impaired.

**17    Notices and Certificate**

17.1    Any notice or communication to be given under or in connection with this Guarantee shall be in writing (in English) and may be delivered by hand, sent by post, fax, email or by commercial courier to the following addresses:

17.1.1    to the Guarantor:

Address: 77B Street 59-61 Office1101 Barranquilla - Colombia

Attention: Jaime Alberto Ochoa Muñoz

Email: manager@ciinternationalfuels.com

17.1.2    to the Beneficiary:

| | |
|---|---|
| Address: | Peninsula Petroleum, 1st Floor, Byron House, 7/9 St James's St, London, SW1A 1EE, UK |
| Attention: | Legal Department |
| Fax: | +44 (0)20 7930 9096 |
| Email: | legal@peninsulapetroleum.com |

17.2    Without prejudice to the foregoing, any notice shall conclusively be deemed to have been received at the time of delivery if delivered by hand or courier and at the time of transmission in legible form if delivered by fax.

17.3    Any certificate by any person duly authorised by the Beneficiary as to the money and liabilities for the time being due, owing or incurred by the Guarantor to the Beneficiary shall (save for manifest error) be conclusive evidence in any legal proceedings commended against the Guarantor.

**18    Amendments and Variations**

18.1    No amendment or variation to the terms of this Guarantee shall be effective unless made or confirmed in a written document signed by the Guarantor and the Beneficiary.

I, DIEGO VALDERRAMA, hereby certify that I am fluent in English and Spanish, and that the attached document is an accurate translation made by me, to the best of my knowledge.

7

```
ERROR: undefined
OFFENDING COMMAND: Sans

STACK:

/AAAAAC+*Microsoft
/FontName
```