**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No.: 22-cv-20712-RKA

PENINSULA PETROLEUM LIMITED,

                  Plaintiff,

      v.

CI INTERNATIONAL FUELS LLC,

                  Defendant.     /
_____

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S RENEWED MOTION TO DISMISS (DKT. 69)**

Plaintiff, Peninsula Petroleum Limited ("Peninsula" or "Plaintiff"), by and through its undersigned counsel, respectfully submits this memorandum of law in opposition to the Renewed Motion to Dismiss (Dkt. 69 "Renewed Motion") filed by CI International Fuels LLC ("Defendant" or "CI Int'l"). For the reasons stated below, Defendant's Motion should be denied in its entirety.

## PRELIMINARY STATEMENT

Despite this being the *third* time Defendant has moved to dismiss Peninsula's claims under the doctrine of *forum non conveniens* (*see* Dkt. 26: "Defendant's First Motion," and Dkt. 52: "Defendant's Second Motion"), and despite Defendant twice seeing Peninsula's arguments in opposition (*see* Dkt. 29: "First Opp. Memo," and Dkt. 60: "Second Opp. Memo"), Defendant *still* fails to present any evidence that the applicable language in either the Master Sale and Purchase Agreement (Dkt. 38-2: "Master Agreement") or the Pledge Agreement (Dkt. 60-8, Exhibit 2 to Johnson Declaration: "Pledge Agreement"[1]) precludes litigation in the Southern District of Florida. And while Defendant's arguments surrounding diversity jurisdiction are now before this Court for the first time, it offers no evidence of citizenship or domicile elsewhere. Instead, the Renewed Motion is filled with wholly conclusory assertions bereft of factual detail; it must therefore be dismissed.

The Renewed Motion wholly abandons Defendant's previous arguments relating to the Master Agreement. In fact, Defendant blatantly contradicts its prior filings, now arguing that "this dispute does not fall within the ambit of the Master Agreement's arbitration clause." (Renewed Motion at 12.) This remarkable turn of events cannot be understated. Defendant cannot convince this Court that Peninsula's liquidated claim is within the Master Agreement's forum selection

---

[1] The Pledge Agreement was attached to the original Verified Complaint (Dkt. 1) as Exhibit 3 (Dkt. 1-3). Due to a clerical error, it was attached to the Amended Verified Complaint (Dkt. 38). Peninsula discovered this clerical error when responding to Defendant's Second Motion and attached it as an exhibit to Joseph Johnson's Declaration (Dkt. 60-6) in support of the Second Opp. Memo.

clause, so it now sets its sights on the jurisdiction clause found in the parties' Pledge Agreement. Leaving aside the clear prejudice to Peninsula from Defendant's third pivot to a new argument more than a full calendar year since the case was commenced, Defendant's argument yet again misses the mark. That is, Defendant fails to argue that the Pledge Agreement's forum selection clause is mandatory. As ample Florida case law establishes, the Pledge Agreement's forum selection clause is *permissive*, not *mandatory*, thus permitting litigation in fora other than Colombia, including here.

Alternatively, Defendant's Renewed Motion once again fails to provide any argument that an adequate alternative forum is available or that public interest factors weigh in favor of dismissal. Rather – appearing as a common theme throughout the Renewed Motion – Defendant simply states in wholly conclusory fashion that Colombia is an adequate alternative forum. A single paragraph wholly bereft of any evidentiary support clearly fails the Eleventh Circuit's two-part test of requiring the defendant to "demonstrate both the availability and the adequacy of the proposed alternative forum." *Tyco Fire & Sec. LLC*, 218 Fed. Appx. 860, 865 (11th Cir. 2007); quoting *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001).

Defendant also makes no effort to argue that the Third Claim for Relief (Fraudulent Transfers) in the Amended Verified Complaint was subject to its *forum non conveniens* arguments. And it is easy to see why: a fraudulent transfer claim based on post-litigation transfers of money in this Florida limited liability company's Florida bank accounts is clearly outside the scope of either the Master or the Pledge Agreement. That is, now Defendant only directs its *forum non conveniens* argument at the Second Claim for Relief in the Amended Complaint, all but conceding that 2/3 of the claims are properly before this Court. As such, under 28 U.S.C. § 1367(a), this Court

at minimum would retain supplemental jurisdiction over any claims that it does not have original jurisdiction over.

Finally, now for the first time, Defendant argues that this Court lacks diversity jurisdiction under 28 U.S.C. §1332 because Defendant's principles are allegedly domiciled in Colombia, not Florida. Leaving aside the obvious prejudice that Peninsula suffered by Defendant choosing to withhold this argument until this juncture in the proceedings, Defendant's argument is nothing more than a series of negative allegations which, under applicable law, fall woefully short of the distinct and affirmative allegations of citizenship that a Court must rely upon to determine whether it has subject matter jurisdiction under 28 U.S.C. § 1332. As such, the Renewed Motion must be denied at this juncture or, alternatively, held in abeyance until such time as Peninsula is afforded the opportunity to conduct limited jurisdictional discovery to uncover relevant information related to Defendant's principals' domicile that Peninsula is otherwise not privy to.

## I.  SUMMARY OF THE FACTS AND PROCEDURAL POSTURE[2]

### A. Plaintiff's Liquidated Claim

The facts of this matter, established by Plaintiff's Amended Verified Complaint and uncontradicted by the Declaration of Jaime Ochoa[3], the Manager of CI Int'l (Dkt. 26-2: "First Ochoa Decl."), are relatively straightforward. On or about October 26, 2020, the parties entered into the Master Agreement, whereby Peninsula agreed to sell and CI Int'l agreed to purchase

---

[2] In large part, this section of this Opposition Memorandum mirrors what has already been put forth in both the First Opp. Memo and Second Opp. Memo. (*See* Dkt. 29 pgs. 4-8; Dkt. 60 pgs. 3-10). However, in light of both the Court's denial of Defendant's previous motions to dismiss (*see* Dkt. 68) and the fact that, more than a full calendar year into the proceedings, Defendant is just now raising the issue of whether this Court has diversity jurisdiction, relevant facts are herein restated to properly apprise the Court of the factual background.

[3] It should be noted that Defendant's First Motion was denied without prejudice by this Court on November 6, 2022. (Dkt. 37). Despite this, Defendant repeatedly references declarations that were attached to Defendant's First Motion and Defendant's First Reply. Even more peculiar, Defendant's Renewed Motion repeatedly cites to exhibits that were not even attached.

marine fuel. (AVC ¶¶ 16-17; First Ochoa Decl. ¶ 6.) On December 3, 2020, Peninsula sold and delivered to CI Int'l a total cargo of approximately 15,000 MT of said fuel pursuant to three Cargo Recaps of 5,000 MT each. Two weeks later, Peninsula issued three pro-forma invoices, each for USD 2,025,000.00 (tentatively priced at USD 405 per MT, the market price at that time). (AVC ¶¶ 21-23.) CI Int'l then made all the payments in relation to each Pro-forma Invoice (as set forth on Schedule 1 to the AVC), over the course of February, March, and April, 2021 (subject to a slight downward adjustment to reflect the actual total discharge volume of 14,969.728 MT, such that the third invoice was only for 4969.728 MT). (*Id.*)

Due to low demand and rising prices, CI Int'l did not immediately lift any of the 14,969.728 MT of oil that had been sold and delivered to it. (*Id.* ¶ 24.) The first 5,000 MT was lifted and price-adjusted on or about 3 May 2021 (*i.e.,* four months after delivery), at which time Peninsula sent a price-adjusted invoice for a total amount of USD 334,912.50, which was fully paid by CI Int'l. (*Id.* ¶ 25.) Another 1,000 MT was lifted and price-adjusted on or about 24 May 2021, at which time Peninsula sent a price-adjusted invoice for a total amount of USD 82,750.00, which was also fully paid. (*Id.* ¶ 26.) By mid-May 2021, market prices concerning marine fuel had gone up significantly. (*Id.* ¶¶ 27.) Peninsula demanded that the parties agree upon the price adjustment for the balance of the oil (roundly in the amount of 9,000 MT), that had not yet been lifted by CI Int'l, in order for CI Int'l to pay the difference to Peninsula. (*Id.*)

In or around June 2021, the parties did agree upon a price adjustment, which was memorialized via five corresponding invoices. (AVC ¶ 28.) However, CI Int'l soon became in default of each of those invoices and never paid the sums that it previously agreed were due and owing to Peninsula. (*Id.* ¶¶ 29-32.) Despite acknowledging its debt owed to Peninsula, CI Int'l

failed to make a single payment. This forced Peninsula to commence this litigation for its liquidated claim.

**B. Defendant's Presence in this District and the Convenience of this Venue**

CI Int'l is incorporated under the laws of Florida, is registered and has active status with the Florida Division of Corporations, and lists its "principal address" as located in North Bay Village, Florida. (Dkt. 38-1: Ex. 1 to AVC – Florida Division of Corporations materials, registration details, certificate of status and amendment to articles of organization.) Mr. Ochoa and Maria M. Roa are listed as 100% members of CI Int'l, and they list the same North Bay Village address as their own. (*Id.*)

Mr. Ochoa asserted that CI Int'l "does not have any assets, employees, premises or any other sort of infrastructure or operations conducted in Florida or elsewhere in the United States." (First Ochoa Decl. ¶9.) Leaving aside the ambiguous and conclusory nature of that statement, it seems impossible to reconcile it with the registration status of CI Int'l.

Although Defendant's Renewed Motion argues that Mr. Ochoa and Maria M. Roa both reside in Colombia, the fact remains that the Detailed Report of the Miami-Dade County Office of the Property Appraiser shows that CI Int'l's business address is a two-bedroom, two-bathroom condominium zoned "multi-family" with primary land use "residential" owned by Maria M. Roa. (Exhibit 1 to Dkt. 60-6 "Johnson Declaration.") Moreover, CI Int'l issued invoices to Peninsula from a Florida address. And despite Defendant's Renewed motion stating that CI Int'l has no assets or other infrastructure in Florida, Mr. Ochoa's previous declarations have been craftily worded to avoid admitting or denying that CI Int'l has either a Florida bank account or a bank account in one of the other 49 states. It turns out that CI Int'l has Florida bank accounts: from which it emptied its balances, serving as the basis for Peninsula to amend the complaint to assert a fraudulent transfer claim. (*See* Dkt. 36.)

### C. Operative Terms of Relevant Contracts

#### i.   Master Agreement

Even though Defendant now argues against its previous position that § 11.2 of the Master Agreement should compel arbitration of the claims, an overview of the relevant forum selection clauses at issue is still highly beneficial. And, in any event, Defendant's passing comment that "disputes and/or claims arising [from the Master Agreement] shall be subject to arbitration" (Dkt. 69 at 3) is demonstrably false.  Instead, upon close scrutiny, the Governing Law and Arbitration Section of the Master Agreement (Section 11) says something entirely and materially different than how Defendant has argued to this point.

Said Section is subdivided into two subsections:

Clause 11.1 provide as follows:

> The construction, validity and performance of this Master Sale and Purchase Agreement and/or any Cargo Recap and/or any Bunker Recap and **any dispute or claim** arising out of or in connection with this Master Sale and Purchase Agreement and/or any Cargo Recap and/or any Bunker Recap and their subject matter or formation (**including non-contractual disputes or claims**) shall be governed by and construed in accordance with English law to the exclusion of any other law which may be imputed in accordance with choice of law rules applicable in any jurisdiction. [Emphasis added.]

Clause 11.2 provides as follows:

> 11.2 **Any dispute** arising out of or in connection with this Master Sale and Purchase Agreement and/or any Cargo Recap and/or any Bunker Recap, **including any question regarding their existence, validity or termination**, shall be referred to and finally resolved by arbitration under the LCIA Riles, which Rules are deemed to be incorporated by reference into this clause. The number of arbitrators shall be one. The seat, or legal place, of arbitration shall be London, England. The language to be used in the arbitral proceedings shall be English. [Emphasis added.]

The governing law clause (§ 11.1) recognizes a distinction between disputes and claims, is intended to cover both, and even extends beyond the contract itself to "non-contractual disputes or claims." But the arbitration clause (§ 11.2) is far narrower in its scope; it is limited to *disputes*.

There was an obvious and intentional drafting decision to exclude many types of matters from arbitration *to wit*, contractual and non-contractual claims arising out of the Master Agreement. The Amended Complaint's First Claim for Relief – a liquidated claim based upon the Master Agreement – is one such matter clearly excluded from arbitration.

### ii. Pledge Agreement

CI Int'l is correct in saying that the Pledge Agreement has an applicable law and jurisdiction clause, which provides that the parties submit to the jurisdiction of Colombia:

> The Parties agree that this Agreement will be governed by the laws of Colombia and submit expressly and irrevocably to the jurisdiction of the competent judges of Colombia.

(Dkt. 60-8 at 24 § 8.11.) However, this is not an exclusive/mandatory jurisdiction provision. In any event, as set forth in the Amended Verified Complaint (Dkt. 38 ¶¶ 54-67), a security interest was granted over "Assets" broadly defined to encompass not just the cargoes of marine fuel themselves that were sold and delivered to CI Int'l but also any proceeds or other assets derived from them. That may include any monies that CI Int'l received or may receive in respect of that marine fuel, subjecting it to the security interest that Peninsula is seeking to enforce. More specifically, that likely includes proceeds that flowed into Florida and are now assets of CI Int'l.

## II. LEGAL STANDARD

### A. Forum Non Conveniens

"When a defendant objects to venue under Rule 12(b)(3), the plaintiff bears the burden of showing that the venue selected is proper." *HNA LH OD, LLC v. Local House International, Inc.*, 2021 WL 44549404 *3 (S.D .Fla. September 29, 2021); citing *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988) (explaining that the plaintiff must make "only a prima facie showing of venue"); and *BP Prods. N. Am., Inc. v. Super Stop 79, Inc.*, 464 F. Supp. 2d 1253, 1256 (S.D. Fla. 2006). "The facts as alleged in the complaint are taken as true, to

the extent they are uncontroverted by defendants' affidavits." *Delong Equip. Co.*, 840 F.2d at 845. "[W]hen an allegation is so challenged the court may examine facts outside of the complaint to determine whether venue is proper….The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Wai v. Rainbow Holdings*, 315 F.Supp.2d 1261, 1268 (S.D. Fla. 2004).

"Generally, venue in federal civil actions is governed by 28 U.S.C. § 1391." *HNA LH OD, LLC*, 2021 WL 44549404 *3. "However, if there is a forum-selection provision that requires the dispute to be litigated in a non-federal forum, the United States Supreme Court has determined that a motion to dismiss for forum non conveniens, and not a Rule 12(b)(3) motion for improper venue, is the appropriate means to enforce a valid forum-selection clause." *Id.*; citing *Atl. Marine Constr. Co. v. United States Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 60 (2013).

When moving for dismissal under the doctrine of *forum non conveniens*, the movant has the burden of persuasion in proving all elements of its motion, and must demonstrate that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014); quoting *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310-11 (11th Cir. 2001). But "[t]he existence of a valid forum-selection clause requires a district court to apply the Supreme Court's modified *forum non conveniens* analysis — namely, courts must assess (1) whether an adequate alternative forum is available, and (2) whether the public factors weigh in favor of dismissal." *HNA LH OD, LLC*, 2021 WL 4459404 at *9; quoting *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 63-65 (2013).

However, the Court is still required to determine whether a plaintiff's claims at issue are within the scope of the parties' forum selection clause. "'Under general contract principles, the plain meaning of a contract's language governs its interpretation.' *Slater v. Energy Servs. Grp. Int'l, Inc.*, 643 F.3d 1326, 1330 (11th Cir. 2011) [internal citation omitted]. Thus, '[t]o determine if a forum-selection clause encompasses a particular type of claim, we look to its language.' *Stiles*, 637 F. App'x at 559 (citing *Slater*, 634 F.3d at 1330)." *HNA LH OD, LLC*, 2021 WL 4459404 *6.

## B. Diversity Jurisdiction

Where a party is a limited liability company, its citizenship is determined based on the citizenship of its members. *Rolling Green MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1021-22 (11th Cir. 2004). Diversity of citizenship must exist at the time a complaint is filed for a federal court to have jurisdiction. *Huchon v. Jankowski*, 2007 WL 221421 (S.D. Fla. Jan. 25, 2007) [internal citations omitted]. "Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction." *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002). A person is not necessarily a citizen of, or domiciled in, the state in which he resides at any given moment. *See McDonald v. Equitable Life Ins. Co. of Iowa*, 13 F.Supp.2d 1279, 1280 (M.D. Ala. 1998 [internal citation omitted]). Instead, a court should look to a person's physical presence within a state, and his/her mental intent to make a home there indefinitely. *Id.*

Facts frequently considered in determining an individual's domicile include, but are not limited to: (i) current residence; (ii) residence of family and dependents; (iii) place of employment and name of business; (iv) voting registration and voting practices; (v) location of personal and real property; (vi) location of brokerage and bank accounts; (vii) membership in church, clubs, and business organizations; (viii) driver's license and automobile registration; and (ix) payment of taxes. *Id.*; citing *Garcia v. American Heritage Life Ins. Co.*, 773 F.Supp. 516, 520 (D.P.R.1991);

13B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure §

3612. Still other facts can be revealed by medical records, utility bills, employment records, and

professional licenses. *Smyth v. Hillstone Rest. Group, Inc.*, 2013 WL 2048188, at *2 (S.D. Fla.

May 14, 2013).

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule

[of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to

adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). A defendant can move

to dismiss a complaint for lack of subject matter jurisdiction by mounting either a facial or factual

attack on the complaint. *Stalley ex rel. U.S. v. Orlando Regional Healthcare System, Inc.*, 524 F.3d

1229, 1232 (11th Cir. 2008); citing *McElmurray v. Consol. Gov't of Augusta-Richmond County*,

501 F.3d 1244, 1250 (11th Cir. 2007). A factual attack challenges the existence of subject matter

jurisdiction using material extrinsic from pleadings, such as affidavits or testimony. *Id.* Unlike the

burden for a motion to dismiss under Fed R. Civ. P. 12(b)(6), a "plaintiff asserting subject matter

jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*,

201 F.3d at 113.

### III. ARGUMENT

**B. Neither the Master Agreement nor the Pledge Agreement require the parties to litigate undisputed claims in arbitration or Colombian courts.**

As noted, Defendant has abandoned its previous arguments that were so heavily focused

on the forum selection clause of the Master Agreement. That is, even though both Defendant's

First and Second Motions Defendant argued repeatedly for a strained reading of the "dispute or

claim" language in Master Agreement § 11.1 as being akin to the "dispute arising out of or in

connection with" language in Master Agreement § 11.2, in Defendant's Renewed Motion there is

but one brief mention of this point:

> The Master Agreement provides for mandatory arbitration as to "any disputes arising out of or in connection with the Master Sales and Purchase Agreement and/or any Cargo recap and/or Bunker Recap…." Pursuant to the agreements of the parties, such disputes shall be governed by English law and disputes and/or claims arising therefrom shall be subject to arbitration which shall proceed in accordance with the London Court of International Arbitration ("LCIA").

(Renewed Motion at 3-4.) Yet Defendant, just a few pages later, wholly concedes the irrelevance of the above: "***Both parties take the position that the dispute does not fall within the ambit of the Master Agreement's arbitration clause***…" (*Id.* at 12 [emphasis added].) Nonetheless, out of an abundance of caution, Peninsula briefly addresses Defendant's continued misinterpretation of the Master Agreement's Section 11 and the mischaracterization of the Amended Complaint's First Claim for Relief as a *dispute* rather than a *liquidated claim*.

Defendant yet again offers no evidence that it somehow did not agree to the amounts Peninsula said it owed, as properly pled in the Amended Complaint. (AVC ¶35.) Remarkably, in all this time, Mr. Ochoa has made a single conclusory statement (in a previous reply) that he did not agree to the price adjustment. But it was not appropriate then for Defendant to manufacture a "dispute" after the fact by contradicting its contemporaneous words and actions, and it would be inappropriate to try to do so now. That ship has long since sailed.

"Generally, a party should not use a reply brief to raise or submit new issues or facts for the first time." *Hogan v. City of Fort Walton Beach*, 2019 WL 11638966 at *2 (N.D. Fla. June 3, 2019); citing *Martinez v. Weyerhaeuser Mortg. Co.*, 959 F.Supp. 1511, 1515 (S.D. Fla. 1996); *see also Garner v. Acuity Brands Lighting, Inc.*, 2017 WL 10753617 at *14 (N.D. Ga. July 6, 2017) ("The Court perceives no basis to consider this new evidence, filed for the first time as an attachment to a reply brief… such evidence is not typically considered absent a showing of excusable neglect."). Although the remainder of the Renewed Motion focuses on the forum selection clause of the Pledge Agreement, ***not*** the Master Agreement, Peninsula renews its

11

arguments made in its prior filings that the liquidated claim before this Court is entirely removed from the Master Agreement's forum selection clause as a ***claim***, not a ***dispute***.

### C. Defendant's newest position – that the forum selection clause in the Pledge Agreement precludes its enforcement here – fails because the clause is *permissive*, not *exclusive*.

Defendant's Renewed Motion makes no effort to distinguish between exclusive and non-exclusive forum selection clauses. Instead, it argues first (without any support) that the Pledge Agreement's "terms of enforcement superseded those set forth in the Master Agreement." (Renewed Motion at 9.) Then, it argues that "the arbitration clause of the Master Agreement is superseded by the forum selection clause contained in the Pledge Agreement because PPL is seeking to enforce its security interest." (*Id.* at 12.) Finally, it argues that the Court should "find that the forum selection clause in the Pledge Agreement is superseding and controlling and enforce the forum selection clause by dismissing Plaintiff's Amended Complaint and further awarding the Defendant attorney's fees along with all other relief the Court deems appropriate." (*Id.* 14.) Defendant's newfound reliance on the Pledge Agreement and its forum selection clause, bereft of any case law or facts to support it, is baseless for multiple reasons.

At the outset, it should be noted that Peninsula readily admits that it filed an action in Colombia to enforce the terms of the Pledge Agreement against Defendant's assets found *there*. That does not bear on the claims before this Court which, *inter alia*, seek to enforce the terms of the Pledge Agreement against Defendant's assets found *here*. (*See* AVC ¶¶38-40 (establishing multiple Florida bank accounts held by Defendant); ¶¶60-61 (establishing the funds in these accounts as being "Assets" as defined in the Pledge Agreement.) Two lawsuits seeking to enforce against assets of the same company in two jurisdictions does not make one jurisdiction unsuitable. Colombia is not the proper forum for execution against Defendant's assets located in Florida.

In any event, Pledge Agreement § 8.11 – "Applicable Law and Jurisdiction" – is a permissive forum selection clause. It is only after a court determines that a forum selection clause is mandatory that the party seeking to litigate elsewhere need satisfy the "heavy burden" of showing that it should be invalidated via the factors enumerated in *Holmes v. Westport Shipyards, Inc.*, 2004 WL 3019363 (S.D. Fla. Aug. 10, 2004) cited in Defendant's Renewed Motion.

"Where a forum selection clause exists, the court must first assess whether the clause is mandatory or permissive." *Trafalgar Capital Specialized Inv. Fund (In Liquidation) v. Hartman*, 878 F.Supp.2d 1274, 1282 (S.D. Fla. 2012); citing *Slater v. Energy Servs. Group Int'l Inc.*, 634 F.3d 1326, 1330 (11th Cir.2011). "A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere. A mandatory clause, in contrast, 'dictates an exclusive forum for litigation under the contract.'" *Id.* [internal citations omitted]. "A distinctive characteristic of a mandatory selection clause is the use of the term 'shall,' which prescribes a requirement." *Id.* at 1283 [internal citations omitted].

In *SeaPower, Inc. v. Tonbo Imaging PTE Ltd.*, 2021 WL 9565797 (S.D. Fla. June 15, 2021), the Honorable Federico A. Moreno found the following forum selection clause to be permissive, not mandatory:

> 15.1. This Agreement shall be governed by and construed in accordance with the laws of Singapore and each Party irrevocably agrees to submit to the jurisdiction of the courts of Singapore over any claim or matter arising under or in connection with this Agreement.

*SeaPower, Inc.*, 2021 WL 9565797 at *1. In doing so, he referenced a state court decision out of Florida's Third District Court of Appeals in which a similar clause was found to be permissive after careful analysis of four other federal court decisions faced with similar language. *See id.* Each of these decisions dealt with language strikingly similar to that in Pledge Agreement § 8.11, all including the glaring omission of the words "exclusive" or "shall" in relation to where claims

under said clauses may be heard. Pledge Agreement § 8.11 omitted these key words in a very deliberate attempt to create a forum selection clause that left the door opened for the parties to seek relief under its terms in fora other than Colombia. As such, Defendant's Renewed Motion is meritless, and it should be dismissed.

**D. Alternatively, Defendant's Motion does not satisfy the elements of *forum non conveniens* analysis.**

    **i.   CI Int'l fails to meet its burden of demonstrating that an adequate alternative forum exists outside of this Court.**

Alternatively, should this Court find that the forum selection clauses in either the Master or Pledge Agreement be applicable and mandatory, Defendant's Renewed Motion still falls woefully short of satisfying its evidentiary burden. This Court may not simply take as true the myriad unsubstantiated statements in Defendant's argument that Colombia is an adequate and available forum for these Florida claims; this would be an improper burden-shifting. *See Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed.Appx. 860 (11th Cir. 2007). Nor did the Renewed Motion demonstrate that adequate remedies exist in Colombia for the claims with respect to the Master Agreement. The Renewed Motion, filed without little factual support, clearly fails the two-part test in *Tyco Fire*, where the Eleventh Circuit finds that "the defendant must demonstrate both the availability and the adequacy of the proposed alternative forum." *Tyco Fire & Sec. LLC*, 218 Fed.Appx. at 865; quoting *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001).

As such, Defendant failed to show that an adequate alternative forum is available to Peninsula for the claims before this Court, and its *forum non conveniens* argument must fail.

    **ii.   CI Int'l fails to meet its burden showing that public interest factors support enforcement of a forum-selection clause.**

Even if the Court finds that Defendant met its burden in demonstrating that Colombia is an adequate alternative forum, it still must weigh the public interest factors in keeping the matter here.

*See HNA LH OD, LLC*, 2021 WL 4459404 at \*9; quoting *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 63-65 (2013). In considering public factors, the court should look to the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, and the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1991).

Clearly, this case has a general nexus with the Southern District of Florida such that it is sufficient and proper to use this forum's judicial time and resources. But Defendant seeks to have the best of both worlds. It argues that it should be free to take advantage of a "tax and sales/purchase strategy" by incorporating in Florida yet should somehow be immune from litigation in the very state in which it is incorporated and where one of its members owns a residence registered with the Florida Secretary of State as its principal place of business.

Peninsula respectfully submits that this Court should be guided by the Western District of Texas' recent decision in *Sisk v. BWS Inspection Services, LLC*, 2022 WL 3567349 (W.D. Tex. August 16, 2022) where the Magistrate Judge found that the plaintiff met its burden of demonstrating that dismissing its action for *forum non conveniens* would be unwarranted despite a presumptively valid forum selection clause, the scope of which mandated that the type of claims brought by plaintiff be litigated elsewhere. Despite holding that the defendant had shown an adequate alternative forum was available – something CI Int'l fails to do here – the Magistrate Judge nonetheless found that the interest-balancing rendered the dismissal or transfer to Texas state court possible, but not warranted. *Sisk* at \*9-10.

Defendant yet again fails to show that (i) this Court has any administrative difficulties flowing from court congestion or that (ii) there is no local interest in having claims decided in Florida against a corporate entity that makes and takes payments in Florida, whose registration

disclosures lists its address as being in Florida address, who sends invoices from a Florida address, and whose principals own a residential condominium in Florida. Both these factors weigh *against* dismissal. Just as in *Sisk*, the Renewed Motion should be denied.

   **E.  This Court has diversity jurisdiction under 28 U.S.C. §1332, as Peninsula is a foreign corporation and Defendant is a Florida limited liability company whose principals are both domiciled here.**

   Not only does Peninsula sufficiently allege that Defendant's principals, Jaime Ochoa and Maria Roa, are natural persons and citizens of Florida (AVC ¶10), but it does so using evidentiary support both attached to the AVC (Dkt. 38-1 Exhibit 1) and otherwise uncontroverted in Defendant's Renewed Motion. It is pertinent to note that the thirteen enumerated paragraphs in the Renewed Motion's "Relevant Factual Background" (Renewed Motion at 15-16) fail entirely to address the Westlaw "peoplemap reports" or the printout of the Florida Secretary of State, Division of Corporations website listing for C.I. International Fuels, LLC, both of which are specifically referenced in the Amended Verified Complaint as evidence of Ochoa and Roa being citizens of/domiciled in Florida. (AVC ¶¶5-13.)

   These paragraphs of the Amended Verified Complaint and the evidence Peninsula has put on thus far distinctly and affirmatively allege that both Ochoa and Roa were, at the time the action was commenced, residents of and domiciled in Florida. "When jurisdiction depends on citizenship, citizenship should be 'distinctly and affirmatively alleged.'" *Empirian Health, LLC v. Specialty RX, Inc.*, 2022 WL 17419342 at *1 (M.D. Ala., December 5, 2022); quoting *McGovern v. American Airlines, Inc.*, 511 F. 2d 653, 654 (5th Cir. 1975) (per curiam). A negative statement as to citizenship is generally not sufficient. *Id.*; citing *Tubwell v. Specialized Loan Serv. LLC*, 2017 WL 1450598, at *3 (N.D. Miss. Apr. 12, 2017) ("While the defendants allege that '[n]o member

of SLS or its parent is a citizen of Mississippi,' this negative allegation is not a distinct and affirmative allegation of citizenship of SLS.")

In response, Defendant's Renewed Motion offered mostly bald assertions without any evidentiary support. In addition, it cited to previous declarations of Mr. Ochoa that (i) Defendant failed to attach to its Renewed Motion, and (ii) contain demonstrably false statements. These assertions are either wholly unsupported by evidence, reference sworn yet untruthful testimony of Mr. Ochoa, or, at minimum, entitle Peninsula to jurisdictional discovery to attack their merits:

> 3. *Defendant has two members, Jaime Ochoa Munoz and Maria Mercedez Roa, with each holding a 50% membership interest. Mr. Ochoa has provided declarations [DE 26-2; DE 31-1] stating that both members reside in Colombia without any status or authorization to work in the United States. [DE 67-1].*

Mr. Ochoa's previous declarations are bereft of any evidentiary support. He has yet to provide his actual address in Colombia, evidence of ownership of real estate in Colombia, or evidence of a lease agreement if he does not own his home, or for how long he has maintained any particular residence at any address. Peninsula should be entitled to jurisdictional discovery on these issues.

> 4. *Mr. Ochoa is a citizen of and is domiciled in Colombia, where he was born and issued a passport.*

Defendant offers no case law to establish that issuance of a passport or location of where one was born conclusively determines where an individual is domiciled. This is the central legal issue to be determined by the totality of the evidence, not because Mr. Ochoa says so. *See Jones v. Law Firm of Hill & Ponton*, 141 F.Supp.2d 1349, 1355 (M.D. Fla. 2001).

> 5. *Ms. Roa is a citizen of and is domiciled in Colombia, where she was born and issued a passport.*

Defendant offers no case law to establish that issuance of a passport or location of where one was born conclusively determines where an individual is domiciled. This is the central legal

issue to be determined by the totality of the evidence, not a single factor. *See Jones v. Law Firm of Hill & Ponton*, 141 F.Supp.2d 1349, 1355 (M.D. Fla. 2001).

     6.  <u>Mr. Ochoa and Ms. Roa were married in Colombia.</u>

This fact, presented without any evidentiary support, does not address when they were married or how it has any bearing on either principal's residence or intent to remain. *See Jones*, 141 F.Supp.2d at 1355; citing *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).

     7.  <u>Mr. Ochoa and Ms. Roa's children were born in Colombia and are Colombian citizens that are domiciled in Colombia.</u>

This fact, presented without any evidentiary support, does not address where their children presently reside or how long they have resided there, nor does it indicate how it has any bearing on either principal's residence or intent to remain. *See Jones*, 141 F.Supp.2d at 1355; citing *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).

     8.  <u>Defendant, CI International Fuels LLC, is an affiliate of CI International Fuels SAS; a legal entity registered in Colombia and operating from its principal place of business in Colombia.</u>

This is wholly irrelevant to the domicile of Mr. Ochoa and Ms. Roa and is nothing more than a red herring to distract from the central legal issue: Defendant's principals each being domiciled in Florida.

     9.  <u>Notwithstanding the fact that Mr. Ochoa and Ms. Roa jointly own real estate in Florida, neither Mr. Ochoa nor Ms. Roa resides in Florida and certainly are not domiciled in Florida.</u>

This allegation is wholly conclusory and, once again, bereft of evidentiary support. In fact, it aids in the "presumption that the state in which a person resides at any given time is also that person's domicile." *Jones*, 141 F.Supp.2d at 1355; citing *District of Columbia v. Murphy*, 314 U.S. 441, 455 (1941); *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir.1954).

     *10. An I-94 Customs and Border Protection account of entry into the United States shows time Mr. Ochoa spends in Florida.*

     Although this fact may be relevant as to where he has spent time, the dispositive question under the totality of the evidence is not the amount of time one spends in a location, but his/her intent to remain there. *See Jones*, 141 F.Supp.2d at 1355; citing *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).

     *11. Mr. Ochoa, as sole manager of the Florida LLC, has declared that Defendant does not have any employees or other infrastructure or operations in Florida. See Exhibit A.[4] [DE 31-1].*

     While Paragraph 10 of Dkt. 31-1 does assert that "CI International has no employees in Florida nor elsewhere in the U.S.," Mr. Ochoa's reference to infrastructure and operations in Florida is found in Paragraph 9 of his previous declaration, Dkt. 26-2: "Defendant CI International does not have any assets, employees, premises, or any other sort of infrastructure or operations conducted in Florida or elsewhere in the United States." However, this is demonstrably false: Peninsula uncovered (and Defendant did not refute) that Defendant has multiple bank accounts (i.e., assets) in Florida, and that its principal place of business (i.e., premises) is a two-bedroom condominium in Florida. (AVC ¶¶3, 38-39).

     It is well within this Court's discretion to find that, based on the untruthfulness in Mr. Ochoa's previous declarations, Peninsula's distinct and affirmative allegations, proved by a preponderance of the evidence and in the face of disproved allegations in Defendant's response, demonstrate that both Ochoa and Roa are domiciled in Florida.

---

[4] Curiously, Defendant's Renewed Motion at various points references "Exhibit 1," "Exhibit 2," "Exhibit 3," "Exhibit 4," and "Exhibit A," none of which were attached.

**F. Alternatively, Peninsula should be granted leave to conduct limited jurisdictional discovery to prove that Ochoa and Roa are domiciled in Florida.**

At minimum, many of the unsupported allegations referenced in the preceding section are peculiarly within the knowledge of Ochoa and Roa. Should the Court find that Ochoa and Roa's domicile has not yet been proven by a preponderance of the evidence, Peninsula should be granted leave to conduct jurisdictional discovery about the specific issues raised in the preceding section and other relevant topics bearing on the principals' residence and intent to remain. *See Lithgow v. Edelmann*, 247 F.R.D. 61, 63 (D. Conn. 2007). This will allow Peninsula to fill in many of the gaps that were deliberately left unfilled by Defendant in its Renewed Motion, including, but not limited to, the specific address of where Ochoa and Roa claim to reside, their tax returns, bank accounts, brokerage accounts, voter registrations, utility bills, and affiliations in religious, recreational, or business organizations. Equally as important, it will allow Peninsula to probe the veracity of Mr. Ochoa's previously filed sworn testimony. To be clear, this list is not intended to be exhaustive of the categories of documents that would be sought or testimony that would be elicited.

The Southern District of Florida routinely grants requests for jurisdictional discovery if the parties dispute diversity jurisdiction. *See, e.g., A Boat 4 Fun, Inc. v. Dream Catcher Marine, LLC*, 2018 WL 10509576, at *1 (S.D. Fla. Oct. 25, 2018) (where the court granted jurisdictional discovery because citizenship was in dispute); *Mother Doe I v. Maktoum*, 632 F. Supp. 2d 1130, 1142 (S.D. Fla. 2007) (where the parties disputed domicile and the court granted jurisdictional discovery limited to only domicile).

<u>**CONCLUSION**</u>

WHEREFORE, Defendant's Renewed Motion should be denied in its entirety. Alternatively, Peninsula should be granted leave to conduct jurisdictional discovery.

Dated: April 5, 2023

Respectfully submitted,

By: /s/ Evan S. Gutwein
HAMILTON, MILLER, & BIRTHISEL LLP
Jerry D. Hamilton (FBN 970700)
jhamilton@hamiltonmillerlaw.com
Evan S. Gutwein (FBN 58741)
egutwein@hamiltonmillerlaw.com
150 S.E. Second Avenue, Suite 1200
Miami, Florida 33131
(305) 379-3686 (telephone)
(305) 279-3690 (facsimile)
***Attorneys for Plaintiff***

-and-

ZEILER FLOYD ZADKOVICH (US) LLP
Luke Zadkovich, Esq.
luke.zadkovich@zeilerfloydzad.com
(Admitted *Pro Hac Vice*)
Joseph Johnson, Esq.
joe.johnson@zeilerfloydzad.com
(Admitted *Pro Hac Vice*)
215 Park Avenue, 11th Floor
New York, NY 100003
(917) 375-9511

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 5, 2023 I electronically filed this document using the

Court's CM/ECF system, which will automatically serve a copy on all counsel of record.

By: _____*Evan S. Gutwein*_____

| | |
|---|---|
| SANCHEZ VADILLO, LLP<br>Lori Dilican<br>ldilican@svlawus.com<br>11402 NW 41st St, Suite 202<br>Doral, Florida 44178<br>(305) 436-1410 (telephone)<br>(305) 436-0191 (facsimile)<br>***Attorneys for Defendant*** | HAMILTON, MILLER, & BIRTHISEL LLP<br>Evan S. Gutwein (FBN 58741)<br>egutwein@hamiltonmillerlaw.com<br>150 S.E. Second Avenue, Suite 1200<br>Miami, Florida 33131<br>(305) 379-3686 (telephone)<br>(305) 279-3690 (facsimile)<br><br>and<br><br>ZEILER FLOYD ZADKOVICH (US) LLP<br>Luke Zadkovich, Esq.<br>Luke.zadkovich@zeilerfloydzad.com<br>(Admitted *Pro Hac Vice*)<br>Joseph Johnson, Esq.<br>joe.johnson@zeilerfloydzad.com<br>(Admitted *Pro Hac Vice*)<br>215 Park Avenue, 11th Floor<br>New York, NY 100003<br>(917) 375-9511<br><br>*Attorneys for Plaintiff* |