UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 22-cv-20712-RKA

PENINSULA PETROLEUM LIMITED,
Plaintiff,

v.

CI INTERNATIONAL FUELS LLC,
Defendant.
_____/

**DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S RENEWED MOTION TO DISMISS**

Defendant, CI International Fuels LLC ("CI LLC" or "Defendant"), by and through the undersigned counsel, respectfully submits this Reply to Plaintiff, Peninsula Petroleum Limited's ("Plaintiff" or "Peninsula"), Memorandum in Opposition to Defendant's Renewed Motion to Dismiss [DE 70]. For the reasons set forth below, the Plaintiff's cause of action should be dismissed.

**PRELIMINARY STATEMENT**

**A. The Master Agreement's Arbitration Clause**

Plaintiff has consistently taken the position that its cause of action is based on enforcement of the Pledge Agreement and as such is "clearly excluded from arbitration." [DE 70; p.7]. To support its position, the Plaintiff reiterates arguments previously raised in its Memorandum in Opposition to Defendant's Motion to Dismiss. [DE 60]. Plaintiff's argument is premised on the misplaced semantic basis that there is a distinction between a "dispute" and a "claim" contained within the meaning of the arbitration clause that would ultimately determine whether this cause of action is

1

subject to arbitration. The Defendant has responded to this argument in its Amended Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, which is herein renewed and incorporated by reference in the entirety. [DE 66]. Here again, the Plaintiff steadfastly contends that the instant cause of action does not fall within the purview of the Master Agreement's arbitration clause. Pursuant to the Plaintiff's position that the arbitration clause does not apply to this cause of action, then it necessarily follows that the New York Convention does not apply to this cause of action. If the New York Convention does not apply, then this case should be dismissed for lack of subject matter jurisdiction as there are only foreign citizens on both sides of the dispute. Especially here, where the Plaintiff has not once sought to compel arbitration or even bothered to address the Defendant's waiver argument. Instead, the Plaintiff maintains that the arbitration clause does not apply.

### B. The Pledge Agreement

The Defendant agrees that the arbitration clause does not apply to an action to enforce the Pledge Agreement, and accordingly, the New York Convention would not apply. The Plaintiff admits that the Defendant "is correct in saying that the Pledge Agreement has an applicable law and jurisdiction clause." [DE 70; p.7]. The language of the Pledge Agreement is not limited to § 8.11 which states: "The Parties **agree** that this Agreement **will** be governed by the laws of Colombia and submit expressly and irrevocably to the competent judges of Colombia." (emphasis added). [DE 1;2]. Instead, the Pledge Agreement is replete with the following references to Colombian law and jurisdiction:

1. Clause I- Defined Terms and Interpretation; Section 1.01 Defined Terms:

    a. "Governmental Authority" means any, state, municipal, national or other government, governmental department, commission, board bureau, **court**, arbitrator, agency or instrumentality or political subdivision thereof or any entity, officer or examiner exercising executive legislative, **judicial**, regulatory or

      administrative functions of or **pertaining to any government or any court**, in each case whether associated with the state, provincial, or local governments **of the Republic of Colombia** or any other political subdivision thereof (including Banco de la Republica de Colombia). (emphasis added).

    b. "Applicable Law" means, with respect to any Person, any law, statute, code, regulation or treaty with the force of law, and any court decision, custom or similar governmental restriction or order or guideline from any **Governmental Authority** that applies to Said Person or any such Person's assets. (emphasis added).

    c. "Registry of Liens Over Movable Assets" means the [registry] created pursuant to Article 38 of the Law of Securities over Movable Assets and regulated by Decree 1074 or 2015, as modified and/or complemented from time to time. (cleaned up).

2. Clause II- Security Interest- Section 2.01 Creation:

   a. By virtue of this Agreement and in accordance with the provisions of the Law of Securities Over Movable Assets and other **Applicable Laws**, the Grantor hereby grants in favor of Secured Creditor a priority security interest without possession over Assets….

3. Clause III- Perfection and Registry; Section 3.01 Registry as Secured Interest

   a. "In accordance with Article 21 of the Law of Securities over Movable Assets…after its registration in the Registry of Liens Over Movable Assets."

   b. "Termination Date: … pursuant to Article 42 of the Law of Securities over Movable Assets."

4. Clause VI- Enforcement of the Security Interest; Section 6.01

(i)     "Direct Payment: to obtain payment in full of the Secured Obligations directly with the Assets. For purposes of Article 60 of the Law of Securities over Movable Assets…valuation shall be made exclusively according to the **applicable Law**." (emphasis added).

(ii)     "Special Enforcement Proceedings:

   a. "The Secured Creditor may initiate the Special Enforcement Proceeding by filing the corresponding form the Registry of Liens Over Movable Assets."

   b. "Secured Creditor, at its sole discretion, may resort to a public notary or to the Conciliation Center of the Chamber of Commerce of Bogota, Colombia to enforce the Security Interest."

    c. "Promptly following the receipt of the Initiation Notice, provided that the opposition proceedings established in Article 67 of the Law of Securities Over Movable Assets has been carried out before a court of law or by the conciliation before the Center of Conciliation of the Chamber of Commerce of Bogota, Colombia, in the Secured Creditor's sole discretion, the Secured Creditor shall proceed to carry out the special enforcement of the Security Interest under the special rules set forth in this agreement; and, with respect to matters not contemplated by this Agreement , in accordance with the rules of Chapter V of Title VI of the Law of Securities Over Movable Assets and Decree 1074 of 2015. This proceeding shall be carried out before the Center of Conciliation of the Chamber of Commerce of Bogota, Colombia or before a notary, as determined by the Secured Creditor. For purposes of Article 66(2) of the Law of Securities Over Movable Assets, …."

(iii)    "<u>Court Proceedings:</u> to secure payment in full of the Secured Obligations by enforcing the Security Interest **before the applicable Colombian courts** in accordance with the **Applicable Law**, including any current procedural law. (emphasis added).

Section 8.11. Applicable Law and Jurisdiction

"The Parties agree that this Agreement will be governed by the laws of Colombia and submit expressly and irrevocably to the competent judges of Colombia."

    Here, the Pledge Agreement defines the terms "governmental authority" and "applicable law." The definition of "governmental authority" clearly and unambiguously denotes that the exercise of court, judicial or other authority over the Pledge Agreement means the Republic of Colombia. The Pledge Agreement goes further and defines the Agreement's applicable law as that of Colombia because the "applicable law" clause expressly references the "governing authority" clause, which clearly establishes that the two terms and definitions are intended to work in tandem. Thereafter, the Pledge Agreement makes numerous references to specific Articles and Decrees of Colombian law that govern and control the enforcement of the security interest. But most importantly, the Agreement itself consistently utilizes the term "applicable law" when referencing Articles of Colombian law. As set forth above, the term "applicable law" was defined to

4

purposefully include the definition of "governing authority," which means the courts, agencies and judiciary of Colombia.

This bargained for agreement between the Parties is again underscored and emphasized at Clause VI, captioned Enforcement of Security Interest. Clause VI of the Pledge Agreement between the Parties sets forth three options for the enforcement of the Security Interest: (1) Direct Payment; (2) Special Enforcement Procedures; and (3) Court Proceedings. Here, the Plaintiff has chosen to pursue court proceedings in the Southern District of Florida in contravention of the Pledge Agreement's express language that court proceedings are to be brought "before the applicable Colombian courts in accordance with the Applicable Law," as defined by the Pledge Agreement. The Parties to the Pledge Agreement are both experienced, sophisticated Parties and clearly bargained for the enforcement of the Pledge Agreement to be governed by Colombian law in the Courts of Colombia. Thus, section 8.11, which is not a stand-alone forum selection clause, essentially reiterates that which was agreed upon, understood and bargained for—namely the application of Colombian law before the Colombian courts and judges. Thus, the choice of law and forum clauses are not permissive—they are mandatory.

The Plaintiff urges the Court to consider section 8.11 in isolation, without reference to the foregoing definitions and agreed upon contractual provisions, which under the facts of this case is unpersuasive and unavailing. In support of its position, the Plaintiff cites to *SeaPower, Inc. v. Tonbo Imaging PTE Ltd.,* 2021 WL 9565797 (S.D. Fla. June 15, 2021) for the proposition that standing alone, section 8.11 would be a permissive rather than mandatory forum selection clause. *SeaPower* cites to and relies upon a state court decision from the Florida Third District Court of Appeal, *Michaluk v. Credorax (USA), Inc.,* 164 So.3d 719, 725 (2015) (discussing words of exclusivity pertaining to the permissive versus mandatory distinction in forum selection clauses).

5

In *Michaluk*, the Third District discusses *Golf Scoring Sys. Unlimited, Inc. v. Remedio*, 877 So.2d 827-28 (Fla. 4th DCA 2004) for the proposition that "the use of the word 'the' before the words 'proper venue' reflected an agreement by the parties that [the venue] was the *only* proper venue to the exclusion of all others." (Emphasis original.) Here, the court proceedings clause plainly states that court proceedings are to be brought "before the applicable Colombian courts." This language is mandatory because the Colombian courts are the only courts where venue is proper. See also *Absolute abstracting, LLC v. Navalcat International S.A.S*, 2016 WL 11493425 (S.D. Fla. March 30, 2016) (unpublished); (quoting *Golf Scoring Sys. Unlimited, Inc. v. Remedio*, 877 So.2d at 829) ("To be mandatory the clause need only contain terms expressing that nature, not magic words.").

Pursuant to Clause VI of the Pledge Agreement, if the Plaintiff opts to enforce the Security Interest via court proceedings, then it must do so solely "before the applicable Colombian courts." The foregoing language is clear and unambiguous. *Belize Telecomm. Ltd. V. Belize,* 528 F.3d 1298, 1306 n.10 (11th Cir. 2008) (The plain meaning of a contract's language governs its interpretation). Notwithstanding the fact, that the Defendant has also addressed these relevant provisions in its Motion to Dismiss for Forum Non Conveniens [DE 52; p. 4-5], the Plaintiff has not once bothered to address the full context of the Pledge Agreement's Enforcement of the Security Interest provisions set forth in Clause VI. Moreover, the Plaintiff attached the Pledge Agreement to both its Complaint [DE 1; Ex. 1-3] and Amended Verified Complaint [DE 38; Ex. 2] because the Pledge Agreement is central to Plaintiff's claims.

Here, the language contained in the court proceedings clause further supports and affirms the language of section 8.11 which states that the Pledge Agreement "will" be governed by Colombian law, wherein "will" is clearly a mandatory term. Additionally, "will" is used in conjunction with the word "and" to address the Parties' submission to Colombian jurisdiction.

Used in this context, the word "and" is conjunctive, indicating that both the Colombian law and venue shall apply. The language used in section 8.11 plainly differs from that used in *SeaPower*, "…and each party agrees to submit to the jurisdiction of the courts of Singapore…." *SeaPower, Inc.,* 2021 WL 9565797 at *1. The main distinction here, is that the language of *SeaPower* indicates only an agreement to submit to the jurisdiction of the courts of Singapore; whereas, the language of section 8.11 requires the Parties to submit to the jurisdiction of Colombian courts. As such, the language in *SeaPower* is permissive because the parties merely agreed to submit to jurisdiction; but the language here is mandatory because the parties plainly state that they submit to Colombian jurisdiction. Thus, the nature and force of section 8.11 is mandatory. Especially here, where the language of the court proceedings clause in tandem with section 8.11 makes it abundantly clear that the Parties bargained for and intended actions to enforce the Pledge Agreement to be governed solely and exclusively by Colombian law and court jurisdiction. At On the foregoing basis, the Parties' bargained for forum selection clause should be enforced and the Plaintiff's Amended Verified Complaint should be dismissed. Even if this Court should determine that the Pledge Agreement's forum selection language is not mandatory, Plaintiff's cause of action must still be dismissed because Plaintiff cannot show that diversity jurisdiction exists pursuant to 28 U.S.C. §1332 because both Parties are foreign citizens.

**C. The Defendant satisfied its burden of showing that Colombia is an Adequate Forum.**

The Defendant has demonstrated both the availability and adequacy of Colombia as an alternative forum where the Plaintiff has already accessed the Colombian courts to redress its claims and is currently engaged in securing its interests in the on-going reorganization process before the Superintendence of Societies in Colombia. Moreover, it is undisputed that the Plaintiff's interests are represented by Colombian counsel in these pending proceedings where the Plaintiff

is designated as a secured creditor. [DE 66; Ex. 1]. Additionally, the Plaintiff admits that it has sought relief in the Colombian court. Plaintiff's cause of action was dismissed by the Colombian court because it was improperly brought in small claims court and the court lacked subject matter jurisdiction. [DE 66; Ex.2]. Had the Plaintiff brought its cause of action in the proper Colombian forum, it would not have been dismissed for lack of subject matter jurisdiction. Clearly, a Colombian forum is available to the Plaintiff. Especially here, where the Pledge Agreement's forum selection clause was central to negotiations between the Parties where the fuel was delivered to the Santa Marta, Colombia Free Trade Zone and storage would be provided by CI SAS. Thus, the Pledge Agreement would naturally be subject to the laws and jurisdiction of Colombia because the assets sought to be secured would be physically located in Colombia. Moreover, the Agreement between the Parties is of the nature that CI SAS would access the fuel pursuant to additional agreements characterized as Bunker Recaps of Cargo Recaps. The terms of the Master Agreement, Pledge Agreement and Guarantee clearly and conclusively show that the Plaintiff knew or should have known that the practical operations of the Agreement would be carried out through CI SAS in Colombia and not CI LLC in Florida. But most importantly, the Parties are both sophisticated and experienced and intentionally bargained for the security interest to be governed by Colombian law with court proceedings for the enforcement of the Pledge Agreement to be had before the Colombian courts. Thus, the Parties acknowledged the adequacy of the Colombian courts to redress and enforce the Plaintiff's security interest. Moreover, the Plaintiff does not dispute the availability or adequacy of the Colombian courts, rather it erroneously contends that the Defendant did not demonstrate that an adequate alternative forum is available to the Plaintiff where its own admissions and conduct clearly indicate otherwise.

The Plaintiff admits at, ¶ 34 of its Amended Verified Complaint that "in accordance with Section 2.03 of the Pledge Agreement, Peninsula registered its 'Security Interest' with the National Registry of Securities Over Movable Assets in Colombia, which allows Peninsula to carry forward proceedings to enforce the pledge." [DE 38; ¶ 34]. Of critical importance is the fact that Jaime Ochoa is domiciled Colombia not Florida. It is from Colombia that Mr. Ochoa controls and operates both CI SAS and CI LLC. As a citizen of Colombia, Mr. Ochoa is amenable to service of process and the jurisdiction of the Colombian court. Colombian law can adequately redress the Plaintiff's claims and has jurisdiction over the movable assets. As such, PPL's cause of action can easily be reinstated in Colombia, which is the forum most at home with the law governing the Pledge Agreement. Therefore, on the foregoing basis, this Court should find that the forum selection clause contained in the Pledge Agreement is controlling and should be enforced and Plaintiff's Amended Verified Complaint should be dismissed.

**D. The Public Interest Factors Support Enforcement of the Forum Selection Clause.**

The Plaintiff fails to make any attempt to demonstrate that the forum selection clause is unreasonable. The Plaintiff disregards that in challenging the enforcement of a valid forum selection clause, it is incumbent on the it to show that:

> (1) formation [of the contract] was induced by fraud or overreaching;
> (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum;
> (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or
> (4) enforcement of the provisions would contravene a strong public policy.

*Holmes v. Westport Shipyards, Inc.*, 2004 WL 3019363, at *3 (S.D. Fla. Aug. 10, 2004). Instead, the Plaintiff seeks to have this Court disregard a valid, enforceable and bargained for forum selection clause so that it can simultaneously seek full recovery of its security interest in the

9

pending Colombian reorganizations as a secured creditor, while making an end run around Colombian jurisdiction by seeking the same recovery here in Florida under the guise that it entitled to execute on assets "here" and "there" at the same time, notwithstanding it's the fact that enforcement of the security interest must be sought in Colombia per the Pledge Agreement. Because the Plaintiff's arguments regarding the public interest factor are entirely unpersuasive, the Plaintiff seeks to have this Court apply the rationale of a recent decision from the Western District of Texas wherein the court found that the despite the fact that the Defendant met its burden of showing an adequate alternative forum was available—which the Defendant here did—the court held that the "transfer" of the case was possible, but not warranted. The Defendant is not seeking to transfer this case to state court, it is asking the Court to enforce the valid forum selection clause in the Pledge Agreement that the Parties bargained for.

**E.  The Court Lacks Diversity Jurisdiction Under 28 U.S.C. §1332.**

The Plaintiff cannot overcome its pleading deficiency with regards to the allegations set forth to support diversity jurisdiction in its Amended Verified Complaint. [DE 38]. The fact of the matter is that the Plaintiff's allegations regarding the domicile of the members of CI International LLC are all based on the Plaintiff's "belief." The Plaintiff has engaged in extensive negotiations with the Defendant and entered into a Master Agreement, a Pledge Agreement and a Guarantee. Furthermore, the Plaintiff has invoked the jurisdiction of the Colombian court to pursue recovery of assets against the Defendant and is presently represented by Colombian counsel in pending reorganization proceedings wherein, the Plaintiff is a secured creditor. Additionally, the Plaintiff has engaged in extensive dealings with both CI SAS and CI LLC as evidenced by the structure of the Agreements between the Parties, especially the Pledge Agreement's requirement that notice be provided to CI SAS in

Barranquilla, Colombia. The burden is on the Plaintiff to properly plead allegations supporting diversity jurisdiction. The Plaintiff has failed to meet its burden both facially and factually. The fact of the matter is that CI LLC is a legal entity whose citizenship is that of its members, Jaime Ochoa and Maria Roa, who are both citizens of and domiciled in Colombia. Thus, the citizenship of CI LLC is Colombia. Even if the members of CI LLC resided in Florida and they do not, residence is not domicile. The members of CI LLC are not domiciled in Florida because they do not reside here and have not expressed any intent to remain indefinitely where they do not reside. Accordingly, the Defendant reincorporates by reference the arguments set forth in its Renewed Motion to Dismiss as if fully set forth herein. [DE 69]. Now more than a year later, after subjecting the Defendant to legal proceedings in a foreign jurisdiction in contravention to the forum selection clause contained in the Pledge Agreement and where diversity jurisdiction is lacking, the Plaintiff now requests jurisdictional discovery. Yet, astoundingly, the Plaintiff complains that it is prejudiced by the Defendant's argument that the Court lacks subject matter jurisdiction. The only party prejudiced here has been the Defendant, who has been made to defend a valid forum selection clause and reimburse the Plaintiff for attorney's fees in setting aside a default where the Court lacks jurisdiction. In light of the foregoing, it is difficult to suppress the notion that the Plaintiff disingenuously raised allegations in support of jurisdiction where it knew or should have known that the members of CI LLC were domiciled in Colombia. Thus, the Court should dismiss the Plaintiff's Amended Verified Complaint for lack of diversity.

## CONCLUSION

On the foregoing basis, the Court should dismiss Plaintiff's Amended Verified Complaint to enforce the forum selection clause contained in the Pledge Agreement or for lack of subject

matter jurisdiction under 28 U.S.C. §1332 and award the Defendant attorney's fees along with all other relief the Court deems appropriate, including but not limited to reimbursing the fees that the Defendant paid to set aside the default.

Dated: April 12, 2023

                      Respectfully Submitted,

                      **SANCHEZ VADILLO LLP**
                      *Attorneys for Defendant*
                      11402 NW 41st Street
                      Suite 202
                      Miami, Florida 33178
                      (305) 436-1410
                      ldilican@svlawus.com

                      By: /s/ Lori Dilican
                      Lori Dilican, Esq.
                      FBN: 1004723

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 21, 2022, that I electronically filed the foregoing document via the Court's CM/ECF system, which will automatically serve a copy on all counsel of record.

                      By: /s/ Lori Dilican
                      Lori Dilican, Esq.
                      FBN: 1004723

HAMILTON, MILLER & BIRTHISEL LLP
Evan S. Gutwein, Esq.
egutwein@hamiltonmillerlaw.com
150 S.E. Second Ave., Suite 1200
Miami, Florida 33131

ZEILER FLOYD ZADKOVICH (US) LLP

Luke Zadkovich, Esq.
Luke.zadkovich@zeilerfloydzad.com
(Admitted *Pro Hac Vice*)
Joseph Johnson, Esq.
Joe.johnson@zeilerfloydzad.com
(Admitted *Pro Hac Vice*)
215 Park Avenue, 11th Floor
New York, New York 10003