**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No.: 22-cv-20712-RKA

PENINSULA PETROLEUM LIMITED,

                  Plaintiff,

    v.

CI INTERNATIONAL FUELS LLC,

                 Defendant.      /

_____

**PLAINTIFF'S MOTION PURSUANT TO FED. R. CIV. P. 37(b)(2) and 37(c)(1)**
**FOR SANCTIONS FOR DISCOVERY VIOLATIONS AND**
**<u>NOT OBEYING A DISCOVERY ORDER</u>**

Plaintiff Peninsula Petroleum Limited ("<u>Peninsula</u>"), pursuant to Federal Rules of Civil Procedure ("<u>FRCP</u>") Rules 37(b)(2) and 37(c)(1), and the inherent power of this Court, hereby moves for sanctions – including the award and assessment of attorneys' fees and costs – against Defendant CI International Fuels LLC ("<u>CI Fuels</u>" or "<u>CI</u>") and its counsel for CI's repeated violations of FRCP 26(e) and for its failure to comply with Magistrate Judge Reid's July 26, 2023, Discovery Order (the "7-26-23 Order") and October 30, 2023, Discovery Order (the "10-30-23 Order"). [Dkt. 91; 102.]

To be clear, Magistrate Judge Reid's 10-30-23 Order required CI to amend its responses and supplement production with respect to Request Nos. 18 and 28 of Peninsula's first set of requests and Request Nos. 8-11 of Peninsula's second set of requests by November 30, 2023, and stated that failure to do so "will result in an imposition of sanctions in the form of attorneys' fees as incurred by Plaintiff and may result in contempt proceedings." [Dkt. 102.] To date, CI has not adequately responded to those requests nor made a full production, clearly violating both Orders *and* its obligations under the FRCP.

1

**STATEMENT OF FACTS**

This is a collection action by Peninsula, a foreign entity, to recover a debt in excess of $1.5 million owed by CI, a Florida LLC in the business of buying and selling marine fuel,[1] for unpaid marine fuel. [Dkt. 38, ¶1.] In its Amended Verified Complaint, Peninsula asserted claims for breach of contract, enforcement of a security interest, and under the Florida Uniform Fraudulent Transfer Act ("UFTA") [Dkt. 38, ¶¶42-53, 68-74.] On March 13, 2023, CI filed, and there remains pending before the District Court, a Motion to Dismiss asserting lack of subject matter jurisdiction based, in part. on CI's contention that there is no diversity jurisdiction because neither of its two members, Jaime Ochoa nor Maria Roa, are domiciled in the United States. [Dkt. 67.]

On April 19, 2023, Peninsula served its first set of requests for production, a true and correct copy of which is attached hereto as Exhibit 1 (the "First Requests").[2] On April 26, 2023, Peninsula served its second set of requests for production, a true and correct copy of which is attached hereto as Exhibit 2 (the "Second Requests").[3] On June 2, 2023, CI responded to both requests, true and correct copies of which are attached hereto as Exhibits 3 and 4, respectively.

**a.  CI's responses to Peninsula's requests for production were wholly inadequate.**

CI's responses to Peninsula's requests were wholly inadequate, and its production was glaringly incomplete. CI produced only 351 pages of documents,[4] which was not even remotely a full production regarding Peninsula's 43 documents requests. The gaps in CI's production became readily apparent on closer examination – for instance, CI claimed that documents did not exist or

---

[1] Additional information about CI can be found at its website: https://www.ciinternationalfuels.com/misitio.
[2] The First Requests are directed to the diversity issue.
[3] The Second Requests are directed to merits-based issues, including Peninsula's UFTA claim.
[4] CI MD 000001 – 000351.

were not in its possession, custody, or control, meanwhile documents it produced belied that assertion.[5]

On June 26, 2023, the undersigned sent CI's counsel a deficiency letter, a true and correct copy of which is attached hereto as Exhibit 5 (the "First Deficiency Letter"). The First Deficiency Letter identified issues with CI's responses and production, specifically with respect to First Requests Nos. 7-11, 12-13, 15, 18, 24, and 26-28 and to Second Requests Nos. 1 and 8-11.

One blatant and continuing deficiency is CI's response to First Request No. 18 (*financial accounts*), which requests all documents "evidencing checking, savings, money market, brokerage, investment, or other accounts in the United States from January 1, 2018, through present, in the name of CI Fuels or CI Fuels' former or current members (past or present) including, but not limited to, monthly account statements." [Ex. 1: First Requests, pg. 5.][6] In its response, CI only produced account statements and wire confirmations for a period of five months for *only* one bank account (ending 6496) in CI's name at Banco Del Credito Del Peru ("BCP").[7]  Peninsula objected to this incomplete production. [Ex. 5: First Deficiency Letter, pg. 5.][8]

CI also failed to sufficiently respond to First Request No. 28 (*utilities*) – requesting all utility statements in the name of CI *or* its members from January 2018 to the present (including electricity, water, gas, sewer, internet, telephone, cable TV, security system, and trash collection). CI first claimed that no such documents are in its possession. [Ex. 3: Responses to First Requests,

---

[5] For example, in response to First Request No. 11, CI claimed that no documents existed to identify vehicles owned or leased by Defendant because "CI Fuels does not own, lease or otherwise provide its members with vehicles." [Ex. 3: Responses to First Requests, pg. 6.] Nonetheless, other documents produced by CI (year-end balance sheets and the depreciation schedule attached to its Florida state and US tax returns) clearly indicated that CI and/or its members *do* own a vehicle.

[6] CI's production of financial records is of particular importance in resolving both the preliminary jurisdictional dispute as well as the underlying merits of Peninsula's UFTA claim.

[7] Peninsula would come to learn of an additional 10 bank accounts which should have documents responsive to this request.

[8] The deficiencies identified in Peninsula's First Deficiency Letter – and subsequent deficiency letters – are too numerous to explain in detail here given the page limitation.

pg. 11]. However, at the time of this assertion, CI's member, Maria Roa owned a condominium in Florida.[9] It is inconceivable that the condominium would not have a single utility. Peninsula objected:

> We object to this response as being incomplete and, to the extent Defendant attempts to claim that CI Fuels does not have possession of Documents that are in the possession of its members, disingenuous. Utility bills can be used to determine one's domicile. *See Smyth*, 2013WL 2048188, at *2. Defendant has raised the diversity jurisdiction issue and, as such, has created this situation whereby its member's domicile is of central focus for purpose of this litigation. [Ex. 5: First Deficiency Letter, pg. 7].

Another continuing deficiency is CI's response to Second Request No. 8 (*disposition of assets*) – seeking "[a]ll Documents and Communications related to the disposition of the "Assets"[10] . . . including, but not limited to, contracts for the onward sale thereof." [Ex. 2: Second Requests, pg. 5.] CI claimed that it produced all responsive documents [Ex. 4: Responses to Second Requests, pg. 6], meanwhile CI did not produce a single contract or other document which could be considered relevant to this request, except for its agreement with Peninsula. In its First Deficiency Letter, Peninsula highlighted that "[a]t bare minimum, CI Fuels should have provided the contracts for the onward sale of the [marine fuel]. Nothing was provided." [Ex. 5: First Deficiency Letter, pg. 8.]

Deficiencies in CI's production of documents responsive to First Request No. 18 (*financial accounts*) naturally extend to other requests where CI was required to produce financial records, including: Second Request No. 9 (*flow of assets*), requesting:

> [a]ll documents and communications evidencing or memorializing the entire flow and present location of all proceeds or assets derived or attributable to the "Assets"

---

[9] CI would later admit this fact in its second amended response to First Request No. 8 (served on September 21, 2023), which is <u>Exhibit 10</u>.

[10] "Assets" means "all present and future cargoes of petroleum products that are from time to time acquired by [CI LLC] and storage [sic] in the Free Trade Zone pursuant to the Master Agreement and the Product Sale and Purchase Agreements and all proceeds or assets derived or attributable to them thereof." [Dkt. 38, ¶60.]

. . . including, but not limited to, wire transfers or other forms of payment to and bank records of CI Fuels regarding the same. [Ex. 2: Second Requests, 5.]

Second Request No. 10 (*all transfers*) – seeking: "[a]ll documents concerning all of CI's "transfers"[11] . . . including, but not limited to, Documents evidencing the reasons therefor and the recipient thereof [*Id.*]; and Second Request No. 11 (*solvency*) – requesting:

> [f]rom October 2020 to present, all Documents and Communications concerning CI Fuels' and CI International Fuels SAS state of solvency (i.e., its debts and assets) including but not limited to: a) All contracts into which it has entered; b) All bank records, including but not limited to, CI's account statements from June 2021 to present; c) All accounts payable records; d) all accounts receivable records; e) Its tax returns; and f) its financial statements (e.g., balance sheets, income or profit-loss statements, and cash flow statements. [*Id.*]

Considering that CI is in the business of reselling marine fuel, one would have expected a number of documents to be produced in response to the aforementioned requests, including contracts, invoices, and correspondence for the purchase and sale of marine fuel, and accounts payable and accounts receivable records, which were expressly requested. None were produced.

### b. The First Discovery Hearing

Counsel for the parties conferred via teleconference to discuss Peninsula's objections. Unable to reach a consensus as to the adequacy of CI's production, Peninsula filed its first Notice of Discovery Hearing with this Court on July 7, 2023. [Dkt. 85.]

On July 26, 2023, the discovery hearing was held before Magistrate Judge Reid (the "First Discovery Hearing"). There, Peninsula argued its Motion to Compel better responses to Peninsula's First Requests Nos. 2, 7-12, 13, 15, 18, 24, 26-28, [Dkt. 89], and to Second Requests

---

[11] "Transfer" means "evert mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or interest in an asset." Fla. Stat. §726.108(1)(a).

Nos. 1 and 8-11. [Dkt. 90.] Magistrate Judge Reid, in her 7-26-23 Order, granted Peninsula's Motion to Compel regarding the First Requests [Dkt. 91.][12]

### c. CI's amended responses and supplemental production fell egregiously short of curing the deficiencies, in clear violation of the 7-26-23 Order *and* CI's duty to supplement insufficient disclosures under FRCP 26(e).

Following the First Discovery Hearing, on August 2, 2023, CI submitted its amended responses to the First and Second Requests, true and correct copies of which are attached hereto as <u>Exhibits 6 and 7</u>, respectively. <u>CI only produced an additional 35 pages of documents in response to both sets of requests</u>.[13] CI did not supplement documents which it claimed it would, claimed to have produced documents which it did not produce, and provided inconsistent responses regarding the production status and existence of documents, raising doubts about the accuracy and truthfulness of its responses.[14]

Peninsula notified CI's counsel by letter of such continuing deficiencies, a true and correct copy of which is attached hereto as <u>Exhibit 8</u> (the "<u>Second Deficiency Letter</u>"). Therein, Peninsula again objected to CI's responses to First Requests 7-11, 12-13, 15, 18, 24, and 26-28, and Second Requests 1 and 8-11. Note that the deficiencies identified in the Second Deficiency Letter mirror those raised in the First Deficiency Letter, indicating that CI's additional production and amended responses did not rectify a single one of Peninsula's initial objections, in violation of Magistrate Judge Reid's 7-26-23 Order and CI's obligations to supplement disclosure under FRCP 26(e).

---

[12] As to the Second Requests, Magistrate Judge Reid permitted CI 14 days to "file a written objection as to Plaintiff's Second Request for Production." [Dkt. 91.] CI filed no such objection with the Court.

[13] CI MD 000352-387.

[14] In CI's initial response to the First Requests, it claimed that all documents responsive to Request No. 9 (*real property leases*) *had been produced*. However, in its amended responses, CI claimed that *no responsive documents exist* in relation to that request. [Ex 3: Responses to First Requests, pg. 5; *compare with* Ex. 6: Amended Responses to First Requests, pg. 6.] Eventually, a lease was produced.

First, CI did not produce *any* additional bank records responsive to First Request No. 18 (*financial accounts*), despite the clear deficiencies in its initial production.[15]

With respect to First Request No. 28 (*utilities*), whereas CI initially claimed that there were no documents responsive to this request [Ex. 3: Responses to First Requests, pg. 11], it stated in its amended response that it will produce bills but only for cable and internet TV at their Colombia residence. [Ex 6: Amended Responses to First Requests, pg. 11.] Peninsula objected again to CI's response in its Second Deficiency Letter:

> [i]t is inexplicable that there are no utility statements for any of the properties that are in the United States that we have previously identified as being owned or leased by CI Fuels or one of its members . . . [Ex. 8: Second Deficiency Letter, pg. 6.]

In its response to Second Request No. 8 (*disposition of assets*), CI initially responded that all responsive documents "have been produced." [Ex. 4: Responses to Second Requests, pg. 6.] But in its amended responses, CI objected and nonsensically claimed that the documents are *not* in CI's possession. [Ex. 8: Amended Responses to Second Requests, pg. 5-6.] CI provided no supplemental production in response to this request.

As discussed with respect to First Request No. 18 (*financial accounts),* CI did not produce any supplemental financial records. Yet, CI claimed that all documents responsive to Second Request Nos. 8 (*disposition of assets*), 9 (*flow of proceeds*), and 10 (*all transfers*) – all seeking financial records – have been produced. [Ex. 7: Amended Responses to First Requests, pg. 8; Ex. 8: Amended Responses to Second Requests, pg. 9-10.]. That was false. Again, CI failed to produce any documents regarding the onward sale of the marine fuel at issue, much less any documents supporting all transfers of monies, or any accounts payable and receivable records.

---

[15] Recall that CI only provided five *months* of records pertaining to one account in the name of CI, whereas the request seeks six *years* of records pertaining to all accounts belonging to CI *and* both its members.

Regarding Second Request No. 11 (*solvency*), CI raised for the first time a blanket objection not only to that request, but apparently to ***all*** of the Second Requests, on the basis that Peninsula was not entitled to merits-based discovery unless CI's Motion to Dismiss for lack of subject matter jurisdiction is denied. [Ex. 7: Amended Responses to Second Requests, pg. 7.]

In response to the Second Deficiency Letter, counsel for both parties conferred again via teleconference. CI agreed to produce some additional documents responsive to the First Requests,[16] but refused to provide any documents responsive to the Second Requests. [Ex. 9: Meet and Confer Recap Email.] In a confirmation email memorializing the parties' discussion, Peninsula's counsel urged CI's counsel to:

> stress upon your clients that, should the September 20 production fail to include what we have been seeking and are so clearly entitled to . . . we intend to pursue sanctions at this hearing including, but in no way limited to, monetary penalties [and] Peninsula's recoupment of all costs incurred in acquiring these documents. [*Id.*]

### d.  The Second Discovery Hearing

On September 21, 2023, CI served its second amended responses to the First Requests and produced 190 pages of documents.[17] CI did not produce any documents responsive to the Second Requests.

Again, CI's responses and supplemental production were insufficient to rectify the identified deficiencies. In fact, CI produced *some* additional bank records, namely records for three additional bank accounts which it had not previously disclosed.[18] This additional production only

---

[16] Peninsula's counsel memorialized the parties' agreement in an email dated September 7, 2023, a true and correct copy of which is attached hereto as Exhibit 9.
[17] CI MD 000352-000542.
[18] Three accounts in the name of Jaime Ochoa at: 1) Banco Falabella ending 7352; 2) Bancolombia ending 1129; and 3) Scotiabank ending 4144.

brought to light new deficiencies in its production – for each account, CI produced less than one year of records,[19] rather than the six years of records (2018 through 2023) requested.

Thus, on September 28, 2023, Peninsula filed its Notice of Second Discovery Hearing. [Dkt. 98.] In its Notice, Peninsula addressed CI's baseless objection to producing documents responsive to Peninsula's Second Requests:

> As for the Second Requests, Defendant evidently takes the position that a single sentence in its response to a single request provides it a blanket objection which entitles it to withhold documents in response to *any* of these requests: "Moreover, Defendant's Motion to Dismiss for lack of jurisdiction remains pending and if granted, is dispositive of the Plaintiff's entitlement to further production." *Defendant's Amended Responses to Plaintiff's Second Request for Production, Request No. 11, Page 7.* Defendant remains steadfast in its refusal to produce any documents in response to the Second Requests even in the face of this Court's recent Order Denying Defendant's Objections to Subpoenas and Motion to Quash, wherein Your Honor plainly stated: "On July 3, 2023, Judge Altman stayed all non-discovery deadlines and administratively closed the case pending the court's resolution of Defendant's Motion to Dismiss for lack of Subject Matter Jurisdiction. [ECF No. 84]. *The parties were allowed to continue to engage in discovery.* [Id.]." [ECF No. 96 at 2]. Your Honor went on to find that "Defendant has provided no case law regarding its jurisdictional arguments as they relate to the discovery issue at hand," and "as previously mentioned, the parties were permitted to continue engaging in discovery while the Motion to Dismiss is pending." [*Id.* at 6]. As plainly seen here, under the law of the case doctrine, this issue has already been decided by Judge Altman, the parties are entitled to continue *all facets* of discovery while Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 69) remains pending, and Defendant has no basis to argue otherwise. [Dkt. 98, pg. 1-2.]

On October 13, 2023, Judge Altman made even more express what he had already held: merits discovery could proceed. [Dkt. 100: Order Denying Defendant's Motion for Protective Order to Stay Discovery.]

On October 18, 2023, another discovery hearing was held before Magistrate Judge Reid (the "Second Discovery Hearing") to hear Plaintiff's Motion to Compel regarding First Requests

---

[19] Accounts ending: 7352 – 10 months of account statements; 1129 – 10 months of account statements; and 4144 – 8 months of account statements.

Nos. 2, 7 through 12, 13, 15, 18, 14, 26 [Dkt. 89] and Second Requests Nos. 1 and 8-11 [Dkt. 90.]

There, Peninsula requested "an order compelling full and complete production . . ." [Dkt. 103: 10-18-23 Tr. at  12:7-11.]

The Court granted both requests, also ruling that "the sanctions will be any attorney's fees that the Plaintiff has incurred in attempting to get the compliance of the Defendant." [*Id.* at 13:8-11.][20] Peninsula sought to clarify, asking "[j]ust so I understand  the order that will be entered, one of the sanctions would be ***all the fees incurred throughout this process***, I presume, but is there any other sanction that the Court is considering such as contempt of court?" [*Id.* at 13:23-14:2.] This Court responded "[y]es. The Court will also consider contempt of Court in the event that the documents are not produced by November 30th and I will put that in the order." [*Id.* at 14:3-5.][21]

In her resulting 10-30-23 Order, Magistrate Judge Reid ordered:

For [First] Request Nos. 18 and 28, Defendant shall provide its production by **November 30, 2023**. Defendant's failure to produce documents by November 30, 2023, will result in an imposition of sanctions in the form of attorneys' fees as incurred by Plaintiff and may result in contempt proceedings.

For [Second] Request Nos. 1 and 8-11, Defendant shall provide its production of documents by **November 30, 2023**. Defendant's failure to produce documents by November 30, 2023, will result in an imposition of sanctions in the form of attorneys' fees as incurred by Plaintiff and may result in contempt proceedings. [Dkt. 102.]

   e. **CI's third amended responses and supplemental production also remain grossly insufficient, in violation of the 10-30-23 Order *and* CI's duty to supplement insufficient disclosures under FRCP 26(e).**

---

[20] While Peninsula has the transcript and can provide a copy to this Court, the docket text says that the redaction request deadline is not until March 27, 2024. For that reason, Peninsula has not made it an exhibit.

[21] To remind the Court, among the baseless objections was CI's claim that it was unable to obtain certain responsive documents because they were in the hands of an affiliate, CI SAS. [Dkt. 103: 10-18-23 Tr. at  6:18-10:8.] However, it was then conceded by CI's counsel that the documents were within CI's control. [Id. at 9:10-13.]

On November 30, 2023, CI submitted its third[22] amended responses to the First Requests and its second amended responses to the Second Requests, true and correct copies of which are attached hereto as Exhibits 11 and 12, respectively. Unfortunately, CI's second and third amended responses, and accompanying supplemental production, [23] were grossly inadequate, in violation of the 10-30-23 Order and CI's obligations to supplement production under FRCP 26(e). Accordingly, on December 22, 2023, the undersigned sent a third deficiency letter to CI's counsel, a true and correct copy of which is attached hereto as Exhibit 13 (the "Third Deficiency Letter").

With respect to CI's production of financial records, after two deficiency letters, two meet and confers, two hearings before Magistrate Judge Reid, and the issuance of the 10-30-23 Order, CI finally saw fit to disclose financial records pertaining to *five* additional bank accounts at Bank of America ("BofA") about which it had previously withheld information: two in the name of CI Fuels (ending 7779 and 0932), two in the name of Jaime Ochoa (ending 4093 and 1216); and one in the name of Maria Roa (ending 4103). Records produced for these accounts consist of only monthly account statements for the years 2018-2023, and don't include the requested wires.

Significantly, however, Peninsula has since learned of two more accounts at BofA through its receipt of third-party discovery. Specifically, Peninsula was provided records via subpoenas concerning two BofA accounts in the name of CI Fuels (ending 2294 and 1157), neither of which have ever been disclosed by CI to Peninsula, much less documents produced.

To be clear, production of bank records remains incomplete. Peninsula requested six years of bank records (2018 through 2023) – **the following requests remain outstanding**: (i) six years

---

[22] CI titled these its "second'" amended responses, but recall that on September 21, 2023, CI served its second amended responses to Peninsula's First Requests. Thus, for purposes of this motion, Peninsula considers CI's November 30, 2023, responses to its first requests its "third" amended responses.

[23] CI supplemented its production with an additional 2080 pages (000543-0002623). But note that 1800+ pages are account statements from Bank of America. For reasons explained below, this production remains inadequate.

of wire transfer records for the five newly *disclosed* BofA accounts;[24] (ii) six years of records for the two *undisclosed* BofA accounts;[25] and (iii) over five years of records pertaining to the accounts of Mr. Ochoa at Banco Falabella; Bancolombia; and Scotiabank, and of CI at BCP.[26]

CI's response to First Request No. 28 (*utilities*) also remains markedly deficient. CI admitted in its second amended responses to the First Requests that its member, Maria Roa, owns a condominium in Florida [Ex. 10: Second Amended Responses to First Requests, pg. 5], but then produced only *three months* of electric bills for that property.[27] Peninsula objected to CI's latest production in its Third Deficiency Letter:

> Defendant produced only three months of electric bill statements, from August to November of 2023 . . . relating to the property at 7900 Harbor Island Drive. We received no explanation for why there are no other utility statements for this property. . . [Ex. 13: Third Deficiency Letter, pg. 4-5.]

Regarding Second Request No. 8 (*disposition of assets*), CI asserted in its second amended responses that all responsive documents "that have been provided are being produced." [Ex. 12: Second Amended Responses to Second Requests, pg. 5.] This response not only obscures what documents will be produced,[28] but is also simply untrue. To date, CI has not produced any contracts or other documents regarding the onward sale of the marine fuel at issue, for which Peninsula has repeatedly asked.

The glaring deficiencies identified with respect to First Request No. 18 (*financial accounts*) logically extend to those requests also seeking comprehensive financial records, namely Second

---

[24] Accounts ending 7779, 0932, 4093, 1216, and 4103.
[25] Accounts ending 2294 and 1157.
[26] Account ending 6496, 7352, 1129, and 4144, respectively.
[27] CI's continued failure regarding this request is also particularly troubling given that the basis for their motion to dismiss hinges on the assertion that neither of CI's members are domiciled in the US, yet they have refused to provide utility statements that undercut this assertion.
[28] In its Third Deficiency Letter, Peninsula highlighted as an overarching comment "that throughout its responses, [CI] repeatedly asserts that it is producing or has produced documents that 'have been provided'. We seek clarification on what [CI] means when it states it has produced or will produce documents which 'have been provided.'" [Ex. 13: Third Deficiency Letter, pg.1-2. ]

Request Nos. 9 (*flow of proceeds*), 10 (*all transfers*), and 11 (*solvency*). CI's responses to the aforementioned requests remain additionally deficient considering that CI has still refused to provide a single contract for any purchases or sale of marine fuel, or records for accounts receivable and accounts payable.

This must be viewed in light of what CI's bank records show – substantial money transfers with affiliates and third parties over the course of four years. Specifically, some records indicate aggregate transfers to or from CI between January 2019 and January 2023 in the following amounts: $2 million sent to Criadero; $3.5 million received from Criadero;[29] $23K sent to Jaime Ochoa; $171K received from Jaime Ochoa; $1.7 million to third parties; and $2.1 million transferred between CI's numerous bank accounts. Yet CI has not produced records pertaining to the reasons therefor, producing only a smattering of disconnected invoices,[30] further underscoring the incompleteness of the production.

**f.   CI's March 11, 2024, supplemental production reaffirms CI's earlier violation of the Court's 10-30-23 Order, and in any event, is clearly insufficient to satisfy the remaining deficiencies in its production.**

On March 11, 2024, an hour before counsel were set to meet and confer regarding the within Motion for Sanctions, CI produced an additional 218 pages of documents.[31] Production of such additional documents *three months* after the November 30 deadline set by this Court further affirms that CI's November 30, 2023, production was not, in fact, complete, in violation of the Court's 10-30-23 Order.

But what is most significant about CI's recent production is what the additional documents indicate that CI has still *not* produced. Importantly, CI has just disclosed *three additional bank*

---

[29] Criadero Luxo, LLC ("Criadero").
[30] Invoices issued by CI to: CSL International, Maersk S/A – Sealand Americas; GEFO Gesellschaft fur Oeltransporte M.B.H.; Bebeka UA; Peninsula; A/S Dan Bunkering, Ltd.; KPI Ocean Connect; and Minerva.
[31] CI MD 002624-002842.

*accounts*: two at Wells Fargo,[32] and one at BCP.[33] But CI produced merely seven months of records for the Wells Fargo accounts and six months of records for the new BCP account, falling significantly short of satisfying Peninsula's request for records from 2018 through 2023.

All other documents provided are clearly discoverable, responsive to Peninsula's requests, and should have been provided to Peninsula in June of 2023, or at the very least, by the final November 30, 2023, deadline set by this Court.[34]

**MEMORANDUM OF LAW**

Throughout the course of this litigation, CI has persistently failed to fulfill its obligations under FRCP 26(e) and the 7-26-23 and 10-30-23 Orders. CI's pattern of non-compliance and delay is further indicative of its bad faith conduct. Accordingly, pursuant to FRCP 37(b)(2) and 37(c)(1), and the inherent power of this Court, Peninsula seeks an award of contempt and payment of all attorneys' fees and expenses caused by CI's repeated failure to produce and supplement discovery over the larger part of a year, including its failure to comply with a direct order of this Court, advising that the sanction of attorney's fees would be awarded in violation thereof.

**A. Peninsula is entitled to all its "reasonable expenses" (including attorneys' fees) caused by CI's violations of the 7-26-23 and 10-30-23 Orders *and* for any other expenses caused by CI's failure to supplement its responses, pursuant to Fed. R. Civ. P. 26(e) and 37(c)(1).**

FRCP 26(e) requires a party responding to a request for production to supplement its disclosure or response "in a timely manner if the party learns that in some material respect the

---

[32] In Jaime Ochoa's name, ending 0390 and 1808.

[33] Ending 2869. CI did not provide enough information to determine the account holder.

[34] Other documents provide in this production primarily include: (i) a resident transaction report from 2018-2024 regarding Roa's Florida condominium, (ii) annual bills from the Miami Dade tax collector regarding Roa's Florida condominium., (iii) Roa's 2019 Colombian tax report; (iv) Ochoa's 2022 Colombian tax report, (v) Roa's property tax reports on the Florida condominium (2018 – 2022); and (vi) bank records for the following accounts for November and December 2023: 0932; 7779; and 4093; and (vii) two years of account statements for BCP account ending 6496 (no records have been provided for 2018, 2022, or 2023, and only one month was provided for 2019).

disclosure or response is incomplete or incorrect" or "as ordered by the court." Fed. R. Civ. P. 26(e). Failure to supplement a response in accordance with this rule may result in the imposition of sanctions, including "payment of the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c)(1).

Courts "enjoy substantial discretion in deciding whether and how to impose sanctions under Rule 37." *McDaniel v. Bradshaw*, No. 10-81082-CIV, 2011 WL 2470519, at *2 (S.D. Fla. June 20, 2011). "To avoid sanctions, the party who is alleged to have failed comply with Rule 26 bears the burden to show that its actions were substantially justified or harmless." *Prior v. State Farm Fire and Casualty Company*, Case No. 8:11-cv-01448-T-27TBM, 2013 WL 12158147, at *1 (M.D. Fla. Feb. 7, 2013).

Sanctions may be appropriate when a party "receive[s] ample and specific notice that [its] discovery responses [are] incomplete and inadequate . . . receive[s] multiple opportunities to properly supplement the record, and, yet fail[s] to appropriately supplement [its] discovery responses." *Scipione v. Advance Stores Co.*, 294 F.R.D. 659, 665 (M.D. Fla. 2013) (Defendant's withholding of responsive documents despite repeated requests constituted a "clear abuse of the discovery process and warrants appropriate sanctions.").

Here, it is clear that CI cannot substantiate any claim of substantial justification for its repeated failures to produce the requested documents. Peninsula issued both its Requests in April of 2023, and FRCP 26(e) imposes a clear duty on parties to promptly supplement responses to requests upon learning that they are incomplete or incorrect. Ten plus months have passed since the issuance of Peninsula's requests, and yet there still remain numerous, inexplicable, material gaps in CI's production.

It is crucial to examine CI's failures to produce in light of the numerous deficiency letters issued by Peninsula, as well as several conferences between the parties' counsel and hearings before this Court, all which placed CI on clear and specific notice of the deficiencies in its production.

CI has also already had the opportunity to address any purported justification for its non-compliance at two separate hearings before this Court. In both instances, CI failed to do so. It is for this reason that at the most recent discovery hearing, this Court issued its 10-30-23 Order, directing Defendant to produce the requested material or be sanctioned, and possibly held in contempt. CI is out of time and excuses.

Given that CI cannot justify its blatant, continuing failures to comply with the discovery rules or this Court's 7-26-30 and 10-30-23 Orders, Peninsula should be awarded sanctions against CI, including all "reasonable expenses, including attorney's fees, caused by [CI's] failure." At the Second Discovery Hearing, Magistrate Judge Reid ruled that such expenses would include "any attorney's fees that [Peninsula] has incurred in attempting to get the compliance of the Defendant" [Dkt. 103: 10-18-23 Tr. at  13:8-11],[35] and the Court confirmed that such sanctions would include "all fees incurred throughout this process."  [*Id.* at 13:23-14:2.]

For nine months, Peninsula has shouldered the burden of CI's discovery violations, bearing the costs incurred in exhaustive efforts to obtain production to which it is legally entitled and which it, to date, has still not received. These costs include, but are in no way limited to, costs incurred

---

[35] This is consistent with other decisions in this circuit. In *Scipione v. Advanced Stores Co., Inc.*, 294 F.R.D. 659, 665 (M.D. Fla. 2013), the U.S. District Court for the Middle District of Florida determined that appropriate sanctions under Rule 37(c)(1) were for the sanctioned party to pay "all of [the moving party's] expenses and attorney's fees associated with the [sanctioned party's] failure to provide the appropriate discovery." This broad category of expenses included all expenses incurred in pursuing the motion to compel, the motion for sanctions, and any others incurred in "seeking information not provided by [the sanctioned party] in [its] discovery responses." *Id.* at 667-68. The court considered payment of these expenses appropriate in light of the fact that the moving party "expended unnecessary time and resources to obtain the requested discovery not provided by [the sanctioned party]." *Id.*

in reviewing discovery materials to identify deficiencies therein, in drafting and issuing the First, Second, and Third Deficiency Letters, planning for and attending multiple teleconferences with CI's counsel, preparing notices for, and attendance at both the First and Second Discovery Hearings (including Peninsula's Motions to Compel), and now, preparing and filing the within Motion for Sanctions.

Sanctions in the form of all reasonable expenses incurred due to CI's inadequate production are entirely appropriate here, where it would be fundamentally unjust for Peninsula to shoulder the aforementioned costs incurred solely due to CI's noncompliance with the Federal Rules and with the Orders of this Court. Accordingly, Peninsula requests that this Court impose sanctions on CI and its counsel, and require them to compensate Peninsula for all its reasonable expenses in pursuing the requested discovery.

**B. Peninsula is entitled to an award of contempt and all its "reasonable expenses" (including attorneys' fees) for CI's violations of the 7-26-23 and 10-30-23 Orders, pursuant to Fed. R. Civ. P. 37(b)(2).**

FRCP 37(b)(2) provides that if a party "fails to obey an order to provide or permit discovery" then the court where the action is pending may issue various orders, including treating the failure to obey as contempt of court. Fed. R. Civ. P. 37(b)(2)(A)(vii). Additionally, "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including the attorney's fees, caused by the failure, unless the failure was substantially justified. . .." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

This Court has already advised in its 10-30-23 Order that CI's failure to adequately supplement production would result in the imposition of sanctions (in the form of attorneys' fees), and might result in CI and/or its counsel being held in contempt of court. [Dkt. 102.]

As with any sanction imposed pursuant to Rule 37, courts have substantial discretion if and how to impose sanctions. *See McDaniel*, 2011 WL 2470519, at \*2.[36] CI has now twice clearly violated the explicit directives of this Court, first by failing to supplement its responses and production adequately as directed by the Court in its 7-26-23 Order, and for failing to do so again as directed by the Court's most recent 10-30-23 Order.

### C. Peninsula is entitled to an award of contempt and payment of all its expenses (including attorneys' fees) incurred due to CI's bad faith conduct, pursuant to the inherent authority of this Court.

"District Courts possess the inherent power to regulate litigation and to sanction their counsel for abusive practices." *Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1335 (S.D. Fla. 2007). While courts should typically rely on the appropriate statutes and rules to sanction bad-faith conduct "the court may safely rely on its inherent power if, in its informed discretion, neither the statutes nor the rules are up to the task." *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991). A court may impose sanctions on a party or their attorney, pursuant to its inherent power, for demonstrating bad faith conduct through deliberate delays or disruptions to the litigation. *See Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1545–46 (11th Cir. 1993). *See also Bernal*, 479 F. Supp. 2d at 1335 ("The key to unlocking a court's inherent power is a finding of bad faith.").

CI's bad faith conduct has been most glaringly apparent in its conduct throughout the discovery process. CI has repeatedly failed to rectify deficiencies in its responses, despite being afforded specific notice of such violations and numerous opportunities to supplement production.

---

[36] Furthermore, the non-producing party bears the burden to show that its conduct was "substantially justified or harmless." *See Stallworth*, 199 F.R.D. at 368. That burden, and Defendant's inability to meet that standard, has been thoroughly addressed in the preceding subsection.

CI has offered no reasonable, much less substantial, justification for the continued deficiencies in its production, despite having every opportunity to explain such conduct to the Court. CI has willfully violated this Court's 7-26-2-23 and 10-30-2023 Orders. In short – CI has refused to produce or to provide a valid explanation for not producing. Accordingly, Peninsula requests that this Court exercise its inherent authority to hold CI in contempt, and to award Peninsula all its reasonable expenses in pursuing the requested discovery.

The U.S. Supreme Court has held that it is appropriate for a district court exercising its inherent authority to impose sanctions for bad faith conduct to order the litigant acting in bad faith to pay those legal fees which "the [innocent] party would not have incurred but for the bad faith." *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 104 (2017). "This but-for causation standard generally demands that a district court assess and allocate specific litigation expenses – yet still allows it to exercise discretion and judgment." *Id.* at 110.

But for CI's misconduct, Peninsula would have received the responsive documentation in or around June of 2022. Yet, ten plus months later, Peninsula is still without a substantial portion of requested production necessary to pursue its claims. Had CI produced responsive documents when it was obligated to, Peninsula would not have expended substantial effort and expense to comb through piecemeal discovery and infer from the documents provided what additional information should have been included in CI's response. Peninsula would also not have had to request, prepare for, and attend two separate hearings before this Court. Nor would Peninsula have had to file this present Motion for Sanctions.

The inadequacy of CI's initial responses already constituted a clear violation of its obligations under the rules, but its persistent failures, despite having ample notice, time, and opportunity to respond, and despite this Court's clear directives to respond/supplement, evidence

CI's blatant disregard for its legal obligations and a deliberate pattern of noncompliance that cannot be justified.

<u>**CONCLUSION**</u>

Attached in support of this Motion for Sanctions is the Declaration of Joseph Johnson, <u>Exhibit 14</u>, which sets forth in greater detail the attorney time and cost expenditures.

CI has not complied with its obligations under the FRCP nor any order of this Court to produce the requested documents. CI's repeated noncompliance and disobedience requires the imposition of serious and substantial sanctions and a finding of contempt under FRCP 37(b)(2) and 37(c)(1), and pursuant to the inherent power of this Court. Plaintiff should be awarded all its costs and expenses, including attorneys' fees.

Dated: March 12, 2024

Respectfully submitted,

By: /s/ Evan S. Gutwein
HAMILTON, MILLER, & BIRTHISEL LLP
Jerry D. Hamilton (FBN 970700)
jhamilton@hamiltonmillerlaw.com
Evan S. Gutwein (FBN 58741)
egutwein@hamiltonmillerlaw.com
150 S.E. Second Avenue, Suite 1200
Miami, Florida 33131
(305) 379-3686 (telephone)
(305) 279-3690 (facsimile)
***Attorneys for Plaintiff***

-and-

ZEILER FLOYD ZADKOVICH (US) LLP
Luke Zadkovich, Esq.
luke.zadkovich@zeilerfloydzad.com
(Admitted *Pro Hac Vice*)
Joseph Johnson, Esq.
joe.johnson@zeilerfloydzad.com
(Admitted *Pro Hac Vice*)
33 East 33rd Street, Suite 905
New York, NY 10016

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 12, 2024 I electronically filed this document using the Court's CM/ECF system, which will automatically serve a copy on all counsel of record.

By:   /s/  Evan S. Gutwein

| | |
|---|---|
| DILICAN LAW FIRM, P.A.<br>Lori Dilican<br>ldilican@dilicanlaw.com<br>8050 SW 72nd Ave. Apt. No. 2307<br>Miami, FL 33143<br>Tel. No. (561) 951-9612<br>**Attorneys for Defendant** | HAMILTON, MILLER, & BIRTHISEL LLP<br>Evan S. Gutwein (FBN 58741)<br>egutwein@hamiltonmillerlaw.com<br>150 S.E. Second Avenue, Suite 1200<br>Miami, Florida 33131<br>(305) 379-3686 (telephone)<br>(305) 279-3690 (facsimile)<br><br>and<br><br>ZEILER FLOYD ZADKOVICH (US) LLP<br>Luke Zadkovich, Esq.<br>Luke.zadkovich@zeilerfloydzad.com<br>(Admitted *Pro Hac Vice*)<br>Joseph Johnson, Esq.<br>joe.johnson@zeilerfloydzad.com<br>(Admitted *Pro Hac Vice*)<br>215 Park Avenue, 11th Floor<br>New York, NY 100003<br>(917) 375-9511<br>*Attorneys for Plaintiff* |