UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-20712-ALTMAN/REID

PENINSULA PETROLEUM LIMITED,

 Plaintiff,

v.

CI INTERNATIONAL FUELS LLC,

 Defendant.

_____/

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SANCTIONS

This cause is before the Court on Plaintiff Peninsula Petroleum Limited's ("Plaintiff" or "Peninsula") Motion for Sanctions [ECF No. 104] following Defendant CI International Fuels, LLC's ("Defendant" or "CI Fuels") discovery violations pursuant to Fed. R. Civ. P. 26(e) and failure to comply with the undersigned's July 26, 2023, and October 30, 2023, discovery orders (the "Discovery Orders") at ECF Nos. 91 and 102. The Court has considered Plaintiff's Motion, Defendant's Response [ECF No. 106], Plaintiff's Reply [ECF No. 108], the record, and all relevant authorities. For the reasons explained in this Report, it is **RECOMMENDED** that the Motion [ECF No. 104] be **GRANTED** as follows: Pursuant to 28 U.S.C. § 636(e)(6)(B), it is **RECOMMENDED** that the District Judge enter an order setting a hearing, at which Defendant must appear and show cause as to why it should not be adjudged in contempt by reason of the facts certified in this Report. If the Court finds Defendant in contempt, the Court should order it to pay reasonable attorneys' fees and costs incurred by Plaintiff and impose a per diem fine for every day of Defendant's noncompliance with the undersigned's Discovery Orders.

## LEGAL STANDARD

1

Sanctions in the form of attorney's fees and civil contempt are available pursuant to two authorities: the Federal Rules of Civil Procedure and this Court's inherent authority.

The Federal Rules are clear: "A party that fails to adhere to Rule 26 discovery requirements can be sanctioned under Rule 37." *Treminio v. Crowley Mar. Corp.*, 3:22-CV-00174-CRK, 2024 WL 1075433, at *4 (M.D. Fla. Mar. 12, 2024). Pursuant to Rule 37(c), upon a party's failure to provide information as required by Rule 26(a) or (e), the court may, on motion and after giving an opportunity to be heard, order payment of reasonable expenses, including attorney's fees caused by the failure. Fed. R. Civ. P. 37(c)(1)(A). The Court may impose more severe sanctions— including treating as contempt of court— a party's failure to obey a discovery order. Fed. R. Civ. P. 37(b)(2)(A)(vii).

Similarly, the Court's inherent power to control its affairs applies when parties or attorneys fail to comply with a court order. *See McDonald v. Cooper Tire & Rubber Co.*, 186 Fed. App'x. 930, 931 (11th Cir. 2006) (citing *Kleiner v. First Nat'l Bank of Atlanta,* 751 F.2d 1193, 1209 (11th Cir. 1985)). But "[t]o exercise its inherent power[,] a court must find that the party acted in bad faith." *Martin v. Automobili Lamborghini Exclusive, Inc.,* 307 F.3d 1332, 1335 (11th Cir. 2002). Further, "[d]isobedience of a court order unequivocally merits punishment save in instances in which compliance would necessarily result in an irrevocable and permanent surrender of a constitutional right." *Kleiner*, 751 F.2d at 1208 (internal citation and quotation omitted). *See Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt.").

A magistrate judge's limited contempt powers are set forth in 28 U.S.C. § 636(e). Pursuant to 28 U.S.C. § 636(e)(6)(B)(iii), if a magistrate judge finds that certain acts constitute civil contempt, "the magistrate [judge] shall forthwith certify the facts to a district judge . . ." who may

issue an order to show cause upon any person whose behavior is brought into question under Section 636(e)(6)(B), and hold an evidentiary hearing to determine whether that person should be adjudged in contempt by reason of the facts certified. "'The certification of facts under section 636(e) serves to determine whether the moving party can adduce sufficient evidence to establish a *prima facie* case of contempt.'" *Lapinski v. St. Croix Condo. Ass'n, Inc.*, No. 16-cv-01418, 2018 WL 4381168, at *2 (M.D. Fla. Aug. 1, 2018) (quoting *Church v. Steller*, 35 F. Supp. 2d 215, 217 (N.D.N.Y. 1999)). "Along with this certification, 'a magistrate judge may recommend that certain sanctions be imposed by the district court upon a finding of contempt.'" *United States v. Hernandez*, 18-20783-CIV, 2024 WL 62510, at *3 (S.D. Fla. Jan. 5, 2024) (quoting *Lapinski*, 2018 WL 4381168, at *2 (citation and quotation marks omitted)).

## **CERTIFIED FACTS**

Plaintiff Peninsula, an Irish corporation, filed this collection action seeking $1,545,293.56 plus interest from CI Fuels, a Florida LLC, following non-payment on two agreements for the sale, purchase, and delivery of marine fuel. [*See* Amended Verified Complaint at ECF No. 38]. According to Peninsula, the marine fuel was delivered, partial payments were made, negotiations were held concerning payment of the balance, and revised invoices were issued. [*Id.* at 1]. However, those revised invoices were never paid. [*Id.*]. Peninsula claims Breach of Contract, Enforcement of Security Interest, and Fraudulent Transfer pursuant to the Florida Uniform Fraudulent Transfer Act ("UFTA"), Title XLI, Chapter 726, Florida Statute.

Despite the parties' efforts in engaging in jurisdictional and merits-based discovery, several disputes have arisen related to the production (or non-production) of certain documents. The instant dispute follows from the entry of the Discovery Orders requiring CI Fuels to supplement its responses and produce documents relevant to Peninsula's discovery requests.

At the <u>first discovery hearing</u> held on July 26, 2023, and following the parties' good faith conferral efforts, the Court ordered CI Fuels to (1) amend responses to Peninsula's First Request for Production ("RFP") Nos. 2, 7–12, 13, 15, 18, 24, and 26–28 within seven days; and (2) granted CI Fuels leave to file written objections as to Plaintiff's Second RFP within 14 days of the order. [ECF No. 91].

On August 2, 2023, CI Fuels served its Amended Responses to the First and Second RFPs and produced an additional 35 pages of documents in response to the RFPs. [ECF No. 104 at 6; 104-6; 104-7]. According to Plaintiff, CI Fuels "did not supplement documents which it claimed it would, claimed to have produced documents which it did not produce, and provided inconsistent responses regarding the production status and existence of documents. . .." [*Id.*]. In an effort to avoid further court intervention, Peninsula followed up with CI Fuels in its Second Deficiency Letter, dated August 16, 2023. [ECF No. 104-8]. Approximately one month later, CI Fuels produced 190 pages of documents, but failed to produce documents responsive to the Second RFPs. [ECF No. 104 at 8]. Plaintiff then requested a discovery hearing.

Following the <u>second discovery hearing</u> held on October 18, 2023, the Court ordered CI Fuels to amend its responses to Peninsula's First RFP for Request Nos. 7, 8, and 10–12, supplement its responses for Request No. 15, and produce documents for Request Nos. 18 and 28, by **November 30, 2023**. [ECF No. 102 at 1]. CI Fuels was also ordered to produce documents requested in Peninsula's Second RFP for Request Nos. 1 and 8–11 by the same date. [*Id.* at 2]. The Court warned that "failure to produce documents by November 30, 2023 will result in an imposition of sanctions in the form of attorneys' fees as incurred by Plaintiff and may result in contempt proceedings." [ECF No. 102]. Defendant then served its Second and Third Amended Responses to Plaintiff's RFPs on September 21, 2023, and November 30, 2023, along with an

additional 2,080 pages of documents. [ECF Nos. 104-10–104-12].[1] Plaintiff followed with a Third

Deficiency Letter on December 22, 2023. [ECF No. 104-13].

      One hour before the parties' conferral regarding the instant Motion, CI Fuels produced 218

pages of documents on March 11, 2024. Its own Response Letter was served the following day.

[ECF No. 107-6]. Peninsula thereafter filed its Motion seeking sanctions. [ECF No. 104].

      To place Defendant's discovery violations in context, the Court provides a detailed

chronology of three discovery requests, which highlight Defendant's deficiencies throughout the

discovery process[2]:

- **FIRST RFP, REQUEST NO. 18** **(04/19/2023):** Documents evidencing all checking, savings, money market, brokerage, investment, or other accounts in the United States from January 1, 2018, through present, in the name of Cl Fuels or Cl Fuels' former or current members (past or present) including, but not limited to, monthly account statements.
  - o **Response (06/02/2023):** Responsive documents within the Defendant's possession, custody and control are being produced.
  - o **Plaintiff's Comment at First Deficiency Letter (06/26/2023):** We object to this response as being incomplete. The account statements from Banco del Credito del Peru (Cl MD - 000193 through 000203) and the wire confirmations (Cl MD-000204 through 000239) only include information from the first five months of 2021. Moreover, there was not a single monthly account statement provided in the documents produced by Cl Fuels for accounts owned by any of Cl Fuels' members, individually. To the extent Cl Fuels claims that monthly account statements of Mr. [Jaime] Ochoa or Ms. Roa's accounts are not in its possession, custody and control, this argument is disingenuous. Plaintiff is entitled to the accounts of Ms. Roa and Mr. Ochoa, whether individually or in their capacities as members of the LLC. Defendant has brought into question the extent to which they do their banking in the United States. We therefore ask that you amend your response and produce copies of monthly statements of any and all US accounts from January 1, 2018 through present of Cl Fuels, Mr. Ochoa, or Ms. Roa.
  - o **First Discovery Hearing before Judge Reid (07/26/2023):** Defendant was ordered to amend its responses to First RFP No. 18.

---

[1] Defendant served two "Second Amended Responses to Plaintiff's Requests for Production." [ECF Nos. 104-10; 104-11]. The Court will refer to the latter-served document as the "Third Amended Response."

[2] This chronology excludes the parties' extensive conferral efforts, which took place via Zoom conferences and e-mail.

- o **Amended Response (08/02/2023):** Documents responsive to Request No. 18 have been produced.
- o **Plaintiff's Comment at Second Deficiency Letter (08/16/2023)**: We object to this response as being incomplete. We had a conference in which we explained (and Magistrate Judge Reid agreed) that this request went well beyond five months of account statements from one single financial institution in the early party of 2021. You said you would amend, but you have not amended. This response is inexplicable. The account statements from Banco del Crédito del Peru (CI MD – 000193 through 000203) and the wire confirmations (CI MD – 000204 through 000239) only include information from the first five months of 2021. Moreover, there was not a single monthly account statement provided in the documents produced by CI Fuels for accounts owned by any of CI Fuels' members, individually. We therefore once again ask that you amend your response and produce copies of monthly statements of any and all US accounts from January 1, 2018 through present of CI Fuels, Mr. Ochoa, and Ms. Roa. Please let us know the specific date we can expect to receive these responsive documents.
- o **Second Amended Response (09/21/2023):** Per the parties' Discovery conference on August 30, 2023, it was agreed that production of Colombian bank accounts would be acceptable in response to Request No. 18. Documents responsive to Request No. 18 are being produced. Banco de Credito del Peru Miamy Agency has provided third party production responsive to this request.
- o **Second Discovery Hearing before Judge Reid (10/18/2023):** Hearing held. Defendant was ordered to provide its production as to First RFP No. 18 by November 30, 2023. Order entered on 10/30/2023.
- o **Third Amended Response (11/30/2023):** All documents responsive to request No. 18, that are in the care and custody of the Defendant that have been provided are being produced. Upon knowledge and belief, this request is complete.
- o **Plaintiff's Comment at Third Deficiency Letter (12/22/2023)**: We object to this response as being incomplete. Defendant once again failed to produce all responsive documents with respect to the account at Banco del Crédito del Peru, instead producing records covering only the first six months of 2021(00645 through 00649). Defendant also did not produce any wire statements for this account. To our knowledge, Defendant also failed to produce responsive documentation with respect to Bank of America accounts ending in 2294 or 1557, or Jaime Ochoa's account(s) at Wells Fargo (formerly at Wachovia). We ask that you identify by Bates number the specific documents that you claim are fully responsive to this Request, or, alternatively, amend your response and produce Documents and Communications fully responsive to this request for all relevant dates and times. Finally, Defendant failed to produce bank records current through November 2023 for Bank of America accounts ending 7779 and 0932. We therefore once again ask that Defendant amend its response and produce copies of monthly statements of all US accounts from January 1, 2018, through present of CI Fuels, Jaime Ochoa, and Maria Roa. Please let us know the specific date we can expect to receive these responsive documents.
- o **Defendant's Comment at its Response Letter (03/12/2024):** As discussed in the hearing on Plaintiffs motion to compel, the above referenced for statements from

Banco de Credito del Peru where subpoenaed by the Plaintiff and were already in their possession at the time of the hearing. However, the Plaintiff insisted that the Defendant should also be made to produce these documents regardless. Defendant did produce these documents as requested in Plaintiffs deficiency demand and Plaintiff suffered no prejudice therefrom because it already had received the banking records from Banco de Credito del Peru. It should be noted that the statements contain wire transaction information. As to the alleged bank accounts ending in 2294 or 1557, upon knowledge and belief, account ending in 2294 is a credit card, not a bank account and the account ending in 1557 does not exist. As to the Wells Fargo account, all statements in the Defendant's possession were produced in good faith.

- **FIRST RFP, REQUEST NO. 28 (04/19/2023):** Copies of all utility statements in the name of Cl Fuels or any of its members, past or present, from January 1, 2018 to the present, including, but not limited to, electricity, gas, water, sewer, internet, telephone, cable TV, security system, and trash collection.

o **Response (06/02/2023)**: No such documents are in the possession of Defendant. Defendant reserves its right to supplement its response should such documents become available.

o **Plaintiff's Comment at First Deficiency Letter (06/26/2023):** We object to this response as being incomplete and, to the extent Defendant attempts to claim that Cl Fuels does not have possession of Documents that are in the possession of its members, disingenuous. Utility bills can be used to determine one's domicile. *See Smyth,* 2013 WL 2048188, at *2. Defendant has raised the diversity jurisdiction issue and, as such, has created this situation whereby its member's domicile is of central focus for purpose of this litigation. We therefore ask that you amend your response and produce Documents and Communications responsive to this request.

o **First Discovery Hearing before Judge Reid (07/26/2023):** Defendant was ordered to amend its responses to First RFP No. 28.

o **Amended Response (08/02/2023):** Documents responsive to request No. 28 that are in the care, custody or possession of CI Fuels' members will be produced. The only utility bill associated to any of the members is the cable and internet provided by DirecTv. All other utilities would be under the name of the property owner of record, in this case, the members' daughter who is not a party to this litigation.

o **Plaintiff's Comment at Second Deficiency Letter (08/16/2023)**: We object to this response as being incomplete and, to the extent Defendant attempts to claim that CI Fuels does not have possession of Documents that are in the possession of its members, disingenuous. Utility bills can be used to determine one's domicile. *See Smyth*, *2*013 WL 2048188, at *2. It is inexplicable that there are no utility statements for any of the properties in the United States that we have previously identified as being owned or leased by CI Fuels or one of its members, that being both (i) 7900 Harbor Island Drive; and (ii) 5201 Blue Lagoon Drive, 8 Floor, Miami, FL 33126. Please let us know the specific date we can expect to receive these responsive documents.

o **Second Amended Response (09/21/2023):** Same as Amended Response.

o **Second Discovery Hearing before Judge Reid (10/18/2023):** Hearing held. Defendant was ordered to provide its production as to First RFP No. 28 by November 30, 2023. Order entered on 10/30/2023.

o **Third Amended Response (11/30/2023):** Documents responsive to request No. 28 that are in the care, custody or possession of CI Fuels' members that have been provided are being produced. Upon knowledge and belief, this request is complete.

o **Plaintiff's Comment at Third Deficiency Letter (12/22/2023)**: We object to this response as being incomplete. As discussed with respect to Request No. 7, Defendant produced only three months of electric bill statements, from August to November of 2023 (00585 to 00590), relating to the property at 7900 Harbor Island Drive. We received no explanation for why there are no other utility statements for this property or for any of the other properties that are in the United States that we have previously been identified as being owned or leased by Defendant or one of its members, including 5201 Blue Lagoon Drive, 8 Floor, Miami, FL 33126. Please let us know the specific date we can expect to receive these responsive documents.

o **Defendant's Comment at its Response Letter (03/12/2024)**: Regarding the requested utility bills, Defendant reiterates that in response to this complaint, the Defendant provided a supplementary statement outlining the electric bills for the period of request and furthermore, this information was produced in the form of banking statements that show both debits for electric and COA assessments. Moreover, the only utility bills associated with the Condo are those for assessments and electricity because water and trash are included in the assessment. Additionally, the members of Defendant do not reside in the Condo and therefore, do not have internet and television service for the unit. As to the address 5201 Blue Lagoon Drive, 8 Floor, Miami, FL 33126, the use of this address was extended by a friend of the members, solely for the purpose of receiving mail. This address is not owned or leased by any member of Defendant.

- **SECOND RFP, REQUEST NO. 8 (04/26/2023):** All Documents and Communications related to the disposition of the "Assets" as defined in the Pledge Agreement, including, but not limited to, the contracts for the onward sale thereof.

o **Response (06/02/2023):** All documents and communications responsive to this request that are in Defendant's custody, care or possession have been produced. Defendant reserves the right to supplement this response should any additional documents or communications become available.

o **Plaintiff's Comment at First Deficiency Letter (06/26/2023):** We object to this response as being incomplete. At bare minimum, Cl Fuels should have provided the contracts for onward sale of the product. Nothing was provided. We therefore ask that you amend your response and produce Documents and Communications responsive to this request.

o **First Discovery Hearing before Judge Reid (07/26/2023):** Defendant was granted leave to file written objections as to Plaintiff's Second RFPs within 14 days.

o **Amended Response (08/09/2023):** OBJECTION: The pledge agreement in [*sic*] governed by Colombian law and extensively references proceedings in accordance with Colombia Law, Article 14 Securities Over Moving Assets. Plaintiff, through its Colombian counsel, has commenced proceedings in Colombia pursuant to

Article 14 and in conformity with the enforcement provisions of the Pledge Agreement. The moving assets were delivered to the custody of CI International Fuels SAS and the documents requested are not in the possession of CI Fuels. CI International Fuels SAS is not a party to this action.

o **Plaintiff's Comment at Second Deficiency Letter (08/16/2023)**: Mr. Ochoa is self-admittedly both the CEO of CI International Fuels S.A.S. and the manager/shareholder of CI International Fuels, LLC. He cannot in good faith argue that documents in the possession of one are not in the possession of the other. The Eleventh Circuit has held that, for purposes of Fed. R. Civ. P. 34, "[c]ontrol is defined not only as possession, but as the legal right to obtain the documents requested upon demand." *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984). Other cases in the Southern District of Florida involving sibling companies extend "control" to include situations where a litigant has the "practical ability" to obtain materials. *Costa v. Kerzner Intern. Resorts*, Inc., 277 F.R.D. 468, 471 (S.D. Fla. 2011) ("Control ... does not require that a party have legal ownership or actual physical possession of the documents at issue," but merely requires that a party has the "right, authority, or practical ability to obtain the materials sought on demand."). As such, please let us know the specific date we can expect to receive these responsive documents.

o **Second Discovery Hearing before Judge Reid (10/18/2023):** Hearing held. Defendant was ordered to provide its production as to Second RFP No. 8 by November 30, 2023. Order entered on 10/30/2023.

o **Second Amended Response (11/30/2023):** All documents responsive to request No. 8 that have been provided are being produced.

o **Plaintiff's Comment at Third Deficiency Letter (12/22/2023)**: We object to this response as being incomplete. To our knowledge, Defendant did not produce any documentation or communications responsive to this request, including any contract(s) for the onward sale of Assets. We therefore ask that Defendant either identifies by Bates number the specific documents that it claims are fully responsive to this Request, or, alternatively, amends its response and produces Documents and Communications fully responsive to this request for all relevant dates and times.

o **Defendant's Comment at its Response Letter (03/12/2024)**: Defendant has repeatedly and consistently stated that it functions solely as an invoice processing center for CI International SAS and has no employees or infrastructure because it was established pursuant to a tax strategy. Therefore, Defendant did not enter into contracts with alleged vendors. In fact, the only contract that the Defendant ever entered into was the contract that is the subject of this dispute. However, pursuant to Plaintiff's request, the Defendant produced invoices showing the client, the quantity of fuel ordered and the amount charged, inter alia. Moreover, Defendant has produced a significant amount of banking records which Plaintiff can cross reference. It is important to recognize that the debt Plaintiff seeks to collect is the exact same debt that is admitted to and presently pending in the CI International SAS reorganization proceedings before the Superintendency of Societies. C I SAS is the guarantor of the debt, whereas the Defendant is an affiliate invoice processing center for CI SAS, who is not a party to the instant litigation. Upon knowledge and belief, the Colombian reorganization proceedings are nearing conclusion and Cl

SAS will be responsible for the repayment of the debt at issue in this litigation. Plaintiff has repeatedly acknowledged that it is not entitled to double recovery for the same debt. Therefore, Defendant disagrees with the Plaintiffs position that it is irrelevant whether or not Plaintiff and CI SAS have agreed to repayment terms. Especially here, where there are foreign entities on both sides of the dispute and the Plaintiff has yet to establish jurisdiction.

ECF Nos.104; 104-1–104-14; 106; 107-1–107-10; 108; 108-1–108-2.

Plaintiff's Motion springs from Defendant's repeated failure to produce and supplement discovery. Were it not for Defendant's misconduct, Plaintiff argues, it would have received responsive documents on or around June of 2022. [ECF No. 104 at 19].

CI Fuels contends that it has produced every document available to it. [ECF No. 106 at 6]. On the one hand, "as a subordinate affiliate[, it] does not have the authority to reach up to the parent company to demand and enforce requests for documents." [*Id.* at 4]. Despite lacking authority, CI Fuels apparently "has made every effort to gather and produce documents related to Peninsula's requests for production." [*Id.*].

Defendant describes itself as a "subordinate affiliate" that "simply serves as an invoice processing center for [its affiliate, C.I. International Fuels SAS ("SAS"), a Colombian company]." [ECF No. 106 at 4, 12]. Defendant has no assets, employees, or operations in Florida. [*Id.* at 1]. It relies on the assertion that SAS holds the documents Peninsula seeks, and that "SAS does not routinely provide or share documents or information with [CI Fuels] in the ordinary course of its operations." [*Id.* at 2] CI Fuels's "only purpose is to make and take payments in the United States as part of a tax and sales/purchase strategy, pursuant to mandate agreement between the two affiliate companies." [*Id.*].

CI Fuels partially relies on SAS's reorganization proceeding in Colombia, at which Peninsula is actively participating as a creditor. [*Id.*]. Defendant's position is that Plaintiff is "improperly seek[ing] production from nonparty SAS as an end run around Colombia bankruptcy

court jurisdiction. . ..” [*Id.* at 2–3]. Despite this Court's Discovery Orders, Defendant attributes its failure to produce documents to the complexity of the "domicile issue" because Jaime Ochoa, the individual in charge of both CI Fuels and SAS, "is a sophisticated individual having a sophisticate [*sic*] personal financial structure that relies on a vast web of professionals and assistants with regards to maintenance of the requested documents.. . ." [*Id.* at 3].

As to the First RFP Request No. 18, CI Fuels has yet to produce six-years of wire transfer records for five newly disclosed Bank of America ("BofA") accounts, six years of records for two undisclosed BofA accounts, and over five years of records related to accounts of Mr. Ochoa at Banco Falabella, Bancolombia, and Scotiabank, as well as an account of CI Fuels at Banco Del Credito Del Peru ("BCP"). [ECF No. 104 at 11–12].  As to the First RFP Request No. 28, CI Fuels has only produced three months of electricity bills for the 7900 Harbor Drive property, failing to explain why it has not produced the other 69 months of requested electricity bills. [ECF No. 108 at 4]. Finally, CI Fuels has not produced documents related to three new accounts: two accounts at Wells Fargo (producing only seven months of records) and one at BCP (producing only six months of records). [ECF No. 104 at 13–14].

## DISCUSSION

The question before the Court—which, at bottom, is the root cause of Defendant's discovery violations—is whether Defendant has "control" over the requested documents, therefore warranting sanctions for failure to timely produce the requested documents in accordance with the Discovery Orders. The answer is "yes." Defendant cannot hide behind the guise of a parent-subsidiary or affiliate relationship to avoid producing documents. Sanctions are warranted.

A. *Defendant's "Control" Over Discoverable Documents*

Pursuant to Fed R. Civ. P. 34(a), a party must produce documents in response to a request for production if those documents are "in the responding party's possession, custody, or control." "Control" has been construed to not only include documents in a party's immediate possession, but also documents that a party has a legal right to obtain. *See, e.g., Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984). In *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1201 (11th Cir. 2016), the circuit court approved of the district court's application of *Searock*, which established the "legal right" as a broad one: "the legal right to obtain the documents requested upon demand." This "'legal right to obtain documents requested upon demand' *may* be established where affiliated corporate entities—who claim to be providers of complimentary and international financial services—have actually shared responsive information and documents in the normal course of their business dealings." [*Id.*] (emphasis added).

"The burden is on the party seeking discovery to establish that the opposing party has 'control' over documents held by an affiliate." *Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468, 473 n. 2 (S.D. Fla. 2011) (citing *United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989)); *see also Siegmund v. Bian*, No. 12-62539-civ, 2016 WL 1359595, at *2 (S.D. Fla. Apr. 6, 2016). "Numerous courts have addressed the concept of 'control' as between corporate entities; virtually all of the published decisions have required production by the nonparty corporation." *Costa*, 277 at 471 (quoting *Mt. Hawley Ins. Co. v. Felman Prod., Inc.*, 269 F.R.D. 609, 617 (S.D.W. Va. 2010)). "[C]ontrol is defined as 'the legal right, authority, or ability to obtain upon demand documents in the possession of another.'" *In re Wright*, ADV. 04-9156, 2005 WL 6488101, at *3 (Bankr. N.D. Ga. Aug. 9, 2005) (citations omitted).

Defendant contends that the issue is *not* that the company is unable to obtain responsive documents because they are in the hands of its affiliate SAS. [ECF No. 106 at 5]. Instead, it argues

that Peninsula is seeking a non-party production from a parent company to which it is not entitled. [*Id.*]. This argument confuses the issue and is inconsistent with Defendant's own cited case law. The *Costa* factors—which is relied on by CI Fuels almost exclusively—serve to assist the Court in determining whether a party has "control" over documents in possession of a nonparty affiliate: "(1) the corporate structure of the party and the nonparties; (2) the nonparties' connection to the transaction at issue in the litigation; and (3) the degree to which the nonparties benefit from the outcome of the litigation." *Costa*, 277 F.R.D. at 471 (citing *Steele Software Sys., Corp. v. DataQuick Info. Sys., Inc.*, 237 F.R.D. 561, 564 (D. Md. 2006)).

As an initial matter, CI Fuels challenges Peninsula for its failure to address the *Costa* factors. But "*Costa* merely identified specific evidentiary factors that could be used to evaluate 'control' under the *Searock* standard." *In re Takata Airbag Products Liab. Litig.*, 15-02599-MD, 2017 WL 8812733, at *3 (S.D. Fla. Feb. 16, 2017). "Indeed, it appears that *Costa* merely intended to elucidate the *Searock* standard, not to modify or displace it, as evidenced by the fact that it cited *Searock* repeatedly." [*Id.*]. The undersigned agrees. In concluding that Plaintiff has established that CI Fuels has "control" over the documents purportedly held by SAS, the Court will address both standards.

CI Fuels, as an affiliate of SAS, has a legal right to obtain documents requested upon demand. *Sergeeva*, 834 F.3d at 1201. In an effort to distinguish this case from circuit precedent established in *Sergeeva*, Defendant argues that it does not "share responsive information and documents [with SAS] in the normal course of business." [ECF No. 106 at 12] (emphasis added). *See Sergeeva*, 834 F.3d at 1201 ("The legal right to obtain documents requested upon demand may be established where affiliated corporate entities . . . have actually shared responsive information and documents in the normal course of their business dealings.") (internal quotation marks

omitted; emphasis added). This argument fails. First, according to Mr. Ochoa's declaration, CI Fuels "make[s] and take[s] payments in the United States as part of a tax and sales/purchase strategy, pursuant to mandate agreement between the two affiliate companies." [ECF No. 106 at 2]. CI Fuels then admits that the companies do in fact share information as to invoicing. [*Id.*]. Second, as will be assessed in the context of the *Costa* factors, Mr. Ochoa is the *only* individual who can respond to legal authority on behalf of both CI Fuels and SAS. [*See* ECF No. 26-1 at 1]. How Defendant and SAS do not share records in the normal course of business is beyond belief. Certainly, this is just one way that Plaintiff may establish a "legal right" to obtain documents. "Under this principle of broad construction, 'discovery can be sought from one corporation regarding materials that are in the physical possession of another, affiliated corporation'" and, as such "'[c]ourts have found control by a parent corporation over documents held by its subsidiary, by a subsidiary corporation over documents held by its parent, and by one sister corporation over documents held by another sister corporation.'" *In re Sergeeva*, 13-CV-03437, 2013 WL 12169388, at *8 (N.D. Ga. Nov. 22, 2013), *objections overruled*, 13-CV-3437, 2015 WL 12866970 (N.D. Ga. Feb. 6, 2015) (internal citations omitted). Defendant cannot in good faith argue that CI Fuels—a subsidiary of SAS led by Mr. Ochoa as its CEO—has no control over documents held by its parent SAS, whose *single* member and CEO is also Mr. Ochoa. [ECF No. 108-2 at 3].

In any case, the *Costa* factors are also clearly met. As to the first factor, with respect to the corporate structure of CI Fuels and SAS, Mr. Ochoa is the *sole* controlling individual. That is, he is the "*sole manager* of [CI Fuels] and its affiliate entity [SAS]" and is "*the only person with authority to take or respond to legal authority* on behalf of [CI Fuels] and its affiliate entity [SAS]." [Ochoa's declaration, ECF No. 26-2 at 1]. When asked to "identify all officers, directors,

14

managers, members, or shareholders of each of [CI Fuels] and [SAS]," Mr. Ochoa is listed as CEO of SAS and CEO and Shareholder of CI Fuels. [CI Fuels's First Response to Peninsula's RFP, ECF No. 108-2 at 3]. This declaration and Defendant's discovery response contradict Defendant's argument that SAS is "governed by a board of directors." [ECF No. 106 at 11]. Indeed, as established in *Costa*, "Control" can exist when a party and related non-party affiliate are owned by the same person. 277 F.R.D. at 472 (citing *Steele Software,* 237 F.R.D. at 564).

With respect to the second factor, SAS's connection to the transaction at issue in this litigation is evident. According to the Complaint, the two signatories to the agreements at issue were CI Fuels and Peninsula. [ECF No. 1 at 4]. A guarantee was issued by SAS for CI Fuels's "timely payment and performance." [*Id.*]. Mr. Ochoa's declaration further states that "[t]he assets securing [CI Fuels] under the Master Agreement are in Colombia. The petroleum products purchased under the Master Agreement were shipped from Ireland to Santa Marta, Colombia. In turn, the product was sold in Colombia to fuel vessels docked in Santa Marta." [ECF No. 107-1 at 3]. Thus, SAS, as the parent company based in Colombia and guarantor of CI Fuels, is directly connected to the transaction at issue. "The only contract that [CI Fuels] is or ever has been a party to is the <u>contract which is the subject of this dispute</u>." [ECF No. 106 at 2] (emphasis added).

With respect to the third factor—the degree to which SAS benefits from the outcome of this litigation—it is clear that CI Fuels's obligation to pay (or not) under the contract at issue implicates SAS as guarantor of the agreements. SAS clearly "has a direct financial interest in the outcome of the litigation." *Costa*, 277 F.R.D. at 473.

Therefore, the Court finds that Plaintiff has sufficiently demonstrated that Defendant has "control" over the requested documents pursuant to Fed R. Civ. P. 34(a) and this circuit's case law. *See Cooper Indus. v. British Aerospace Corp.*, 102 F.R.D. 918, 919 (S.D.N.Y. 1984) (finding

it was "inconceivable" that subsidiary lacked control over parent's materials relevant to its business of marketing and servicing parent's aircraft). "A corporation could not avoid producing responsive documents simply by claiming that they belonged to a separate, albeit affiliated corporation." *Carter v. City of Montgomery, Ala.*, No. 2:15-CV-555 (RCL), 2019 WL 2110519, at *2 (M.D. Ala. May 14, 2019).

    B.  *Contempt Sanctions*

Peninsula's Motion seeks an award of contempt and payment of attorneys' fees and expenses. [ECF No. 104 at 14]. As previously noted, a magistrate judge's limited contempt powers are set forth in 28 U.S.C. § 636(e). This is not a civil consent case or a misdemeanor case, and no act of contempt was committed in the presence of the undersigned. As such, this Report and Recommendation on the Motion for Sanctions is issued, certifying facts for the District Judge's consideration. *See e.g.*, *Puck v. Silverman*, 1:22-CV-24078-KMM, 2023 WL 6973587, at *3 (S.D. Fla. Aug. 21, 2023) (certifying facts for the district judge to consider in holding party in contempt pursuant to 28 U.S.C. § 636(e)(6)(B)); *Van De Velde NV v. Felder*, 15-24096-CIV, 2017 WL 8895345, at *2 (S.D. Fla. May 25, 2017), *report and recommendation adopted*, 15-24096-CIV, 2017 WL 8895340 (S.D. Fla. June 16, 2017) (same); *Wyndham Vacation Ownership, Inc. v. Clapp Bus. Law, LLC*, 19-cv-00756, 2020 WL 3266217, at *3 (M.D. Fla. Feb. 10, 2020), *report and recommendation adopted*, 19-cv-00756, 2020 WL 3266105 (M.D. Fla. Feb. 28, 2020) (same).

CI Fuels failed to comply with a lawful order of this Court requiring it to produce documents by November 30, 2023. Defendant admits to its violations in its response brief: "[CI Fuels] has continued to supplement production under rule 26 as it received documents. In fact, it supplemented production on March 11, 2024." [ECF No. 106 at 4]; "[As to First RFP No. 18,] [i]t is true that some production for the BCP was provided in March of 2024." [*Id.* at 14].

At the second discovery hearing, the undersigned warned Defendant's counsel that if Mr. Ochoa, the sole manager of CI Fuels, "doesn't turn over these documents and months are passing, he is in a situation where he is now going to be facing contempt in the United States courts." [October 18, 2023 Discovery Hearing Tr. 10:9–12, ECF No. 108-1 at 5]. Despite the passage of more than six months from the date of that hearing, deficiencies persist. *See Scipione v. Advance Stores Co.*, 294 F.R.D. 659, 665 (M.D. Fla. 2013) (Defendant's withholding of responsive documents despite repeated requests constituted a "clear abuse of the discovery process and warrants appropriate sanctions."). And while the Court appreciates that Defendant has "produced **every** document made available to it[,]" that does not justify its repeated failure to abide by the Discovery Orders. [ECF No. 106 at 6]. At a minimum, Defendant could have sought extensions to the Court's deadlines. It failed to do so, expending attorneys' fees and judicial resources.

For a party to be held in civil contempt for failure to comply with a court order, the party seeking contempt must establish: "(1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous, and (3) the alleged violator could comply with the order." *United States v. Mayer*, No. 20-10231, 2022 WL 203338, at *1 (11th Cir. Jan. 24, 2022) (quoting *Ga. Power Co. v. N.L.R.B.*, 484 F.3d 1288, 1291 (11th Cir. 2007)). The movant must establish the alleged contumacy by clear and convincing evidence. [*Id.*]. "[T]he focus of the court's inquiry in civil contempt proceedings is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990). "The duty of the magistrate judge under this subsection is simply to investigate whether further contempt proceedings are warranted, not to issue a contempt order." *Puck*, 2023 WL 6973587, at *3 (quoting *Lapinski*, 2018 WL 4381168, at *2 (alterations omitted)). "The determination of whether a

litigant's actions warrant the issuance of contempt sanctions is ultimately left to the discretion of the district court." [*Id.*].

The Court's July 26, 2023, and October 30, 2023, Discovery Orders were valid and lawful. Each was entered following two discovery hearings, in which the parties were provided an opportunity to address the deficiencies (or, in Defendant's view, lack thereof) associated with Plaintiff's discovery requests. The orders were clear and unambiguous, identifying the RFPs for which Defendant was ordered to amend responses and later produce documents for by the stated deadline of November 30, 2023. Defendant was, and continues to be, in a position to comply with the Discovery Orders, as has been established in this Report assessing Defendant's "control" over the subject documents pursuant to Rule 34(a). In essence, CI Fuels has "manufactured its own inability to comply with this Court's [Discovery Orders]." *In re Gonzalez*, 20-MC-24628, 2022 WL 17583628, at *6 (S.D. Fla. Aug. 8, 2022), *report and recommendation adopted*, 1:20-MC-24628, 2023 WL 1863661 (S.D. Fla. Feb. 8, 2023), and *appeal dismissed sub nom. Gonzalez v. Verfruco Foods, Inc.*, 23-13704, 2023 WL 8623437 (11th Cir. Dec. 13, 2023), and *appeal dismissed sub nom. Gonzalez v. Verfruco Foods, Inc.*, 23-13704, 2023 WL 8623437 (11th Cir. Dec. 13, 2023). A party's "creation of a situation in which it contends it cannot feasibly comply with this Court's discovery orders is not a basis for relief from this Court's orders." [*Id.*].

Upon a finding of civil contempt pursuant to Rule 37, the Court's options include: "a coercive daily fine, a compensatory fine, attorney's fees and expenses .. . , and coercive incarceration." *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1304 (11th Cir. 1991) (citing cases). Regarding the possibility of daily fines, "civil contempt fines can take the form of per diem fines imposed for each day a contemnor fails to comply with an affirmative court order, or of fixed fines imposed and suspended pending future compliance." *Friedman v. Schiano*, No.

16-cv-81975, 2017 WL 11487873, at *2, 2017 U.S. Dist. LEXIS 226819, at *6 (S.D. Fla. Mar. 21, 2017). Relevant to an appropriate fine is Defendant's financial circumstances. *United States v. Hines*, 8:18-MC-83-T-36CPT, 2020 WL 7407105, at *5 (M.D. Fla. June 29, 2020), *report and recommendation adopted*, 8:18-MC-83-T-36CPT, 2020 WL 7398633 (M.D. Fla. Dec. 17, 2020). *See also Matter of Trinity Indus., Inc.*, 876 F.2d 1485, 1493-94 (11th Cir. 1989) (taking into account company's "financial resources" in assessing the propriety of a per diem fine imposed by the district court); *City of New York v. Golden Feather Smoke Shop, Inc.*, 2010 WL 2653369, at *21 (E.D.N.Y. June 25, 2010) (granting motion for contempt but deferring on sanctions because the "appropriate level of sanctions" had not been adequately addressed).

At this juncture, the undersigned lacks sufficient information to make a knowledgeable recommendation regarding the daily fine that the District Judge should impose due to Plaintiff's failure to address the issue in its Motion. As such, the undersigned recommends that the District Judge instruct Plaintiff to identify an appropriate fine in a supplemental brief or at a contempt hearing for the Court's consideration.

C. *Attorneys' Fees*

The Court now turns to Plaintiff's requested attorneys' fees, totaling $44,542.00. Without question, Defendant's non-production of documents has increased attorneys' fees. Thus, the sanction of payment of attorneys' fees and costs is certainly warranted. However, the parties must first comply with Southern District of Florida Local Rule 7.3's requirements for litigants prior to filing a motion seeking attorneys' fees. *See Lawrence v. MS & RE Kesef Corp.*, 11-22122-CIV, 2013 WL 12246355, at *8 (S.D. Fla. Feb. 5, 2013), *report and recommendation adopted*, 11-22122-CIV, 2013 WL 12246363 (S.D. Fla. Feb. 26, 2013) (enforcing Local Rule 7.3 before granting attorneys' fees). If, upon the District Court's order affirming this Report as to attorneys'

fees, and after a good faith effort to resolve the Motion pursuant to Local Rule 7.3(b), the parties reach an impasse, Plaintiff may file its Motion for Attorneys' Fees, applying the lodestar method.[3]

## **CONCLUSION**

For the foregoing reasons it is **RECOMMENDED** that Plaintiff Peninsula Petroleum Limited's Motion for Sanctions against Defendant CI International Fuels LLC [ECF No. 104] be **GRANTED** as follow:

Pursuant to 28 U.S.C. § 636(e)(6)(B), the undersigned recommends that the District Judge enter an order setting a hearing, at which Defendant must appear and show cause as to why it should not be adjudged in contempt by reason of the facts certified herein;

If the Court finds Defendant in contempt, the Court should order it to pay reasonable attorneys' fees and costs incurred by Plaintiff as a result of Defendant's failure to comply with the undersigned's July 26, 2023, and October 30, 2023, Discovery Orders, after the parties comply with Southern District of Florida Local Rule 7.3; and

The Court impose a per diem fine for every day of noncompliance by the Defendant, which may be decided upon a supplemental briefing on Defendant's financial circumstances or upon the parties' arguments before the District Judge at the evidentiary hearing.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's

---

[3] While "the Eleventh Circuit has not required a Lodestar analysis when an award of attorney's fees is ordered as a sanction[,]" the undersigned finds it necessary to consider the attorneys' experience and analyze similar fees granted in other cases in this district. *See Vizenor v. LMP Motors.com, LLC,* 18-61416-CIV, 2019 WL 13255524, at *2 (S.D. Fla. Feb. 21, 2019) (quoting *McDonald v. Cooper Tire & Rubber Co.,* No. 801CV1306T27TGW, 2005 WL 3372855, at *2 (M.D. Fla. Dec. 12, 2005)).

"right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

      **SIGNED** this 17th day of May, 2024.

                                          LISETTE M. REID
                                          UNITED STATES MAGISTRATE JUDGE

cc:    **U.S. District Judge Roy K. Altman**; **and**

       **All Counsel of Record**