**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No.: 22-cv-20712-RKA-LMR

PENINSULA PETROLEUM LIMITED,

        Plaintiff,

v.

CI INTERNATIONAL FUELS LLC,

        Defendant.

_____/

### PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS TO
### REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SANCTIONS

Plaintiff Peninsula Petroleum Limited ("Peninsula"), pursuant to Federal Rule of Civil Procedure ("FRCP") 72(a) and 28 U.S.C. § 636(b)(1), respectfully submits this Response to Defendant CI International Fuels, LLC's ("CI") Objections, [Dkt. 116], to Magistrate Judge Lisette M. Reid's Report and Recommendations on Plaintiff's Motion for Sanctions ("R&R"), [Dkt. 114]. Peninsula requests that this Court adopt the R&R.

### PRELIMINARY STATEMENT

Peninsula and CI have now been engaged in discovery for over one year. The instant dispute follows from CI's numerous, obvious, and continued failures to adequately make document production in response to two sets of requests for production issued by Peninsula in April 2023, in direct violation of two discovery orders entered by Magistrate Judge Reid in July and October 2023.

Peninsula's first requests for production are directed to jurisdictional discovery. CI has never objected to its *obligation* to produce documents responsive to these requests. Instead, CI concedes it is the sufficiency of its production which is in dispute. Magistrate Judge Reid

confirmed that CI failed to adequately respond to certain document requests from the first set of jurisdictional discovery requests. [R&R: Dkt. 114, at 5-8], and CI's Objection does not validly contest this finding.

With respect to Peninsula's second requests, CI does not contend that its production was sufficient, only that CI was not obligated to produce anything responsive to those requests in the first place because: (i) the parties were not permitted to engage in merits-based discovery; and (ii) it purportedly does not have possession, custody, or control over certain requested documents belonging to its affiliate company. Accordingly, CI insists that the discovery orders were invalid and unlawful insofar as they compelled CI to nonetheless produce those documents.

It is imperative to understand at the outset that despite CI now claiming that the discovery orders were unlawful and invalid, *CI has never filed an objection to either of the discovery orders.* Instead, CI now seeks to make assertions which it was obligated to raise before this Court, both in July of 2023 and October 2023, following the issuance of each discovery order. CI has waived its right to raise these issues.

It is also important to keep in mind that while the remainder of this Response focuses on addressing CI's Objection regarding Peninsula's *second* requests for production, CI does not raise any objection to Magistrate Judge Reid's factual findings regarding its failures to respond to the *first* requests for production (in violation of both the July 2023 and October 2023 orders), and on that basis alone, sanctions are warranted, CI and its counsel should be held in civil contempt, and fees should be awarded.

## STANDARD OF REVIEW

If a party timely objects to a magistrate judge's report and recommendation, then "[a] judge of the court shall make a de novo determination of those portions of the report or specified

proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *Rivera v. Marin R, et al*., No. 23-CV-62034, 2024 WL 2931030, at *2 (S.D. Fla. June 11, 2024) (*quoting United States v. Tardon*, 493 F. Supp. 3d 1188, 1209 (S.D. Fla. 2020)). If a portion of the report and recommendation is not objected to, then that portion should only be reviewed for clear error. *Id.*

## STATEMENT OF FACTS

This is a collection action by Peninsula, a foreign entity, to recover a debt in excess of $1.5 million owed by CI, a Florida LLC in the business of buying and selling marine fuel, for unpaid marine fuel. [R&R: Dkt. 114, at 1.] In its Amended Verified Complaint, Peninsula asserted claims for breach of contract, enforcement of a security interest, and under the Florida Uniform Fraudulent Transfer Act. [*Id.* at 1.]

On March 13, 2023, CI filed a Renewed Motion to Dismiss asserting lack of subject matter jurisdiction based, in part, on CI's contention that there is no diversity jurisdiction because neither of its two members, Jaime Ochoa nor Maria Roa, are domiciled in the United States ("Motion to Dismiss") [Dkt. 69.] Peninsula filed its Opposition to CI's Motion to Dismiss on April 5, 2023. [Opposition to Motion to Dismiss: Dkt. 70.] CI is quick to highlight Peninsula's request in its Opposition for "leave to conduct jurisdictional discovery" and asserts that this request alone effectually limited Peninsula to receive *only* jurisdictional discovery throughout the course of discovery proceedings. [Opposition: Dkt. 116, at 1-2.]

However, as discussed below, the parties later *agreed* in two separate joint motions that they would continue to engage in jurisdictional *and* merits-based discovery [Dkt. 72; 83.]

Furthermore, this Court did not rule on CI's Motion to Dismiss – which it denied– until a little over a year after Peninsula filed its Opposition. CI cannot in good faith claim that Peninsula's right to discovery was limited by a request which the Court did not rule on until *after* Peninsula's Motion for Sanctions was fully briefed [Order Denying Motion to Dismiss: Dkt. 113.]

On April 19, 2023, Peninsula served its first requests for production (the "<u>First Requests</u>"), which are directed to the diversity issue. [First Requests: Dkt. 104-1.] On April 26, 2023, Peninsula served its second requests for production, which are mainly directed to the merits-based issues, including Peninsula's UFTA claim, but also address jurisdiction (the "<u>Second Requests</u>"). [Second Requests: Dkt. 104-2.] On May 5, 2023, before responses to Peninsula's discovery requests were due, Peninsula and CI filed their Joint Motion to Extend Discovery Deadline (the "<u>First Joint Motion</u>") [Dkt. 72], requesting an extension to complete "all discovery" in this matter, "*both jurisdictional and merits-based*." [First Joint Motion: Dkt. 72, at 1.] The Court granted the First Joint Motion, requiring that "all discovery" be completed by July 14, 2023, (the "<u>First Scheduling Order</u>"). [Dkt. 73.]

On June 6, 2023, CI produced merely 351 pages of production in response to Peninsula's 43 combined document requests. [Motion for Sanctions: Dkt. 104, at 2.] Significantly, in its responses (and contrary to its present assertions), CI did not object to merits-based production of documents on the basis of the First Scheduling Order during the pendency of its Motion to Dismiss. [Responses to First Requests: Dkt. 104-3; Responses to Second Requests:104-4.][1]

On June 28, 2023, CI filed Objections to Subpoenas Noticed on June 13, 2023, and Memorandum of Law in Support of Motion to Quash ("<u>Motion to Quash</u>"). [Dkt. 82.] The motion

---

[1] Rather, with respect to Second Requests Nos. 3, 4, 5, 10, 11, 12, 13, and 14, CI claimed that responsive documents "are being produced," and that documents responsive to Second Requests Nos. 6, 7, 8, and 9 "have been produced." [Motion for Sanctions: Dkt. 104-4, at 4-8.]

was aimed to quash subpoenas by Peninsula directed to third party banks. CI argued, in part, that the Court should quash the subpoenas because "[i]t would be unfair to permit Peninsula to obtain extensive and sensitive financial information under the federal rules where the Court lacks jurisdiction over the action." [Motion to Quash: Dkt. 82, at 7.][2]

On July 3, 2023, the parties filed their second Joint Motion (the "Second Joint Motion"), [Dkt. 83], seeking an order: (i) affording the parties "a new fact discovery deadline"; and (ii) holding "all *other* dates on the [First Scheduling Order] in abeyance until such time as the jurisdictional discovery issue is decided." [Second Joint Motion: Dkt. 83, at 1] (*emphasis added*). Clearly, the Second Joint Motion did not seek to alter the scope of discovery that had been addressed in the First Joint Motion, only to extend the fact discovery deadline and stay other, administrative deadlines. [First Scheduling Order: Dkt. 73.] Further, the Second Joint Motion stated that both parties expected that there would be "full and complete document production" by July 31, 2023, supporting that the parties did not intend to stay the discovery deadlines previously set by the First Scheduling Order (which included those for merits-based discovery). [Second Joint Motion: Dkt. 83, at 1.]

That same day, on July 3, 2023, Judge Altman issued a second scheduling order (the "Second Scheduling Order"), providing:

> This case shall be CLOSED for administrative purposes pending our resolution of the Motion to Dismiss for Lack of Subject Matter Jurisdiction [ECF No. 69]. In the meantime, all case deadlines are STAYED except for any deadlines Magistrate Judge Reid sets (or has already set) in regards to the parties' discovery issues. The parties may *continue* to engage in discovery, *consistent with Magistrate Judge Reid's orders*, while we resolve the pending MTD. [Dkt. 83.] (*emphasis added*).

---

[2] As discussed below, the Motion to Quash was denied on September 12, 2023. [Dkt. 96.]

On July 26, 2023, there was a discovery hearing before Magistrate Judge Reid (the "<u>First Discovery Hearing</u>") to discuss deficiencies in CI's earlier production and responses. [R&R: Dkt. 114, at 4.] The resulting discovery order, entered July 26, 2023 (the "<u>First Discovery Order</u>"), [Dkt. 91], required CI to amend its responses and supplement production with respect to various requests in Peninsula's First Requests, and "granted CI[] leave to file written objections as to [Peninsula's] Second RFP within 14 days of the order" pursuant to FRCP 72(a). [R&R: Dkt. 114.]

On August 2, 2023, CI produced only an additional 35 pages of documents in response to both sets of requests. [R&R: Dkt. 114, at 4.] CI's only objection to merits-based discovery came in the form of a single objection to a single request, Second Request No.11, that "Defendant's Motion to Dismiss for lack of jurisdiction remains pending and if granted, is dispositive of the Plaintiff's entitlement to further production." [Amended Responses to Second Requests: Dkt. 104-7, at 7.][3] <u>CI failed to file written objections to the First Discovery Order by the August 9, 2023, deadline</u>.

On August 30, 2023, counsel for the parties met and conferred. CI indicated that its objection to a single document request in its August 2, 2023, Amended Responses justified it withholding production of merits-based production,[4] in spite of: (i) the plain terms of the First and Second Scheduling Orders; (ii) the First Discovery Order; and (iii) in spite of its failure to properly object on this basis before the Court.

---

[3] In fact, CI continued to represent that documents responsive to Peninsula's merits-based requests were to be produced, [Amended Responses to Second Requests: Dkt. 104-7, at 4], had been produced, [*Id.* at 5], or were produced concurrently with its responses, [*Id.* at 8].

[4] Counsel for Peninsula confirmed his understanding of the parties' positions via email, and counsel for CI did not object to the confirmation: "Finally, you indicated you would not be producing any additional documents in response to our Second Request for Production based on your position that your motion to dismiss, if granted 'is dispositive of the Plaintiff's entitlement to further production.' I indicated that we disagree with your position, and instead we read Judge Altman's order administratively closing the matter (Dkt. 84) to allow all discovery to proceed "consistent with Magistrate Judge Reid's orders. In light of [] our disagreement about our Second Request for Production . . . we are reaching out to Magistrate Judge Reid this week to request a hearing . . ."  [Meet and Confer Recap Email: Dkt. 104-9.]

On September 12, 2023, Magistrate Judge Reid denied CI's Motion to Quash (the "9-12-2023 Order"). [Dkt. 96.] In her Order, she declined to rule on CI's jurisdictional arguments, but noted that "[i]mportantly, as previously mentioned, the parties were permitted to continue engaging in discovery while the Motion to Dismiss is pending." [Order Denying Motion to Quash: Dkt. 96, at 6.]

On October 5, 2023, *three months* after the issuance of the Second Scheduling Order, and *two months* after entry of the First Discovery Order, CI filed a Motion for Protective Order to Stay Discovery and Incorporated Memorandum of Law ("Motion for Protective Order"). [Dkt. 99.] CI "conceded that [Peninsula] is entitled to jurisdictional discovery but contends that [Peninsula] should not be entitled to further merits-based discovery pending the outcome of [CI's] motion to dismiss. . ." [Motion for Protective Order: Dkt. 99, at 1.] Accordingly, CI asked this Court to "enter a protective order staying all discovery (except jurisdictional discovery) until after the Court rules on Defendant's motion to dismiss." [*Id.* at 2.] In asserting that CI should not be entitled to "further" merits discovery, CI conceded that Peninsula has already been entitled to merits discovery.

Before Peninsula filed its Response, Judge Altman issued an Order denying the Motion for Protective Order (the "10-13-2023 Order"). The Order reads:

> the Defendant has failed to establish that a stay is warranted. The Defendant ***urges us to stay merits discovery*** because "[r]esolution of [its] pending motion to dismiss, which raises a substantial challenge to the Court's subject matter jurisdiction, should obviate the need for any additional discovery in this case." . . . Because there "appears to be a genuine dispute" at the heart of the Renewed Motion to Dismiss, "***it is proper for the Court to permit discovery to proceed***." [Dkt. 100.]

On October 18, 2023, a second discovery hearing was held before Magistrate Judge Reid (the "Second Discovery Hearing"). There, counsel for Peninsula reasserted its position that the Second Scheduling Order permits merits-based discovery, and that this was further confirmed by

denial of both CI's Motion to Quash and its Motion for Protective Order.[5] Counsel for CI attempted to raise various objections to further production, to which Magistrate Judge Reid responded "I think the problem we have, Ms. Dilican, is raising any of these other objections would be untimely. At this point all I could do is enter this order compelling production of documents that are within the care, custody and control of the Defendants." [Second Discovery Hearing Transcript: Dkt. 103, 12:13-17.]

On October 30, 2023, Magistrate Judge Reid ordered CI to produce documents responsive to First Request Nos. 18 and 28 *and* Second Request Nos. 1 and 8-11 by November 30, 2023, or face sanctions in the form of attorneys' fees as incurred by Plaintiff, and potentially, contempt proceedings (the "Second Discovery Order"). [R&R: Dkt. 114, at 4-5.]

On November 30, 2023, CI submitted its third amended responses to the First Requests and its second amended responses to the Second Requests. [Third Amended Responses to First Requests: Dkt. 104-11; Second Amended Responses to Second Requests:104-12.] CI's supplemental production was grossly inadequate [Motion for Sanctions: Dkt. 104, at 10-13]. Then, on March 11, 2024, an hour before counsel were set to meet and confer regarding Peninsula's Motion for Sanctions, CI produced an additional 218 pages of documents. [*Id.* at 13.] Production of such additional documents three months after the November 30, 2023, deadline set forth in the

---

[5] "And number two, is with respect to the second RFP, Your Honor had denied a motion to quash a few weeks back, which essentially I don't want to put words in the Court's mouth, but what I took away from that order was that Judge Altman had permitted discovery to proceed. And that inference on my part was ruled definitively by Judge Altman just a few days ago in denying the motion for protective order. Now that I mentioned that because again it goes directly to the documents we seek with respect to our second request for production, which was originally served on April 26th. has been literally six months for my opposing counsel to get the assurances from both a Magistrate Judge and now a District Court Judge to the effect that what Judge Altman ordered ten months ago is what Judge Altman ordered. So you might appreciate that, you know, my client's patience is wearing thin. And I have never encountered an experience where an adversary can simply misapprehend or purport to misapprehend a District Court Judge's ruling and delay discovery for six to eight or nine months only to have that District Court Judge rule again what he previously ruled and having made no progress whatsoever." [Second Discovery Hearing Transcript: Dkt. 103, 4:9-5:6.]

Second Discovery Order further affirmed that CI's November 30, 2023, production was not, in fact, not complete. [R&R: Dkt. 114, at 6-7.]

On March 12, 2024, Peninsula filed its Motion for Sanctions. The Motion has been fully briefed as of April 2, 2024. [Motion for Sanctions: Dkt. 104; Opposition thereto: Dkt. 106; Reply: Dkt.108.] Then, on April 16, 2024, there was a status conference before Judge Altman to discuss remaining subject matter jurisdiction issues (the "Status Conference"). [Notice of Hearing: Dkt. 109; Minute Entry of Proceedings: Dkt. 112.] The following day, on April 17, 2024, Judge Altman denied CI's Motion to Dismiss without prejudice (the "4-17-2024 Order"). [Dkt. 113.]

## DISCUSSION

**I.**    **Magistrate Judge Reid did not fail to consider relevant facts in her certification of facts, because CI has waived objections to the lawfulness and validity of the Discovery Orders, and thus any purported "newly discovered evidence" cannot be considered.**

CI wrongly contends that Magistrate Judge Reid "erred by failing to include and consider relevant material facts in the certification of facts in support of the recommendation to issue a show cause order." [Objection: Dkt. 116, at 1.] Specifically, CI argues that the Discovery Orders were unlawful, and that the invalidity of those orders was only recently confirmed by way of "newly discovered evidence", namely, the Status Conference hearing transcript, [Dkt. 118], and the 4-17-2024 Order denying CI's Motion to Dismiss. [Dkt. 113.]

In short, CI incredibly claims to believe that the First and Second Scheduling Orders were ambiguous, and that such ambiguity resulted in CI being subject to invalid and unlawful Discovery Orders. However, CI failed to file any objections to either of the Discovery Orders, and failed to file a motion with the District Court for clarification of the Scheduling Orders. In fact, CI continued to engage in discovery for ***11 months*** from the issuance of the Second Scheduling Order – producing merits discovery – only to now call into question the validity of the Discovery Orders.

It is clear that even if CI had not waived its right to raise these objections when it failed to file objections to either of the Discovery Orders, CI's argument would fail on the merits. The First and Second Scheduling Orders did not limit the parties to engaging only in jurisdictional discovery, and that merits-based discovery was allowed to proceed is further supported by Magistrate Judge Reid's denial of CI's Motion to Quash, and Judge Altman's denial of CI's Motion for Protective Order.

**(a) CI failed to timely object to the Discovery Orders in accordance with FRCP 72(a) and accordingly, "may not assign as error a defect in the order not timely objected to."**

CI claims that "the Magistrate erred in overruling [its] valid objections to merits-based discovery." [Objection: Dkt. 116, at 5. ] <u>But CI never filed any objections to the Discovery Orders with the Court.</u>  The Federal Rules of Civil Procedure are clear that when a magistrate judge issues a non-dispositive order:

> [a] party may serve and file objections to the order within 14 days after  being served with a copy. ***A party may not assign as error a defect in the order not timely objected to***. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a).

Magistrate Judge Reid effectively relied on this rule when she entered her First Discovery Order, in response to CI claiming it should not have to produce merits discovery (despite the terms of the First and Second Scheduling Orders). Significantly, CI did not file any objections to either of her Discovery Orders. In fact, the First Discovery Order expressly permitted CI to "*file*"[6] its written objections within 14 days and still, CI did not.[7] Thus, at the Second Discovery Hearing in

---

[6] "Defendant may file a written objection as to Plaintiff's Second Request for Production Nos. 1, and 8 through 11. Defendant may file a written objection as to plaintiff's Second Request for Production within 14 days. Plaintiff then has seven days to file a response." [First Discovery Order: Dkt. 91.]
[7] Despite the clear language of FRCP 72(a) and the First Discovery Order permitting a party to "file" objections, counsel for CI claims at the Second Discovery Hearing that "It was my understanding that I was permitted just to serve the written responses and not to file them, Your Honor." [Second Discovery Hearing Transcript: Dkt. 103, 5:19-21.]

October of 2023, CI's various objections were overruled *not* due to the substance of CI's objections or any misunderstanding on the part of Magistrate Judge Reid, but because those objections were *untimely*. Magistrate Judge Reid clearly expressed this reasoning when she said:

> I think the problem we have, Ms. Dilican, is raising any of these other objections would be untimely. At this point all I could do is enter this order compelling production of documents that are within the care, custody and control of the Defendants. [Second Discovery Hearing Transcript: Dkt. 103, 12:13-17.]

Accordingly, because the purported new "evidence" put forth is a concoction which is belied by the record, put forth only to undermine the lawfulness and validity of the Discovery Orders – an issue which CI waived when it failed to timely object to the orders – Magistrate Judge Reid did not err in any respect.

In any event, neither the Status Conference hearing transcript, [Dkt. 118], nor the 4-17-2024 Order denying CI's Motion to Dismiss, [Dkt. 113], bear on the scope of discovery allowed in the Court's First and Second Scheduling Orders. In referring to jurisdictional discovery at the Status Conference, the Court was referring to discovery that was pertinent to the issue before it: subject matter jurisdiction. Nothing was said that could fairly be construed as precluding merits discovery, or overruling the Court's prior orders.

**(b) CI failed to seek timely clarification from the District Court regarding the scope of the First or Second Scheduling Orders.**

CI erroneously argues that the ambiguity in the Court's First and Second Scheduling Orders caused the Magistrate Judge to misapprehend them, and accordingly issue the two invalid Discovery Orders requiring CI to produce merits-based discovery. Further, CI claims that after 11 months from the issuance of the Second Scheduling Order, there is finally "evidence" clarifying the scope of that Order, and that the Magistrate Judge erred in not considering that information. The facts and the law are to the contrary.

FRCP 60 provides a mechanism by which parties can seek clarification from the court, or request the court to rectify a clerical error. It is entirely inexplicable why, if CI truly believed the Scheduling Orders were ambiguous or that there was a clerical error resulting in the accidental omission of the word "jurisdictional," in the Second Scheduling Order, CI did not at any point in the last 11 months simply seek clarification from the Court. Moreover, the fact that CI did not claim any such ambiguity or error in its Motion for Protective Order is an admission against interest.

   (c) **The scope of the First and Second Scheduling Orders and the validity and lawfulness of the Discovery Orders are not at issue before this Court. Nonetheless, it is clear that the Order unambiguously permitted the parties "to *continue*" to engage in both jurisdictional and merits-based discovery, and this interpretation is supported by subsequent orders of the Court.**

The question before the Court is a limited one, whether Magistrate Judge Reid erred by failing to include and consider the Status Conference hearing transcript and the 4-17-2024 Order denying CI's Motion to Dismiss in her certification of facts. For the reasons above, the answer is a resounding no.

Notwithstanding the limited scope of its Objection, CI makes a last-ditch attempt to attack the validity and lawfulness of the Discovery Orders on the basis that the Orders require CI to engage in impermissible merits-based discovery in contravention of the First and Second Scheduling Orders. While CI has repeatedly waived such objections, CI's mischaracterization of the facts and allegations of "misrepresentations" by Peninsula must be addressed.

The context in which the Second Scheduling Order was entered undoubtedly supports Magistrate Judge Reid's interpretation thereof, that merits-based discovery is permissible. At the time the Second Scheduling Order was entered, Peninsula had already served both its jurisdictional *and* merits-based requests for production [First Requests: Dkt. 104-1; Second Requests: 104-2],

and CI had responded to both requests <u>without objection</u> to merits-based production, notwithstanding its pending motion to dismiss [Response to First Requests: Dkt. 104-3; Response to Second Requests: 104-4.]

Further, neither the First nor Second Joint Motions included any request to stay merits-based discovery [First Joint Motion: Dkt.72; Second Joint Motion: Dkt. 83.] Rather, the First Joint Motion expressly provided for completion of "both jurisdictional and merits-based" discovery by July 14, 2023, and the Second Joint Motion merely requested an extension of that fact discovery deadline to August 14, 2023. It is also clear that the parties contemplated completion of *all* fact discovery, both jurisdictional and merits-based, by the August deadline, because the parties stated in their Second Joint Motion that there would be "full and complete" production by the end of July. The <u>only</u> deadlines which the parties requested be stayed were those administrative deadlines outlined in the First Scheduling Order, which do *not* include discovery deadlines since the parties requested all deadlines "other" than those for fact discovery be stayed. [Second Joint Motion: Dkt. 83.]

The clearness of the record is buttressed by Magistrate Judge Reid's denial of CI's Motion to Quash. [Order Denying Motion to Quash: Dkt. 96.] While Magistrate Judge Reid declined to rule on the question of the Court's subject matter jurisdiction, she did highlight that the parties were permitted "to continue engaging in discovery while the Motion to Dismiss is pending." [*Id.* at 6.]

That merits-based discovery had been permitted was affirmed when Judge Altman denied CI's Motion for Protective Order in his October 13, 2023, Order (the "<u>10-13-23 Order</u>"). [Dkt. 100.] In its Motion, CI argued that Peninsula "should not be entitled to **further** merits-based discovery" [Motion for Protective Order: Dkt. 99, at 1], and asked this Court to stay all discovery,

except for jurisdictional discovery, until the Court ruled on its Motion to Dismiss. [*Id.* at 2.] **Implicit in CI's request was CI's concession that as of the time of that motion, Peninsula was entitled to merits-based discovery**. Likewise, implicit in the 10-13-23 Order was the fact that, as of the time of that motion, Peninsula was entitled to merits-based discovery.

CI now points to the Status Conference hearing transcript and the 4-17-2024 Order as conclusive evidence that Judge Altman had *only* permitted jurisdictional discovery in his First and Second Scheduling Orders.[8] The Status Conference was called for the purpose of discussing CI's pending Motion to Dismiss, which alleges lack of subject matter jurisdiction. It follows, then, that jurisdictional, not merits-based, discovery would be relevant to that conversation. Indeed, Judge Altman noted that "[o]ver the past year, then, the parties have been engaged in jurisdictional discovery, which I allowed having been sensitive to the plaintiff's requests." [Order Denying Motion to Dismiss: Dkt. 113.]

This sole statement forms the basis for CI's assertion that Judge Altman "clarifyied [sic] and affirmed the correctness of LLC's position that the Court's July 3, 2023, Order solely authorized jurisdictional discovery," [Objection: Dkt. 116, at 4,] and that the 4-17-2024 Order supports its position because it acknowledges "[t]he parties have been engaged in jurisdictional discovery for about a year." [Order Denying Motion to Dismiss: Dkt. 113.] Not only does it require a considerable leap in logic to conclude that because the parties *have been* engaged in jurisdictional discovery for a year, the parties must have *only been permitted* to engage in jurisdictional discovery for a year, but that interpretation is completely at odds with Judge Altman's 10-3-2023 Order denying CI's Motion for Protective Order, which expressly declined to stay merits-based discovery. [Dkt. 100.]

---

[8] Note that CI entirely fails to cite to any record evidence when discussing this "newly discovered evidence." [Objection: Dkt. 116, at 4.]

**II.**   **The Magistrate Judge did not err in concluding that CI has a legal right to and control over an affiliate's documents because: (i) CI did not timely object to the Discovery Orders ordering production of those documents; (ii) the case law supports CI's clear legal right to document's in its affiliate's possession; and (iii) Mr. Ochoa is the sole controlling member of both CI and its affiliate entity.**

Peninsula's Second Requests seek, in part, documents belonging to CI's affiliate company, C.I. International Fuels, SAS ("SAS"), on the basis that such documents are within the CI's "possession, custody, or control." Fed. R. Civ. P. 34(a). Numerous and obvious deficiencies persist with respect to CI's responses and document production in relation to these requests.[9]

Following the First Discovery Hearing, the First Discovery Order granted CI express leave to file written objections to production of documents belonging to SAS within 14 days. [First Discovery Order: Dkt. 91]. CI did not file any objections.

CI raised its argument regarding its purported lack of "control" over the requested documents at the Second Discovery Hearing. There, Magistrate Judge Reid noted the untimeliness of the objection.[10] The Second Discovery Order directed CI to produce documents responsive to the Second Requests, including those requesting documents from SAS, or face sanctions and potentially, contempt of Court. [Second Discovery Order: Dkt. 102.] CI did not file an objection to the Second Discovery Order. Instead, CI attempts to justify deficiencies in its production by claiming that any production should be sufficient given that CI disagreed with this Court's Order and its obligation to produce those documents in the first place.[11]

---

[9] *See* the chronology of CI's changing responses to Second Request No. 8. [R&R: Dkt. 114, at 8.]

[10] "As long as the documents being requested are within the care, custody, and control of this Defendant, CI, I am not saying they have to be only in their hands exclusively even if they are by an affiliate company has them as well, that's fine, but they are asking for documents. And the documents are in the care, custody, and control of the individual who runs the Defendant company . . . I think the problem we have, Miss Dilican, is raising any of these other objections would be untimely. At this point all I could do is enter this order compelling production of documents that are within the care, custody, and control of the Defendants." [Second Discovery Hearing Transcript: Dkt. 103, 8:19-25; 12:13-17.]

[11] "Should the Court disagree with [CI's] legal position, the fact remains that [CI] still made great efforts to comply with the Court's Orders, even where it disagreed that Peninsula was entitled to the production sought." [Objection: Dkt. 116, at 10.]

The issue of "control" has been fully briefed in Peninsula's Motion for Sanction's, CI's Response, and Peninsula's Reply. [Dkt 104; 106; 108]. While CI waived its right to raise this issue in failing to file any objections with the Court, Magistrate Judge Reid nonetheless conducted her own, thorough analysis of the law and the facts underlying this issue. In her R&R, Magistrate Judge Reid correctly concludes that CI "<u>cannot hide behind the guise of a parent subsidiary or affiliate relationship to avoid producing documents. Sanctions are warranted</u>." [R&R: Dkt. 114, at 11.]

> **(a)** **CI waived its right to raise the issue of "control" over documents belonging to SAS because CI failed to timely object to the Discovery Orders in accordance with FRCP 72(a) and accordingly, "may not assign as error a defect in the order not timely objected to."**

CI did not file any objections to either of the Discovery Orders, despite the First Discovery Order expressly granting CI leave to file its written objections within 14 days of the order, and despite nothing preventing CI from filing objections to the Second Discovery Order. CI thus waived its right to raise the issue of control, and CI's objections to production on that basis should be overruled by this Court without further consideration.

> **(b)** **Magistrate Judge Reid correctly concluded that based on controlling circuit precedent, CI was required to produce documents belonging to SAS because those documents are in CI's possession, custody, or control.**

Magistrate Judge Reid correctly concluded that CI has control over the documents belonging to SAS, under both the standards set forth in *SeaRock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984) and *Costa v. Kerzner Int'l Resorts, Inc.* 277 F.R.D. 68, 473 n.2 (S.D. Fla. Apr. 6, 2016).

The *SeaRock* standard sets forth that "control", for purposes of discovery, is "the legal right to obtain the documents requested on demand." *Sergeeva v. Tripleton International Limited*, 834 F.3d 1194, 1201 (11th Cir. 2016) (*quoting SeaRock*, 736 F.2d at 653-654). Magistrate Judge Reid

determined that CI "cannot in good faith argue that [it] – a subsidiary of SAS led by Mr. Ochoa as its CEO – has no control over documents held by its parent SAS, whose *single* member and CEO is also Mr. Ochoa." [R&R: Dkt. 114, at 14.] CI objects to this conclusion on the basis that "[t]his conclusion was derived from the premise that because Mr. Ochoa is the CEO of both entities, he necessarily has control over documents held by SAS." [Objection: Dkt. 116, at 6.] But CI's characterization grossly misconstrues Magistrate Judge Reid's application of the facts – it is not Mr. Ochoa's status as *CEO* of both entities which grants CI the right to obtain documents from SAS on demand. It is rather Mr. Ochoa's status as the *sole* controlling individual of both entities, and the fact that he is "*the only person with authority to take or respond to legal* authority on behalf of [CI Fuels] and its affiliate entity [SAS]" which establishes CI's legal right to obtain documents from SAS on demand. [R&R: Dkt. 114, at 14-15.]

Magistrate Judge Reid also examined the question of control under the *Costa* factors, which are: "(1) the corporate structure of the party and the nonparties; (2) the nonparties' connection to the transaction at issue in this litigation; and (3) the degree to which the nonparties benefit from the outcome of the litigation." [R&R: Dkt. 114, at 13.] The first factor is clearly met, because, as discussed regarding the *SeaRock* standard, Mr. Ochoa is the *sole* controlling individual with respect to both entities, and CI has not demonstrated why this is "legally insufficient" to establish control. [R&R: Dkt. 114, at 14-15; Objection: Dkt. 116, at 8.]

The second factor is also met because "SAS, as the parent company based in Colombia and guarantor of CI Fuels, is directly connected to the transaction at issue." [R&R: Dkt. 114, at 15.] CI wrongly argues that this bears little weight because "SAS is not a party to the instant lawsuit." [Objection: Dkt. 116, at 8.] CI entirely misapplies FRCP 34, which does not limit production only to parties to the litigation, nor is that required to meet the Costa factors.

17

Finally, Magistrate Judge Reid correctly concluded the third factor is met because CI's liability under this lawsuit will directly impact SAS's obligation to pay as guarantor under the parties agreement. [R&R: Dkt. 114, at 15.] CI argues this is irrelevant because regardless of the Court's determination, "SAS' liability will remain the same." [Objection: Dkt. 116, at 9.] This does not undermine Magistrate Judge Reid's earlier conclusion – SAS's liability may remain the same regardless of the outcome, but the amount actually paid by CI as a result of this litigation will directly impact the amount SAS will be responsible to pay as guarantor under the agreement.

Therefore, Magistrate Judge Reid properly applied the law in concluding that CI has "control" over documents belonging to SAS, under both the *SeaRock* and *Costa* standards.

**III.   CI should be held in contempt of Court because it violated Magistrate Judge Reid's valid and lawful discovery orders, and those orders were clear and unambiguous and within CI's control to comply.**

The R&R succinctly sets forth the relevant law governing whether CI should be held in civil contempt:

> "[f]or a party to be held in civil contempt for failure to comply with a court order, the party seeking contempt must establish: '(1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous, and (3) the alleged violator could comply with the order.'" [R&R: Dkt. 114, at 17 (*citations omitted*).]

Based on her consideration of these factors, the Magistrate Judge correctly concluded that each element was established, [R&R: Dkt. 114, at 18-19], and recommended the District Judge to enter an order setting a hearing at which CI must show cause why it should not be held in civil contempt. [*Id.* at 1.]

CI objects to Magistrate Judge Reid's R&R on the basis that "(1) The Orders are arguably not valid and lawful where merits-based jurisdiction was ordered that  exceeded the scope of the Court's July 3, 2023, order granting only jurisdictional discovery; (2) The Orders compelled the

Defendant to produce documents LLC did not have a legal right to on the above explicated basis; . . . and (3) Where, as explained above, the documents were not in Defendant's possession or control." [Objection: Dkt. 116, at 9.]

CI's first argument has already been disposed of in Section I of this Response. To clarify, CI has waived its right to contest the validity and lawfulness of the Discovery Orders in failing to object within the time proscribed by FRCP 72(a). CI's second and third arguments are belied by CI's own conduct, and are inconsistent and illogical: CI claims that it was wrongly compelled to produce documents to which it did not have a legal right, but has already produced "well over 2,000 documents of SAS." [Objection: Dkt. 116, at 10.] In any event, CI's control over documents belonging to SAS has firmly been established in Section II of this Response. Peninsula has plainly met its burden of establishing civil contempt, and this Court should hold CI and its counsel in contempt of court.

Most importantly, **neither of CI's arguments address the glaring deficiencies with respect to CI's failure to produce documents responsive to Peninsula's First Requests (jurisdictional)**, failures which Magistrate Judge Reid confirmed in her R&R. [R&R: Dkt. 114, at 5-8]. CI does not object to these factual findings. Rather, CI makes vague, conclusory, and/or irrelevant assertions regarding the sufficiency of its responses to the first requests.

Regarding First Request No. 15, CI asserts "[p]rior to filing its motion, all documents related to request number 15 were produced." [Objection: Dkt. 116, at 5.] This assertion is entirely irrelevant – Peninsula did not contest CI's responses to this request in its Motion for Sanctions, [Dkt. 104], nor did Magistrate Judge Reid in her R&R. [Dkt. 114.]

Regarding Request No. 28, CI claims that "[c]ontrary to Peninsula's assertions, [CI] made sufficient production." [Objection: Dkt. 116, at 11.] CI cites to nothing in support of this assertion,

nor does it elaborate as to why producing only three months of electricity statements for its member's Florida condo is sufficient to satisfy Peninsula's request for *five years* of statements. To the extent this assertion qualifies as an objection, it need not be considered by the district court given its conclusive nature. *See Rivera v. Marin R, et al.*, No. 23-CV-62034, 2024 WL 2931030, at *2 (S.D. Fla. June 11, 2024).

## CONCLUSION

Peninsula respectfully requests this Court to adopt the R&R except that portion that would provide CI with an opportunity to show cause. Instead, this Court should grant Peninsula's Motion for Sanctions, and hold CI and its counsel in civil contempt without a hearing, as CI's discovery violations are clear and uncontested, and CI has already been granted ample time and opportunity to demonstrate why it has failed to comply with this court's orders, which it cannot do.

Dated: June 14, 2024

Respectfully submitted,

By: /s/ Evan S. Gutwein
HAMILTON, MILLER, & BIRTHISEL LLP
Jerry D. Hamilton (FBN 970700)
jhamilton@hamiltonmillerlaw.com
Evan S. Gutwein (FBN 58741)
egutwein@hamiltonmillerlaw.com
150 S.E. Second Avenue, Suite 1200
Miami, Florida 33131
(305) 379-3686 (telephone)
(305) 279-3690 (facsimile)
      -and-
Joseph Johnson, Esq.
FLOYD ZADKOVICH (US) LLP
joe.johnson@floydzad.com
(Admitted Pro Hac Vice)
33 East 33rd Street, Suite 905
New York, NY 10016
*Attorneys for  Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 14, 2024 I electronically filed this document using the

Court's CM/ECF system, which will automatically serve a copy on all counsel of record.

By:  /s/  Evan S. Gutwein

| | |
|---|---|
| DILICAN LAW FIRM, P.A.<br>Lori Dilican<br>ldilican@dilicanlaw.com<br>8050 SW 72nd Ave. Apt. No. 2307<br>Miami, FL 33143<br>Tel. No. (561) 951-9612<br>***Attorneys for Defendant*** | HAMILTON, MILLER, & BIRTHISEL LLP<br>Evan S. Gutwein (FBN 58741)<br>egutwein@hamiltonmillerlaw.com<br>150 S.E. Second Avenue, Suite 1200<br>Miami, Florida 33131<br>(305) 379-3686 (telephone)<br>(305) 279-3690 (facsimile)<br><br>and<br><br>ZEILER FLOYD ZADKOVICH (US) LLP<br>Luke Zadkovich, Esq.<br>Luke.zadkovich@zeilerfloydzad.com<br>(Admitted *Pro Hac Vice*)<br>Joseph Johnson, Esq.<br>joe.johnson@zeilerfloydzad.com<br>(Admitted *Pro Hac Vice*)<br>215 Park Avenue, 11th Floor<br>New York, NY 100003<br>(917) 375-9511<br>*Attorneys for Plaintiff* |