# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

Case No.: 22-cv-20712-RKA

PENINSULA PETROLEUM LIMITED,
Plaintiff,

v.

CI INTERNATIONAL FUELS LLC,
Defendant.

_____/

## **DEFENDANT'S RENEWED MOTION TO DISMISS**

COMES NOW, Defendant, CI INTERNATIONAL FUELS LLC, by and through the undersigned counsel, pursuant to F.R.C.P. 12(b)(1), (3), and moves the Court for an Order dismissing Plaintiff, PENINSULA PETROLEUM LIMITED'S, case for lack of subject matter jurisdiction, or in the alternative forum non-conveniens grounds to enforce the forum selection clause contained in the Pledge Agreement, and in support thereof states:

## PRELIMINARY STATEMENT

Plaintiff brought an Amended Complaint raising claims for Breach of Contract, Enforcement of Security Interest Contained in Pledge Agreement, and Fraudulent Transfer and invoked this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Here, the Parties' commercial relationship is governed by three agreements: a Master Agreement, [DE 38-2], a Pledge Agreement [DE 38-2] and a Guarantee [DE 38-3]. The Master Agreement at § 11.1, contains a governing law provision stating that English law governs the Agreement and an arbitration clause set forth at § 11.2. The Pledge Agreement at § 8.11, provides that the Agreement shall be governed by the laws of Colombia and sets forth provisions for the Enforcement of the Security Interest at § 6.01.

The Plaintiff's Amended Complaint, [DE 38, ¶ 47], avers that the arbitration clause does not apply to this cause of action because Plaintiff's claim does not "arise out of or in connection with said Agreement and/or Cargo Recap." If the Plaintiff's assertion that this action does not fall within the ambit of the arbitration clause is correct; then, the New York Convention does not apply to this action. If the New York Convention does not apply, then this Court's jurisdiction must be invoked on diversity grounds. Plaintiff has in fact invoked the diversity jurisdiction of this Court. If the Court finds that diversity does not exist, this case must be dismissed for lack of subject matter jurisdiction. Should the Court find that diversity exists, the issue of enforcing the forum selection clause is triggered. Upon a Court determination that the forum selection clauses are valid and enforceable, then this action ought to be dismissed.

However, if the Court determines that the Plaintiff is incorrect and this action falls within the scope of the arbitration clause, then the New York Convention applies and the issue of whether arbitration has been waived arises with regards to the enforcement of the arbitration clause. Should the Court find that arbitration has not been waived, this action must be dismissed or stayed to give effect to the enforcement of the arbitration clause. However, should the Court determine that arbitration has been waived, the Court's jurisdiction would fall within the purview of 28 U.S.C. § 1332. The burden would be on the Plaintiff to prove that diversity exists and if there is no diversity, Plaintiff's cause of action should be dismissed.

## I. BACKGROUND

PPL agreed to extend credit to CI LLC for marine fuel to be delivered to Cl SAS and held in Cl SAS storage tanks at the Santa Marta, Colombia Free Trade Zone. Pursuant to the Agreement between the parties, the fuel provided by PPL to Cl SAS would be disbursed incrementally under separate deals of either Bunker Recaps or Cargo Recaps. [DE 1-1]. Because the fuel provided by PPL was stored in Cl SAS

tanks in Santa Marta, Colombia, PPL negotiated a Pledge Agreement to secure its assets and interest in the fuel. Under the terms of the Pledge Agreement, the maximum security is established at $6,500,000 USD. Exhibit 1. Whereas, the fuel to be provided by PPL would be held and located under the jurisdiction of Colombia, the enforcement of the Pledge Agreement between the parties is governed by Colombian law and subject to Colombian jurisdiction. Moreover, CI SAS additionally provided a Guarantee to PPL, which ensured that CI SAS would bear responsibility for CI LLC's contractual obligations to PPL as Guarantor. Exhibit 2.

Under the Guarantee, CI International Fuels, SAS is the Guarantor and Party, whereas, Cl International Fuels, LLC, is identified as a "Counter-Party," and PPL is the Beneficiary. The Guarantee at Section 3.1 provides: "The Guarantor, as primary obligor and not merely as surety, hereby irrevocably, absolutely, and unconditionally guarantees to the Beneficiary [PPL] the due, punctual and successful performance of the Counterparty's [CI LLC] obligations under the Agreements, in accordance with the terms thereof, without offset or deduction;"

The parties' written agreement is comprised of a Master Sale and Purchase Agreement which includes: Annex A- Cargo Recap, Annex 8- BP Oil International Limited General Terms and Conditions (containing Schedules A-I), annex C- BlMCO Terms 2015 Standard Bunker Contract, Letter of Agreement, Annex D- Operational Costs for each Port, Annex E- Pledge Agreement, and Guarantee.

The Master Agreement provides for mandatory arbitration as to "any disputes arising out of or in connection with the Master Sales and Purchase Agreement and/or any Cargo Recap and/or Bunker Recap…." Pursuant to the agreements of the parties, such disputes shall be governed by English law and disputes and/or claims arising therefrom shall be subject to arbitration which shall proceed in accordance with the London Court of

International Arbitration ("LCIA"). The only exception to this agreement between the parties is the superseding forum selection clause in the Pledge Agreement that relates to enforcement of the security interest contained in the Pledge Agreement, and states that enforcement of the security interest shall be governed by Colombian law with jurisdiction in the courts of Colombia. This makes sense given that the fuel and the Guarantor are both located in Colombia.

### Governing Law Clauses

The Master Sales and Purchase Agreement sets forth an Arbitration Clause at Section 11- Governing Law and Arbitration, Clauses 11.1 and 11.2 respectively. [DE l-l].

Clause 11.1 provides as follows:

> The construction, validity and performance of the Master Sale and Purchase Agreement and/or any Cargo Recap and/or any Bunker Recap and any dispute or claim arising out of or in connection with this Master Sale and Purchase Agreement and/or any Cargo Recap and/or Bunker Recap and their subject matter or formation (including non-contractual disputes or claims) shall be governed by and construed in accordance with English Law to the exclusion of any other law which may be imputed in accordance with the choice of law rules applicable in any jurisdiction.

Clause 11.2 provides:

> Any dispute arising out of or in connection with this Master Sale and Purchase Agreement and/or any Cargo Recap and/or any Bunker Recap, including any question regarding their existence, validity, or termination shall be referred to and finally resolved by arbitration under the LCIA Rules, which Rules are deemed to be incorporated by reference into this Clause. The number of arbitrators shall be one. The seat, or legal place, of arbitration shall be London, England. The language to be used in the arbitral proceedings shall be English.

Annex E- Pledge Agreement Over Assets (Exhibit 1).

Clause VI- Enforcement of Security Interest:

Section 6.01 (iii)- Court Collection Proceedings:

> To secure payment in full of the Secured Obligations by enforcing the Security Interest before the applicable Colombian courts in accordance with the applicable Law, including any current procedural law.
>
> Section 8.11:
>
> The parties agree that this Agreement will be governed by the laws of Colombia and submit **expressly and irrevocably** to the jurisdiction of the competent judges of Colombia. (Emphasis added).

The Master Agreement and the Pledge Agreement are clear and unambiguous that disputes or claims related to the enforcement of the security interest are governed by Colombian law and jurisdiction is proper in the courts of Colombia. All other disputes arising from the Master Agreement between the parties, are subject to arbitration under governing English law with the seat of arbitration in London, England.

## II. MOTION TO DISMISS FOR FORUM NON CONVENIENS

### Legal Standard

To obtain dismissal on the grounds of forum non conveniens, Defendants must show:

(i) that an adequate alternative forum is available, (ii) that relevant public and private interests weigh in favor of dismissal, and (iii) that the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice. Pertinent private interests of the litigants include relative ease of access to evidence in the competing fora, availability of witnesses and compulsory process over them, the cost of obtaining evidence, and the enforceability of a judgment. Relevant public interests include the familiarity of the court(s) with the governing law, the interest of any foreign nation in having the dispute litigated in its own courts, and the value of having local controversies litigated locally. *Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1356– 57 (11th Cir. 2008).

"Because a forum selection clause is at issue the Court begins by analyzing; (1) whether the clause is valid; (2) whether Plaintiff's claims fall within the scope of the clause; and (3) whether the clause is mandatory or permissive." *United States & Hamilton roofing, Inc. v. Cincinnati Ins. Co.*, No. 6:20-cv-2360, 2022 U.S. Dist. Lexis 100949, at 4* (M.D. Fla. March 25, 2022). "The appropriate way to enforce a forum selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens.*" *ALI. Marine Constr. Co. v. United States District Court,* 571 U.S. 49, 60 (2013). A valid forum-selection clause alters the court's § 1404(a) analysis in three ways: (1) The plaintiff's choice of forum carries no weight and the burden is on the plaintiff to establish that the transfer to the parties' agreed forum is unwarranted (2) private interest factors should not be considered; and (3) where a party disregards its contractual obligation to file suit in an agreed forum, the original venue's choice of law rules will not carry over. *Id* at 64. Because the "enforcement of a valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system," forum-selection clauses are "given controlling weight in all but exceptional cases." *Id. at* 62. Where, as here, the forum selected is a foreign court, dismissal is appropriate remedy.

Forum-selection clauses are "presumptively valid and enforceable unless the plaintiff makes a ·strong showing' that enforcement would be unfair or unreasonable under the circumstances.'" *Krenkel* v. *Kerzner International Hotels, Ltd.,* 579 F.3d 1279, 1281 (11th Cir. 2009). A forum-selection clause is unreasonable where a plaintiff can demonstrate fraud or overreaching. *Id.; Pappas v. Kerzner international Hotels, Ltd..* 585 F. App'x 962, (11th Cir. 2014). A party seeking to avoid a forum-selection clause has a "heavy burden of proof" that requires a showing that the designated forum is so "gravely difficult and inconvenient that [the party] for all practical purposes will

be deprived of his day in court." *Bremen* v. *Zapata Off-Shore Co.,* 407 U.S. 1, 17-18 (1972); *Carnival Cruise Lines, inc.* v. *Shute,* U.S. 585,592 (1991). Moreover, the presumption favoring a Plaintiff's choice of forum is entitled to less deference where the Plaintiff is not a citizen, resident, or corporation of this country. *SME Racks, inc.* v. *Sistemas Mecanicos Para Electronica, S.A.* 382 F. 3d 1097, 1101 (11[1h] Cir. 2004). A plaintiff's choice of forum will not merit any weight in the *forum non conveniens* analysis where a valid, enforceable and applicable forum selection clause exists. *Jiangsu Honguam Pharm. Co. v. DI Global Logistics Inc.,* 159 F. Supp. 3d 1316 (S.D. Fla. 2016). Plaintiff, as the party seeking to avoid the forum selection clause, "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Bruckner Truck Sales v. Hoist Liftruck Mfg.,* 501 F. Supp. 3d 409, 418-19 (N.D. Tex. 2020) (citing Atl. Marine, 571 U.S. at 63) (quotation marks omitted). *Sisk v. BWS Insp. Servs., LLC,* No. PE:21-CV-00087-DC-DF, 2022 U.S. Dist. LEXIS 147868, at *6 (W.D. Tex. Aug. 16, 2022).

The public interest factors to be considered in the *forum non conveniens* analysis include, "the administrative difficulties flowing from court congestion;" "local interest in having localized controversies decided at home;" having a "forum that is at home with the law that must govern the action;" "avoidance of unnecessary problems in conflict of laws, or the application of foreign law;" and the "unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n.6 (1981). Since these factors ·'rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine Constr. Co. v. United States District Court,* 571 U.S. 49, 64 (2013). Even a non-party to an agreement will also be bound to a forum-selection clause where the non- party is '"closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Lipcon v.*

*Underwriters at Lloyd's, London,* 148 f .3d 1285, 1289 (11th Cir. 1998) (quoting *Hugel v. Corporation of Lloyd's,* 999 F.2d 206,209 (7th Cir. 1993) (citations omitted)).

### III. ARGUMENT

The forum selection clause is the Pledge Agreement is valid and should be enforced. *Krenkel* v. *Kerzner International Hotels, Ltd.,* 579 F.3d 1279, 1281 (11th Cir. 2009). The forum selection clause contained in the Pledge Agreement is part of the parties' bargained for agreement and CI has a bona fide expectation interest in its enforcement. *ALI. Marine Constr. Co. v. United States District Court,* 571 U.S. at 62. PPL's decision to bring suit in this district is entitled to less deference because Plaintiff is a foreign corporation, whose principal place of business is located in Ireland and is not a citizen of any State. [DE 38; ¶ 2]. *ME Racks, inc.* v. *Sistemas Mecanicos Para Electronica, S.A.* 382 F. 3d at 1101. Because PPL disregarded its contractual obligation to bring suit to enforce the security interest in Colombia, it has a "heavy burden" to show that pursuing this action in Colombia would be so "gravely difficult" that PPL would be deprived of its day in court. *he Bremen* v. *Zapata Off-Shore Co.,* 407 U.S. at 17-18.; *Carnival Cruise Lines, inc.* v. *Shute,* U.S. at 592.

**Colombia is an Adequate Forum**

The Plaintiff cannot meet this burden because on April 4, 2022, PPL instituted proceedings in Colombia. PPL's case was dismissed because it improperly brought its cause of action in small claims court. Exhibit 3. Presently, PPL is actively involved in reorganization proceedings on behalf of CI SAS relating to the subject matter of this case before the Superintendence of Societies in Colombia. Exhibit 4. In both proceedings before the Colombian courts, PPL is or has been represented by Colombian counsel. Clearly, the Plaintiff recognizes that Colombia is an adequate forum and that proceedings related to the enforcement of its security interest must be brought before the Colombian courts pursuant to the parties Pledge Agreement and

Guaranty. *Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d at

1356– 57.

**Public Interest Factors**

The public interest factors to be considered in the *forum non conveniens* analysis

include, "the administrative difficulties flowing from court congestion;" "local interest in

having localized controversies decided at home;" having a "forum that is at home with the law

that must govern the action;" "avoidance of unnecessary problems in conflict of laws, or the

application of foreign law;" and the "unfairness of burdening citizens in an unrelated forum

with jury duty." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). Since these factors

"rarely defeat a transfer motion, the practical result is that forum-selection clauses should

control except in unusual cases." *Atl. Marine Constr. Co. v. United States District Court,* 571

U.S. 49, 64 (2013).

Here, there is no local interest in deciding a controversy in Florida because the Pledge

Agreement governing the dispute is between two foreign legal entities, a Plaintiff from the

United Kingdom and a Defendant from Colombia. Defendant being a limited liability company

takes the citizenship of its two members Jaime Ochoa and Maria Roa. Both Ochoa and Roa are

citizens of and domiciled in Colombia. Thus, the citizenship of the Defendant is Colombian.

The Pledge Agreement is executed by the Defendant, a Florida legal entity; but, the Guarantor

is CI SAS, the Colombian parent of the Defendant.

The Pledge Agreement is a security instrument whose terms of enforcement superseded

those set forth in the Master Agreement. The fuel was sold to CI from Ireland and was held in

the free trade zone in Santa Marta Colombia. Especially here, where the negotiation of the

Agreements, performance of the contract, and the events allegedly giving rise to a breach of

contract occurred internationally. Thus, the nexus to Florida is very weak. Accordingly, it is

unfair to burden the citizens of this district with jury duty in a forum where the Plaintiff argues

in favor of the application of English law, where the application thereof would present conflict of laws issues. Especially here, with the Pledge Agreement provision that Colombian law shall govern the security instrument. Moreover, this is not a case seeking to domesticate and enforce a foreign decree or judgment pursuant to the laws of this district, which is one of the busiest courts in the country.

It is contradictory for the Plaintiff to argue for the application of English law pursuant to §11.1, while consistently taking the position that this claim is not subject to arbitration. Plaintiff, in contravention of two bargained for and valid forum selection clauses in foreign nations and having actively engaged in two distinct legal proceedings in Colombia related to the subject matter of this dispute, now seeks to further congest the Southern District's docket. The Plaintiff's efforts to needlessly strain local judicial resources for its own benefit, notwithstanding a valid superseding forum selection clause in Colombia, is further exacerbated by Plaintiff's argument for the application of foreign law, given that all of the agreements between the parties contain governing law clauses, none of which apply U.S. law. It is self-evident that the public interest factor of the forum non conveniens analysis favor dismissal of Plaintiff's Verified Amended Complaint and enforcement of the Colombian forum selection clause contained in the Pledge Agreement.

The United States Supreme Court has found that agreement between the parties as to an acceptable forum is an "indispensable element in international trade, commerce and contract negotiations" *Bremen* v. *Zapata Off-Shore Co.,* 407 U.S. 1, 13-15. Especially in instances such here, where both parties are sophisticated and reached the agreement to bring enforcement of the security interest before the Colombian courts through arm's length negotiations. *Id.* at 12. Accordingly, the burden is on the Plaintiff to show make the requisite showing that enforcement of the forum selection clause would be unreasonable.

To satisfy the "heavy burden" of showing that the forum selection clause is unreasonable, it is incumbent on the Plaintiff to show that:

(1) formation [of the contract] was induced by fraud or overreaching;
(2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum;
(3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or
(4) enforcement of the provisions would contravene a strong public policy.

*Holmes v. Westport Shipyards, Inc.*, 2004 WL 3019363, at *3 (S.D. Fla. Aug. 10, 2004).

It is clear and unambiguous that the forum selection clause contained in the Pledge Agreement was central to the parties' negotiation because the circumstance surrounding the performance of the contract supports the practical basis for the selection of Colombian courts to enforce the PPL's security interest. Pursuant to the terms of the contract, PPL agreed that the fuel would be delivered to the Santa Marta, Colombia Free Trade Zone and storage would be provided by CI SAS. The Pledge Agreement's forum selection clause makes sense because the assets sought to be secured would be physically located in Colombia. Moreover, the Agreement between the parties provided that CI SAS would access the fuel pursuant to additional agreements characterized as either Bunker Recaps or Cargo Recaps. CI's position is further underscored by the fact that CI SAS in the primary obligor and guaranteed the performance of the parties' agreement.

**The Plaintiff's Cause of Action Can be Reinstated in Colombia**

Consideration of the Agreement in tandem with the security measures that PPL bargained for establish that Colombian law and venue cannot be unfair or unreasonable for purposes of addressing PPL's claims. Especially here, where the affidavit and declaration of CI's Manager Jaime Ochoa, explains that CI LLC provides invoicing and collection service for CI SAS. It is CI SAS that is engaged in the daily operation of

providing bunker services. [DE 26-2-4 and DE 31-1-4]. PPL admits at, ¶ 34 of its Amended Verified Complaint that "in accordance with Section 2.03 of the Pledge Agreement, Peninsula registered its 'Security Interest' with the National Registry of Securities Over Movable Assets in Colombia, which allows Peninsula to carry forward proceedings to enforce the pledge." [DE 38; ¶ 34]. Of critical importance is the fact that Jaime Ochoa is domiciled Colombia not Florida. It is from Colombia that Mr. Ochoa controls and operates both CI SAS and CI LLC. As a citizen of Colombia, Mr. Ochoa is amenable to service of process and the jurisdiction of the Colombian court. Colombian law can adequately redress the Plaintiff's claims and has jurisdiction over the movable assets. As such, PPL's cause of action can easily be reinstated in Colombia, which is the forum most at home with the law governing the Pledge Agreement. Therefore, on the foregoing basis, this Court should find that the forum selection clause contained in the Pledge Agreement is controlling and should be enforced.

**The Master Agreement Arbitration Clause**

The parties both recognize that the Master Agreement contains an arbitration provision. Both parties take the position that this dispute does not fall within the ambit of the Master Agreement's arbitration clause, albeit for different reasons. The Plaintiff at paragraphs 47- 49 of its Amended Complaint asserts that its claim does not fall within the purview of the arbitration clause. [DE 38; ¶¶ 47-49]. The Defendant contends that the arbitration clause of the Master Agreement is superseded by the forum selection clause contained in the Pledge Agreement because PPL is seeking to enforce its security interest. Section 6 of the Pledge Agreement sets forth clear and unambiguous terms for enforcement of the security interest and provides that the parties will "expressly and irrevocably" to the jurisdiction of the Colombian courts for enforcement of the security instrument. Thus, both parties take the position that the arbitration clause is not triggered. If the instant dispute

does not fall within the ambit of the arbitration clause, then this Court would not have original jurisdiction over this matter pursuant to 9 U.S.C. § 203. Here, because the forum selection clause in the Pledge Agreement governs enforcement actions such as this, it supersedes the arbitration clause and the New York Convention does not apply.

**Waiver**

It is true that valid arbitration agreements raise a strong presumption in favor of enforcement. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614-630-31 (1985). However, the Defendant is not seeking to compel arbitration. Rather, the Defendant is seeking to enforce the forum selection clause in the Pledge Agreement which directly controls enforcement of the security instrument under which the Plaintiff seeks to recover. Parties are not required to arbitrate where they have not agreed to do so. *National Auto Lenders, Inc. v. SysLOCATE, Inc.,* 686 F. Supp. 2d 1318, 1332 (S.D. Fla. 2010). The Parties did not agree to arbitrate the enforcement of the security agreement and should not be made to.

Notwithstanding the positions of the parties, should the Court determine that this dispute is subject to arbitration, it is arguable that the Plaintiff waived arbitration. In *Morgan v. Sundance*, the Supreme Court held that courts are using custom-made rules "to tilt the playing field in favor of (or against) arbitration." *Morgan v. Sundance*, 142 S. Ct. 1708, 1714 (2022). Post *Morgan*, the Court looks to the totality of the circumstances to determine whether a party waived its right to arbitrate by acting inconsistently with the right to arbitrate. *Amargos v. Verified Nutrition, LLC,* 22-cv-22111, 2023 WL 1331261, Jan. 2023 at *5. Extensive participation in litigation is only one factor in the analysis. *Id.*

Here, the Plaintiff filed its initial Complaint on March 9, 2022. [DE 1]. PPL then moved for default judgment on April 20, 2022 [DE 13] and recovered attorney's fees when the default judgment was set aside. On November 8, 2022, Plaintiff filed an Amended

Complaint. [DE 38]. On December 9, 2022, a Joint Scheduling Report was filed. [DE 44]. A Notice of Mediator Selection was filed on January 17, 2023. [DE 58]. Prior to filing suit in this Court, the Plaintiff brought suit in Colombia in April of 2022. The Plaintiff is also participating in reorganization proceedings currently pending in Colombia. Moreover, in the instant matter, the Plaintiff has consistently taken the position that the subject of the instant dispute does not fall within the arbitration clause and has consistently opposed the Defendant's efforts to enforce the Pledge Agreement's forum selection clause. This conduct on the part of the Plaintiff is not consistent with the exercise of a contractual right to arbitrate. Thus, under a totality of the circumstances analysis, the Plaintiff has waived its right to arbitrate.

## CONCLUSION

On the foregoing basis and for good cause shown, the Defendant respectfully requests that the Court find that the forum selection clause in the Pledge Agreement is superseding and controlling and enforce the forum selection clause by dismissing Plaintiff's Amended Complaint and further awarding the Defendant attorney's fees along with all other relief the Court deems appropriate.

**LACK OF SUBJECT MATTER DIVERSITY**

Plaintiff has invoked the jurisdiction this Court pursuant to 28 U.S.C. §1332 on the basis of diversity. The Court lacks subject matter jurisdiction over the instant dispute because all parties are foreign entities. The Plaintiff is an Irish corporation with its principal place of business in Dublin, Ireland and the Defendant is a citizen of Colombia. The Defendant is a citizen of Colombia because as a limited liability company, it is an unincorporated legal entity whose citizenship is based on the citizenship of its members. The two members of Defendant, CI INTERNATIONAL FUELS LLC, are both citizens of Colombia where they are domiciled. The law is firmly established that federal courts do not have diversity jurisdiction over cases where there are foreign entities on both sides of the action, without the presence of citizens of a state on both sides. Thus, this case should be dismissed for lack of jurisdiction and amendment would be futile.

I.      **RELEVANT FACTUAL BACKGROUND**

1. At paragraph 2 of its Amended Complaint, Plaintiff admits that it is a foreign corporation with its principal place of business in Ireland.

2. Defendant, CI INTERNATIONAL FUELS LLC, is an unincorporated legal entity registered in Florida, whose citizenship is determined by that of its members.

3. Defendant has two members, Jaime Ochoa Munoz and Maria Mercedez Roa, with each holding a 50% membership interest. Mr. Ochoa has provided declarations [DE 26-2; DE 31-1] stating that both members reside in Colombia without any status or authorization to work in the United States. [DE 67-1].

4. Mr. Ochoa is a citizen of and domiciled in Colombia, where he was born and issued a passport. [DE 67-2].

5. Ms. Roa is a citizen of and is domiciled in Colombia, where she was born and issued a passport. DE 67-3].

6. Mr. Ochoa and Ms. Roa were married in Colombia.

7. Mr. Ochoa and Ms. Roa's children were born in Colombia and are Colombian citizens that are domiciled in Colombia.

8. Defendant, CI International Fuels LLC, is an affiliate of CI International Fuels SAS; a legal entity registered in Colombia and operating from its principal place of business in Colombia.

9. Notwithstanding the fact that Mr. Ochoa and Ms. Roa jointly own real estate in Florida, neither Mr. Ochoa nor Ms. Roa resides in Florida and certainly are not domiciled in Florida.

10. An I-94 Customs and Border Protection account of entry into the United States shows that Mr. Ochoa spends a *de minimis* amount of time in Florida. See Exhibit A.

11. Mr. Ochoa, as sole manager of the Florida LLC, has declared that Defendant does not have any employees or other infrastructure or operations in Florida. See Exhibit A. [DE 31-1].

12. Plaintiff admits that the allegations regarding the members of CI International Fuels LLC, as set forth in Amended Complaint, are based upon "belief." [DE 38].

13. Plaintiff's Amended Complaint attached a Master Agreement [DE 38- 2], and a Pledge Agreement [DE 38-3] as contracts forming the basis of the instant dispute. [DE 38-2,3]. Both the Master and Pledge Agreements have forum selection clauses designating those disputes arising therefrom are to be resolved in foreign countries. [DE 36-2,3].

## II.      STATEMENT OF LAW

**Invoking Federal Jurisdiction**

Federal courts have limited subject matter jurisdiction, and the party invoking jurisdiction has the burden to prove that it exists. *McCormick v. Aderholt,* 293 F.3d 1254, 1257 (11th Cir. 2002) (per curium).  The law "is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of S. Ala. V. Am. Tobacco Co.,* 168 F.3d 405, 410 (11th Cir. 1999). In the Eleventh Circuit, subject matter jurisdiction may be attacked factually or facially. *Scarfo v. Ginsberg,* 175 F.3d 957, 960 (11th Cir. 1999). Because a factual attack challenges jurisdiction "in fact, irrespective of the pleadings, and matters outside the pleadings…, the presumption of truthfulness afforded a plaintiff under Federal Rule of Civil Procedure 12 (b)(6) does not attach, and the court is free to weigh evidence." *Id.* (citing *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990). "Where the court determines subject matter jurisdiction is lacking, it must dismiss the action." F.R.C.P. 12 (b)(3).

**No Jurisdiction Over Foreign Entities**

Where diversity jurisdiction is asserted pursuant to 28 U.S.C. §1332, "It is a standard rule that federal courts do not have diversity jurisdiction over cases where there are foreign entities on both sides of the action, without the presence of citizens of a state on both sides." *Iraola & CIA, S.A. v. Kimberly Clark Corp.,* 232 F.3d 854, 860 (11th Cir. 2000) (citing *Cabalceta v. Standard Fruit. Co.,* 883 F.2d 1553, 1558 (11th Cir. 1989); *McIntosh v. Royal Caribbean Cruises, Ltd.,* 5 F.4th 1309, 1313 (11th Cir. 2021) ("Alienage jurisdiction under 28 U.S.C. §1332 (a)(2) 'must be complete,' such that 'an alien on both sides of the dispute will defeat jurisdiction'…§1332 (a)(2) 'does not grant jurisdiction over a suit between a corporation incorporated solely in a foreign state and another alien, regardless of the corporation's principal place of business.'" (quoting *Caron v. NCL (Bahamas) Ltd.,* 910 F.3d 1359, 1364 (11th Cir. 2018)). "For purposes of determining

diversity jurisdiction, all unincorporated associations, regardless of their particular corporate-like features, are treated as partnerships and deemed to possess the citizenship of their partners or members." *Orchid Quay, LLC v. Suncor Bristol Bay, LLC,* 178 F. Supp. 3d 1300, 1304 (11th Cir. 2016); *Carden v. Arkoma Assoc.,* 494 U.S. 185, 187 n.1 (1990); *Underwriters at Lloyds of London v. Osting-Schwinn,* 613 F.3d 1079, 1087-88 (11th Cir. 2010). Where the Defendant is a limited liability company, its citizenship is determined based on the citizenship of its members. *Rolling Green MHP, L.P. v. Comcast SCH Holdings L.L.C.,* 374 F.3d 1020, 1021-22 (11th Cir. 2004).

**Test for the Determination of Domicile**

"For purposes of diversity jurisdiction, a natural person is a citizen of the state in which he or she is domiciled." *Bal Harbour Shops, LLC v. Saks Fifth Avenue LLC,* No. 1:20-cv-23504, 2022 WL 17733824, (S.D. Fla. Dec. 9, 2022); *Travaglia v. Am. Exp. Co.,* 735 F.3d 1266, 1269 (11th Cir. 2013) ("[D]omicile requires both residence in a state and intention to remain there indefinitely[.]") "Residence alone is not enough." *Id.* A person can reside in one place but be domiciled in another. *Turner v. Penn. Lumberman's Mut. Fire Inc. Co.,* No. 3:07-cv-374, 2007 WL 3104930, at 3-4 (M.D. Fla. Oct. 22, 2007). "When assessing a person's domicile—specifically, his or her subjective intent to remain in a place—courts consider a series of non-exclusive, objective factors, including: the location of real estate and personal property, business ownership, employment records, bank accounts, payment of taxes, voter registration, vehicle registration, driver's license, membership in local organizations, and other similar indications." *Bal Harbour Shops, LLC v. Saks Fifth Avenue LLC,* No. 1:20-cv-23504 at 3. (see *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1149 (11th Cir. 2021). Courts also consider other objective factors, such as passport, place of birth, place of marriage, place of birth of a party's children, *inter alia. Bal Harbour Shops, LLC*

*v. Saks Fifth Avenue LLC,* No. 1:20-cv-23504 at 4. Determinations of domicile are based on a "totality of the evidence" analysis and no single factor is determinative as to where a party's personal and professional life is centered. *Jones v. Law Firm of Hill & Ponton,* 14 F. Supp. 2d 1349, 1355 (M.D. Fla. 2001).

**Futility of Amendment**

"Leave to amend is futile when the complaint as amended would still be properly dismissed or immediately subject to summary judgment for the defendant." *Tie Quan v. Sec'y, Dep't of Veterans Affs.,* 423 F. App'x 808 810 (11th Cir. 2011) (quoting *Cockrell v. Sparks,* 510 F.3d 1307, 1310 (11th Cir. 200). Leave to amend should be denied where amendment is futile. *Wade v. Daniels,* 36 F.4th 318, 328 (11th Cir. 2022).

**III.    ARGUMENT**

Plaintiff has invoked the Court's jurisdiction on diversity grounds and bears the burden of proving the existence of diversity. Plaintiff, in its Amended Complaint, [DE 36], admits that it is a foreign corporation with its principal place of business in Ireland. The Defendant is a limited liability company whose citizenship is determined by that of its members. Defendant, CI International Fuels LLC, has two members—Jaime Ochoa and Maria Roa, who are both citizens of Colombia where they are domiciled. Here, Plaintiff seeks to invoke diversity jurisdiction on the premises that because the Defendant is a registered Florida limited liability company and its members jointly own real estate in Florida, that the members are residents of and are domiciled in Florida. That belief on the part of the Plaintiff is incorrect. Both Mr. Ochoa and Ms. Roa are citizens of Colombia and are domiciled in Colombia. Hence, there are only foreign entities on both sides of the action—which defeats jurisdiction.

Neither Mr. Ochoa nor Ms. Roa reside in Florida, and as such cannot be domiciled where they do not reside. Contrary to Plaintiff's assertions, neither member of CI International Fuels LLC has expressed any intent to remain in Florida indefinitely. The mere fact that the members own real estate in Florida is insufficient to establish domicile. Even if the members resided in Florida, and they do not, this would still be insufficient for diversity jurisdiction purposes because the members are domiciled in Colombia. The members have not expressed any intention to remain indefinitely in Florida and spend a de minimis amount of time in Florida. Colombia is the center of the members personal and professional lives.

Both Mr. Ochoa and Ms. Roa were born in Colombia and are citizens thereof, having passports issued from Colombia. Neither member holds a United States work authorization or any form of residency status. CI International Fuels LLC is an affiliate of CI International Fuels SAS which has its principal place of business and its nerve center in Colombia. In fact, the Florida LLC has no employees or other infrastructure in Florida and does not conduct business from Florida. Notwithstanding the fact that the members of the Florida LLC own real estate in Florida, they also own real estate in Colombia, along with the majority of their personal property, including but not limited their business—CI International Fuels SAS. The employment records of either member, along with the payment of their taxes are to be found in Colombia. Additionally, the members were married in Colombia and their children are Colombian nationals domiciled in Colombia. Thus, the totality of the evidence establishes that Colombia is the center of the members personal and professional lives.

Here, because there are only foreign entities on both sides of the action, the court lacks subject matter jurisdiction. Section 1332(a)(2) does not grant jurisdiction over a suit between a corporation, such as Plaintiff, incorporated in a foreign state and another alien, regardless of the

corporation's principal place of business. Because the Defendant is a limited liability company, its citizenship is Colombia because both of its members are Colombian citizens who are domiciled therein. Moreover, Petitioner admits that it based its allegations of diversity on its own "reasonable belief" that the members were residents of Florida. Here, where Plaintiff's allegations are subject to factual attack, the Court is not constrained to accept the pleaded allegations as true. It is well within the Court's jurisdiction to weigh the evidence regarding the members' citizenship, with the burden on the Plaintiff to prove that diversity exists.

Plaintiff cannot demonstrate diversity jurisdiction where the Defendant is a citizen of Colombia and there are only foreign entities on both sides of the action. Given that there are only two members of CI International Fuels LLC, both of which are domiciled in Colombia, amendment would be futile. Amendment is futile because there are only two parties to this action and they are both foreign entities. Thus, diversity is defeated and the Court lacks subject matter jurisdiction over this cause of action. Therefore, Plaintiff's Amended Complaint must be dismissed pursuant to Rule 12 (b)(1) and leave to amend would be futile.

WHEREFORE, Defendant, CI INTERNATIONAL FUELS LLC, respectfully requests that the Court dismiss the Amended Complaint for lack of subject matter jurisdiction if the Court determines that the New York Convention does not apply to the instant cause of action.

## CONCLUSION

Based on the foregoing points and authorities, Defendants respectfully request that the Court grant Defendants Motion to Dismiss for Lack of Subject Matter Jurisdiction without leave to amend and award Defendant attorney's fees for having to bring this motion.

Dated: March 21, 2023

Respectfully Submitted,


**LOCAL RULE 7.1(a)(3) CERTIFICATION**

Undersigned counsel made reasonable efforts to confer with all parties or non-parties who may be affected by the relief sought in this motion via email and /or telephone on March 16, 2023, Counsel for the parties were unable to reach an agreement.


By: /s/ Lori Dilican     `


**SANCHEZ VADILLO, LLP**
*Counsel for Defendant*

11402 NW 41st Street
Suite 202
Miami, Florida 33178
(305) 436-1410
ldilican@svlawus.com

By:  /s/  Lori Dilican


**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served through the Court's

CM/ECF system on March 21, 2023, on all counsel of record.


/s/  Lori Dilican
Lori Dilican